IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| S.C., JERROLD EZELL, ANTHONY PETTIS, and L.L.R., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. |
| CITY OF MILWAUKEE, CHIEF EDWARD FLYNN, CAPTAIN EDITH HUDSON, SERGEANT JASON MUCHA, MICHAEL VAGNINI, MICHAEL GASSER, JACOB KNIGHT, OFFICER BARTOL, OFFICER SEITZ, and unknown Milwaukee Police Department employees and officers, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | JURY TRIAL DEMANDED |

COMPLAINT

NOW COME Plaintiffs, S.C., JERROLD EZELL, ANTHONY PETTIS, and L.L.R. and complaining of Defendants, CITY OF MILWAUKEE, CHIEF EDWARD FLYNN, CAPTAIN EDITH HUDSON, SERGEANT JASON MUCHA, OFFICER MICHAEL VAGNINI, OFFICER JACOB KNIGHT, OFFICER MICHAEL GASSER, OFFICER BARTOL, OFFICER SEITZ, and unknown Milwaukee Police Department employees and officers, ("Defendant Officers"), states as follows:

**Introduction**

1.   This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution.

## Jurisdiction and Venue

2.   This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331.

3.   Venue is proper under 28 U.S.C. § 1391(b).  On information and belief, all or most of the parties reside in Milwaukee County, and the events giving rise to the claims asserted herein all occurred within this district.

4.   Plaintiffs, S.C., Jerrold Ezell, Anthony Pettis, and L.L.R., are a residents of the City of Milwaukee.

5.   Defendant Edward Flynn is and was at the times relevant to this action, the Chief of the Milwaukee Police Department, acting under color of law and within the scope of his employment.  Defendant Flynn is being sued in his individual and official capacities.

6.   Defendant Edith Hudson is and was at all times relevant to this action the Captain of the Fifth District of the Milwaukee Police Department, acting under color of law and within the scope of her employment.

7.   Sergeant Jason Mucha was a supervisor in the Fifth District and of its "power shift," consisting of a small group of officers assigned to target violent and drug crime during the 7pm to 3am shift.  At all times relevant to this action, Sergeant Mucha acted under color of law and within the scope of his employment.

8. Defendant Officers Michael Vagnini, Jacob Knight, Michael Gasser, Bartol, and Sietz, were Milwaukee police officers at all times relevant to this action, acting under color of law and within the scope of their employment as Milwaukee police officers.

9. Unknown Defendants are current and/or former employees, officers, and/or supervisors of the Milwaukee Police Department who at all relevant times were acting under color of law and within the scope of their employment.

10. The City of Milwaukee is a Wisconsin municipal corporation with its principal place of business in Milwaukee, Wisconsin.

***Background Facts***

11. The Fourth Amendment and the Due Process Clause of the Fourteenth Amendment require that all searches must be reasonable. To be reasonable, an invasive body cavity search must be supported by probable cause and a warrant (if no exigency exists), and must be conducted in private in a safe, medically proper, and hygienic manner.

12. Wisconsin law defines a "strip search" as a search in which a detained person's genitals, pubic area, buttock or anus, or a detained female person's breast, is uncovered and either is

3

exposed to view or is touched by a person conducting the search. *See* Wis. Stat. Sec. 968.255(1)(b).

13. A police officer may not perform a strip search on an individual unless they have been "detained," which means they have been arrested. In order to perform a strip search on a detained person, the officer must "obtain[] the prior written permission of the chief, sheriff or law enforcement administrator of the jurisdiction where the person is detained, or his or her designee, unless there is probable cause to believe that the detained person is concealing a weapon." Wis. Stat. Sec. 968.255(2)(d).

14. An officer conducting an authorized strip search must do so in a way that makes "sure the person is not exposed to the view of any person not conducting the search." Wis. Stat. Sec. 968.255(2)(b).

15. Under Wisconsin law, it is illegal for police officers to perform body cavity searches of persons suspected to be secreting contraband in their bodies. Body cavity searches are illegal unless performed by a physician, physician assistant or registered nurse licensed to practice in the State of Wisconsin. *See* Wis. Stat. Sec. 968.255(3).

## *February 2010 Search of Mr. Ezell*

16.   In February 2010, Mr. Ezell was sitting in his car parked in front of his grandmother's home.

17.   Sergeant Mucha, along with Officers Vagnini and Knight approached his car with their weapons drawn.

18.   Officer Vagnini called to Mr. Ezell by his name and ordered him to get out of his car.

19.   Mr. Ezell asked what was going on, and why the officers had their guns pointed at him.

20.   Defendant Officers did not respond to Mr. Ezell's questions.  Instead, Officer Vagnini asked him if he had any drugs on him.  Mr. Ezell responded that he did not.  Officer Vagnini then said, "I know how you all get down," or words to that effect.

21.   Mr. Ezell then exited his car and Officer Vagnini searched him by patting him down.

22.   Although he lacked probable cause to believe Mr. Ezell had any contraband on his person, Officer Vagnini proceeded to grab Mr. Ezell's scrotum and put his hand through Mr. Ezell's buttocks cheeks with a blading motion, all outside his pants.

23.   Officer Vagnini then pulled open Mr. Ezell's pants at the waist and shined his flash light down in them.

5

24. Mr. Ezell asked Sergeant Mucha and Officers Knight and Vagnini whether Officer Vagnini was supposed to be doing this to him. None of the Defendant Officers responded.

25. Unsatisfied with his search of Mr. Ezell, Officer Vagnini then began to use his fingers to claw and attempt to penetrate Mr. Ezell's anus.

26. Officer Vagnini threatened Mr. Ezell stating: "If you try to run, I'll blow your fucking head off," or words to that effect.

27. Sergeant Mucha and Officer Knight stood by and watched Officer Vagnini's searches of Mr. Ezell, but did nothing to intervene or stop him.

28. No exigent circumstances justified Officer Vagnini's warrantless cavity search of Mr. Ezell much less is his forcible intrusion into Mr. Ezell's body in a non-hygienic, public setting by an officer who lacked any medical training to conduct a safe cavity search.

29. Eventually, Officers Vagnini and Knight took Mr. Ezell to the Fifth District where he was booked.

30. Mr. Ezell thereafter reported the assault to his parole officer.

31. As a result of the illegal searches perpetrated and allowed by these Defendant Officers, Mr. Ezell experienced physical pain, emotional distress, humiliation, and trauma.

## February 27, 2010 Search of L.L.R.

32. On February 27, 2010, L.L.R. was driving himself and two passengers towards the intersection of 12th and Chambers in the City of Milwaukee when he was stopped by Defendant Officers Vagnini and Gasser for an alleged traffic violation.

33. L.L.R. had not committed any traffic violation. Rather, Officer Vagnini and Gasser used an alleged traffic stop as false pretense to search Plaintiff without probable cause.

34. Officers Vagnini and Gasser approached L.L.R.'s car and ordered him to get out of his car. Officer Vagnini went to the passenger side of the vehicle and Officer Gasser went to the driver's side of the vehicle. Officer Gasser conducted a pat-down of L.L.R.'s person and recovered no weapons.

35. Officer Vagnini approached the driver's side of the vehicle and asked L.L.R. about "the drugs." L.L.R. denied having any drugs on his person.

36. Officer Vagnini then assaulted L.L.R. by placing him in a chokehold, and began to pull back on L.L.R. neck.

37. As a result of Officer Vagnini's assault and chokehold, L.L.R. had trouble breathing.

38. While choking L.L.R., Officer Vagnini then put his hands inside L.L.R. underwear and violently probed L.L.R. in his anus.

39. L.L.R. began screaming in pain and humiliation.

7

40.  Officer Gasser observed this assault and did nothing to intervene L.L.R.'s behalf.

41.  Officer Vagnini performed cavity search of L.L.R. in public and without a warrant.

42.  Officer Vagnini's warrantless cavity search of L.L.R. lacked any exigent circumstances to justify dispensing the need to obtain a warrant.  Moreover, Officer Vagnini lacked any justification for his forcible intrusion into L.L.R.'s body in a non-hygienic, public setting by an officer who lacked any medical training to conduct a safe cavity search.

43.  L.L.R. was taken into custody.

44.  Once at the police station, L.L.R. made a complaint about Defendant Vagnini's conduct.

45.  L.L.R. again complained about Officer Vagnini's conduct when he was admitted into the Milwaukee County Jail to a captain.

46.  While incarcerated, L.L.R. met with officers from Internal Affairs and provided a statement complaining of Officer Vagnini's misconduct.

47.  L.L.R. received a letter from Internal Affairs indicating that they were still investigating his complaint.

48.  As a result of the illegal searches perpetrated and allowed by these Defendant Officers, L.L.R. experienced physical pain, emotional distress, humiliation, and trauma.

8

### *July 2011 Search of Mr. Pettis*

49.    In July 2011, Mr. Pettis and some of his friends stopped at a gas station and were approached by Officers Bartol and Seitz.  The Officers claimed that Mr. Pettis and his companions may have violated bail conditions.

50.    Officers Bartol and Seitz brought Mr. Pettis to the Seventh District police station and placed him in an interrogation room.

51.    Eventually, Officer Vagnini entered the room.

52.    Despite having no probable cause to believe any weapons or drugs were concealed on Mr. Pettis' person, Officer Vagnini shoved his fingers inside Mr. Pettis' rectum.

53.    Officer Vagnini did not have a warrant to conduct a cavity search of Mr. Ezell.

54.    Officer Vagnini then announced to Officers Bartol and Seitz, "This is how you search these guys," or words to that effect.

55.    At no time did Officer Vagnini obtain Mr. Pettis' consent for the July 2011 body cavity search, nor did Officer Vagnini have authorization from the court.  No circumstances justified Officer Vagnini's forcible entry into Mr. Pettis' body in an non-hygienic setting by an officer who lacked any medical training to safely perform such search.

9

56.  As a result of these Defendant Officers' actions, Mr.
Pettis suffered physical pain, emotional distress, anxiety,
humiliation, shame, and terror.

### November 2011 Search of Mr. Ezell and Mr. Pettis

57.  In November 2011, Mr. Pettis and a Mr. Ezell were
sitting on the front porch of a friend's home, waiting to meet
her.  As Mr. Pettis and Mr. Ezell waited, Officers Bartol and
Seitz began observing them from a nearby alley.

58.  When their friend returned home, Mr. Pettis and Mr.
Ezell helped their friend carry her groceries inside, where they
gathered as the friend cooked a meal.

59.  Even though these Officers had no reason to think any
crime was taking place, they entered the home.

60.  A few minutes after Officers Bartol and Seitz entered
the home, dozens of other police officers began arriving at the
home, including Officers Vagnini and Knight.

61.  When someone asked Officer Vagnini whether the
Officers had a warrant to be in the home, he replied: "You are
with Anthony Pettis and that is warrant enough" or words to that
effect.  None of the Defendant Officers had obtained a warrant
to search Mr. Pettis or Mr. Ezell.

62.  Despite having no probable cause, these Defendant
Officers detained Mr. Pettis and Mr. Ezell.

10

63.   Officer Vagnini ordered Mr. Pettis and Mr. Ezell to stand up.

64.   Officer Vagnini then shoved his bare two fingers into both Mr. Ezell's and Mr. Pettis' rectums one after another without pausing to wash his hands or put on gloves.

65.   Officer Vagnini did not have a warrant to conduct a cavity search of Mr. Pettis or Ezell and he searched them in plain view of all of the other officers and Mr. Pettis' and Ezell's friend.  Officer Vagnini's search of Mr. Pettis and Mr. Ezell was unsafe, non-hygienic, and performed by an officer who lacked any medical training to safely perform such searches.

66.   No drugs were found on Mr. Pettis or Mr. Ezell.

67.   Nevertheless, the Defendant Officers arrested Mr. Pettis and Mr. Ezell.

68.   Mr. Pettis remained in custody and was held for five days and released with time served. Mr. Ezell was held for several hours.

69.   As a result of these Defendant Officers' actions, Mr. Pettis and Mr. Ezell suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

### *Additional Searches of Mr. Pettis*

70.   Officer Vagnini stopped Anthony Pettis and performed illegal body cavity searches on Mr. Pettis numerous other occasions.

71.  As a result of Officer Vagnini's repeated actions, Mr. Ezell suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

### *Search of S.C.*

72.  On or about the spring of 2012, S.C. was driving home in his car when he was pulled over by three police squadrols traveling together in what is referred to in the Fifth District's power shift as a "train", including two unmarked and one marked, in the alley behind his home.

73.  Defendant Officers had no probable cause to believe S.C. had committed any crime.

74.  Three officers, including Officer Vagnini, approached his car with their guns drawn.

75.  Without warning or probable cause, one of the Defendant Officers opened S.C.'s car door, reached in and pulled him out.

76.  Officer Vagnini then searched S.C., grabbing his testicles with his bare hands and pulling S.C.'s underwear into the crack of his buttocks.

77.  Officer Vagnini did not recover any drugs on S.C.'s person.

78.  One of the Defendant Officers handcuffed S.C., but they did not charge him with any crimes or take him to the police station.  Instead, they released S.C.

12

79.  S.C. filed a complaint with the Milwaukee Police Department's Internal Affairs on or about the following day, but he did not hear anything in response.

80.  As a result of these Defendant Officers' actions, S.C. suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

### John Doe Proceeding

81.  On information and belief, on or about March 2012, the Milwaukee County District Attorney's Office initiated a "John Doe" proceeding to investigate the allegations of illegal strip and cavity searches within the Milwaukee Police Department.

82.  On information and belief, the John Doe proceeding included testimony from 30 victims of illegal strip and cavity searches performed by Milwaukee Police Officers.

83.  On October 8, 2012, the State of Wisconsin charged Officer Vagnini, along with Officer Knight, and two other officers for their criminal conduct with respect to illegal body cavity and strip searches of Milwaukee citizens.

84.  In the criminal complaint, the State charged Defendant Vagnini with two counts of illegal cavity searches, eight counts of illegal strip searches, four counts of second degree sexual assault, one count of third degree sexual assault, two counts of fourth degree sexual assault, and eight counts for misconduct in public office/act in excess of lawful authority.

13

85.  The State charged Defendant Knight with one count of illegal cavity search and one count for misconduct in public office/act in excess of lawful authority.

86.  On November 15, 2012, the State filed a Criminal Information adding two additional counts against Officer Vagnini for false imprisonment and misconduct in office.

87.  On April 22, 2013, Officer Vagnini entered a no contest plea to four misdemeanor charges of illegal strip/cavity searches (Counts 1, 4, 6, and 9) and four felony charges of misconduct in office/excess authority (Counts 3, 5, 8 and 11).

88.  In his plea, Officer Vagnini pleaded no contest to, inter alia, his February 27, 2010, illegal body cavity search of L.L.R.

89.  On June 21, 2013, the court sentenced Officer Vagnini to 26 months imprisonment and 34 months of extended supervision.

**City of Milwaukee**

90.  As early as 2008, Internal Affairs and other municipal authorities received complaints about Defendant Officers' inappropriate strip and body cavity searches of citizens, particularly from the Fifth District, although not exclusively limited to that district.  These complaints demonstrated a clear and obvious pattern of illegal and abusive cavity searches.

91.  Despite receiving similar complaints from citizens over several years, Internal Affairs repeatedly found no merit

14

to these complaints, ignored the existence of a clear pattern of complaints, and did not recommend discipline for any of the subject officers.

92. Indeed, in a Milwaukee Journal Sentinel article dated April 21, 2013, Chief Flynn admitted that the Department had been receiving complaints for a "couple of years" before it opened its own investigation of the allegations.

93. In addition, supervisors within the Department, specifically Defendants Captain Edith Hudson and Sergeant Jason Mucha, had knowledge of the repeated complaints of strip and body cavity searches.

94. In fact, several body cavity several searches were conducted at the Fifth District where supervisors were knowledgeable of the illegal searches.

95. Despite their knowledge of these illegal searches, the policymakers, including but not limited to Defendants Flynn, Hudson, and Mucha, took no action to train, supervise or discipline the officers who committed these knowingly illegal searches.

96. Instead, certain of the Defendant Officers were rewarded with commendations for their aggressive police tactics and jobs well-done by their Supervisors, including commendations from Chief Edward Flynn.

## Count I - 42 U.S.C. § 1983
## Fourth Amendment/Illegal Search and Seizure

97. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

98. As described in the preceding paragraphs, various of the Defendant Officers violated each of the Plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures.

99. As described in the preceding paragraphs, the Defendant Officers violated Plaintiffs' Fourth Amendment rights in that they seized Plaintiffs without justification and without probable cause and conducted and illegal search of their bodies by touching their genitalia, including a strip searches and cavity searches of their persons.

> a. Plaintiff S.C. is suing Defendants Flynn, Hudson, Mucha, Vagnini and Unknown Officers of the Milwaukee Police Department;
>
> b. Plaintiff Ezell is suing Defendants Flynn, Hudson, Mucha, Vagnini, Knight, Bartol, Seitz, and Unknown Officers of the Milwaukee Police Department;
>
> c. Plaintiff Pettis is suing Defendants Flynn, Hudson, Mucha, Vagnini, Knight, Bartol, Seitz, and Unknown Officers of the Milwaukee Police Department;

16

> d. Plaintiff L.L.R. is suing Defendants Flynn, Hudson, Mucha, Vagnini, Gasser, and Unknown Officers of the Milwaukee Police Department;

100. The misconduct described in this Count was objectively unreasonable and undertaken with malice, willfulness, and reckless indifference to the rights of others.

101. The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Milwaukee in that:

> a. As a matter of both police and practice, the City of Milwaukee encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise, control and discipline its officers who conduct illegal strip and cavity searches, such that its failure to do so manifests deliberate indifference;

> b. As a matter of both policy and practice, the City of Milwaukee facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Milwaukee police officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those Plaintiffs; specifically, Milwaukee

17

police officers accused of conducting illegal strip or body cavity searches can be confident that Internal Affairs will not investigate those accusations in earnest and will refuse to recommend discipline even where the officer has engaged in excessive force;

c. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Milwaukee Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Milwaukee Department makes findings of wrongdoing in a disproportionately small number of cases;

d. Policy makers failed to perform pattern analysis and ignored the clear pattern of complaints of illegal and abusive cavity searches;

e. City of Milwaukee policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Milwaukee Police Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case; and

f. The City of Milwaukee has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of

18

the same, thereby causing the types of injuries alleged here.

102. The misconduct described in this Count was undertaken by Defendant Officers within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

103. As a result of the City of Milwaukee's policy and practice and the unjustified and unreasonable conduct of the Defendant Officers, Plaintiffs have suffered injuries, including emotional distress.

## Count II - 42 U.S.C. § 1983
## Excessive Force

104. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

105. As described in the preceding paragraphs, the conduct of the Defendant Officers toward Plaintiffs constituted excessive force in violation of the United States Constitution.

a. Plaintiff S.C. is suing Defendants Flynn, Hudson, Mucha, Vagnini and Unknown Officers of the Milwaukee Police Department;

b. Plaintiff Ezell is suing Defendants Flynn, Hudson, Mucha, Vagnini, Knight, Bartol, Seitz, and Unknown Officers of the Milwaukee Police Department;

19

c. Plaintiff Pettis is suing Defendants Flynn, Hudson, Mucha, Vagnini, Knight, Bartol, Seitz, and Unknown Officers of the Milwaukee Police Department;

d. Plaintiff L.L.R. is suing Defendants Flynn, Hudson, Mucha, Vagnini, Gasser, and Unknown Officers of the Milwaukee Police Department;

106. The misconduct described in this Count was objectively unreasonable and undertaken with malice, willfulness, and reckless indifference to the rights of others.

107. The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Milwaukee in that:

a. As a matter of both police and practice, the City of Milwaukee encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise, control and discipline its officers such that its failure to do so manifests deliberate indifference;

b. As a matter of both policy and practice, the City of Milwaukee facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Milwaukee police officers to believe their actions will never be scrutinized

20

and, in that way, directly encouraging future abuses such as those Plaintiffs; specifically, Milwaukee police officers accused of excessive force can be confident that Internal Affairs will not investigate those accusations in earnest and will refuse to recommend discipline even where the officer has engaged in excessive force;

c. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Milwaukee Police Department abuse citizens in a manner similar to that alleged by Plaintiffs in this Count on a frequent basis, yet the Milwaukee Police Department makes findings of wrongdoing in a disproportionately small number of cases;

d. Policy makers failed to perform pattern analysis and ignored the clear pattern of complaints of illegal and abusive cavity searches;

e. City of Milwaukee policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Milwaukee Police Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case; and

21

f. The City of Milwaukee has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

108. The misconduct described in this Count was undertaken by Defendant Officers within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

109. As a result of the City of Milwaukee's policy and practice and the unjustified and unreasonable conduct of the Defendant Officers, Plaintiffs have suffered injuries, including emotional distress.

### Count III - 42 U.S.C. § 1983
### False Arrest/Illegal Detention

110. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

111. As described above, Defendant Officers falsely arrested and unlawfully detained Plaintiffs Ezell, Pettis and L.L.R. without justification and without probable cause.

a. Plaintiff Ezell is suing Defendants Flynn, Hudson, Mucha, Vagnini, Knight, Bartol, Seitz, and Unknown Officers of the Milwaukee Police Department;

22

b. Plaintiff Pettis is suing Defendants Flynn, Hudson, Mucha, Vagnini, Knight, Bartol, Seitz, and Unknown Officers of the Milwaukee Police Department;

c. Plaintiff L.L.R. is suing Defendants Flynn, Hudson, Mucha, Vagnini, Gasser, and Unknown Officers of the Milwaukee Police Department;

112. The misconduct described in this Count was objectively unreasonable and undertaken with malice, willfulness, and reckless indifference to the rights of others.

113. The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Milwaukee in that:

a. As a matter of both police and practice, the City of Milwaukee encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise, control and discipline its officers who conduct false arrests/illegal detentions, such that its failure to do so manifests deliberate indifference;

b. As a matter of both policy and practice, the City of Milwaukee facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Milwaukee police officers

23

to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those Plaintiffs; specifically, Milwaukee police officers accused false arrests/illegal detentions can be confident that Internal Affairs will not investigate those accusations in earnest and will refuse to recommend discipline even where the officer has engaged in false arrests/illegal detentions;

c. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Milwaukee Police Department abuse citizens in a manner similar to that alleged by Plaintiffs in this Count on a frequent basis, yet the Milwaukee Department makes findings of wrongdoing in a disproportionately small number of cases;

d. Policy makers failed to perform pattern analysis and ignored the clear pattern of complaints of illegal and abusive cavity searches;

e. City of Milwaukee policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Milwaukee Police Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case; and

24

f. The City of Milwaukee has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

114. The misconduct described in this Count was undertaken by Defendant Officers within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

115. As a result of the City of Milwaukee's policy and practice and the unjustified and unreasonable conduct of the Defendant Officers, Plaintiffs have suffered injuries, including emotional distress.

### Count IV - 42 U.S.C. § 1983
### Failure to Intervene

116. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

117. As described more fully above, one or more of the Defendant Officers had a reasonable opportunity to prevent the violation of Plaintiffs' constitutional rights as set forth above in Counts I through III had they been so inclined, but failed to do so. Specifically Defendant Officers had a reasonable opportunity to intervene and prevent the strip and cavity searches of Plaintiffs, the excessive force used on

25

Plaintiffs and the false arrest/detention of Plaintiffs Ezell, Pettis and L.L.R.

      a. Plaintiff S.C. is suing Defendants Mucha, Vagnini and Unknown Officers of the Milwaukee Police Department;

      b. Plaintiff Ezell is suing Defendants Mucha, Vagnini, Knight, Bartol, Seitz, and Unknown Officers of the Milwaukee Police Department;

      c. Plaintiff Pettis is suing Defendants Mucha, Vagnini, Knight, Bartol, Seitz, and Unknown Officers of the Milwaukee Police Department;

      d. Plaintiff L.L.R. is suing Defendants Mucha, Vagnini, Gasser, and Unknown Officers of the Milwaukee Police Department;

118. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

119. The misconduct described in this Count was undertaken by Defendant Officers within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

120. As a result of the misconduct described in this Count, Plaintiffs have suffered damages, including but not limited to emotional distress and anguish.

## Count V – 42 U.S.C. § 1983
## Conspiracy

121. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

122. As described more fully above, Defendant Officers reached an agreement among themselves to deprive Plaintiffs of their constitutional rights.

123. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

124. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

125. The misconduct described in this Count was undertaken by Defendants within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

126. As a direct and proximate result of the illicit prior agreement referenced above, Plaintiffs' rights were violated and she suffered injuries, including, but not limited to emotional distress, as described above.

Case 2:13-cv-00771-LA   Filed 07/10/13   Page 27 of 30   Document 1

## Count VI – 42 U.S.C. § 1983
## Supervisory Liability

127. Each Paragraph of this Complaint is incorporated as if fully stated herein.

128. As described more fully above, Defendants Edward Flynn, Hudson, Domagalski and Mucha knew or reasonably should have known that Defendant Officers would violate citizens' constitutional rights in one or more of the ways describe above, and/or knew or reasonably should have known that Defendant Officers had a pattern of engaging in improper searches, including public strip and cavity searches.

129. Defendants Flynn, Hudson, Domagalski and Mucha facilitated, approved, condoned and/or turned a blind eye to purposely ignored Defendant Officers' pattern of misconduct.

130. As a result of the misconduct described in this Count, Plaintiffs have suffered damages, including but not limited to emotional distress and anguish.

## Count VII - Indemnification

131. Each of the foregoing paragraphs is incorporated as if fully stated herein.

132. Wisconsin law, Wisc. Stat. §895.46, requires public entities to pay any tort judgment for damages for which employees are liable within the scope of their employment activities.

133. At all times relevant herein, the Defendant Officers and Supervisors were employees of the Milwaukee Police Department, who acted within the scope of their employment

WHEREFORE, Plaintiffs, S.C., JERROD EZELL, ANTHONY PETTIS, and L.L.R. respectfully requests that this Court enter judgment in his favor and against Defendants, CITY OF MILWAUKEE, CHIEF EDWARD FLYNN, CAPTAIN EDITH HUDSON, SERGEANT JASON MUCHA, OFFICER MICHAEL VAGNINI, OFFICER JACOB KNIGHT, OFFICER MICHAEL GASSER, OFFICER BARTOL, OFFICER SEITZ, and unknown Milwaukee Police Department employees and officers, awarding compensatory damages and attorneys' fees, as well as punitive damages against the Defendant Officers in their individual capacities, as well as any other relief this Court deems just and appropriate.

Case 2:13-cv-00771-LA   Filed 07/10/13   Page 29 of 30   Document 1

**JURY DEMAND**

Plaintiffs, S.C., Jerrod Ezell, Anthony Pettis, and L.L.R. hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

/s/ Heather Lewis Donnell
Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Heather Lewis Donnell
Elizabeth Mazur
Joel Feldman
Theresa Kleinhaus
LOEVY & LOEVY
312 North May, Suite 100
Chicago, IL 60607
(312) 243-5900

Robin Shellow
324 West Vine Street
Milwaukee, Wisconsin 53212
(414) 263-4488

30