IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| JAMES ASHFORD, S.C., KEON CANADA, M.C., WALTER COLEMAN, JERROLD EZELL, R.P., ANTHONY PETTIS, L.L.R., M.R., CHARLES SMITH, BRANDON GRAHAM, JEFFREY JEFFERSON, HENRY ZAK EZELL, MICHAEL CORBITT, DUANNE TOWNSEND, TRAVORIS WALTON, TERRY JACKSON, ALVERIA ROGERS, MICHAEL D. SMITH, JOSEPH BYNUM, DEVONTE HARRIS, and JIMMIE HORN | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | No. 2:13-cv-00771-LA |
| CITY OF MILWAUKEE, CHIEF EDWARD FLYNN, CAPTAIN EDITH HUDSON, SERGEANT JASON MUCHA, SERGEANT DELMAR WILLIAMS, MICHAEL VAGNINI, MICHAEL GASSER, JACOB KNIGHT, AMY BARTOL, JEFFREY DOLLHOPF, JOSEPH SERIO, STEPHANIE SEITZ, DANIEL VANDERVAST, JASON BLEICHWEHL, OFFICER VENTO, JEFFREY CLINE, GARY CHERONE, DAVID PASZKIEWICZ, ZACHARY THOMS, LOUIS KOPESKY, OFFICER KRUEGER, OFFICER MAGLIO, OFFICER KUSPA, OFFICER LELINSKI, OFFICER MARTINEZ, OFFICER LETIER, OFFICER SZEDIEWSKI, OFFICER JUAREZ, OFFICER VIERA, OFFICER ENK, OFFICER NAVARETTE, OFFICER TERRELL, and Unknown Milwaukee Police Department employees and officers, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge Lynn Adelman  Jury Trial Demanded |
| Defendants. | | |

**[PROPOSED] THIRD AMENDED COMPLAINT**

NOW COME Plaintiffs, JAMES ASHFORD, S.C., KEON CANADA,

M.C., WALTER COLEMAN, JERROLD EZELL, R.P., ANTHONY PETTIS,

EXHIBIT A

L.L.R., M.R., CHARLES SMITH, BRANDON GRAHAM, JEFFREY JEFFERSON, HENRY ZAK EZELL, MICHAL CORBITT, DUANNE TOWNSEND, TRAVORIS WALTON, TERRY JACKSON, ALVERIA ROGERS, MICHAEL D. SMITH, JOSEPH BYNUM, DEVONTE HARRIS, AND JIMMIE HORN and complaining of Defendants, CITY OF MILWAUKEE, CHIEF EDWARD FLYNN, CAPTAIN EDITH HUDSON, SERGEANT JASON MUCHA, SERGEANT WILLIAMS, OFFICER MICHAEL VAGNINI, OFFICER JACOB KNIGHT, OFFICER MICHAEL GASSER, OFFICER AMY BARTOL, OFFICER JEFFREY DOLLHOPF, OFFICER JOSEPH SERIO, OFFICER STEPHANIE SEITZ, DANIEL VANDERVAST, OFFICER JASON BLEICHWEHL, OFFICER VENTO, OFFICER JEFFREY CLINE, OFFICER GARY CHERONE, OFFICER DAVID PASKIEWICZ, OFFICER ZACHARY THOMS, OFFICER KOPESKY, OFFICER LOUIS KRUEGER, OFFICER MAGLIO, OFFICER KUSPA, OFFICER LELINKSI, OFFICER MARTINEZ, OFFICER LETIER, OFFICER SZEDEIEWSKI, OFFICER JUAREZ, OFFICER VIERA, OFFICER ENK, OFFICER NAVARETTE, OFFICER TERRELL, and Unknown Milwaukee Police Department employees and officers, ("Defendant Officers"), state as follows:

## Introduction

1.   This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution.

## Jurisdiction and Venue

2.   This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331.

3.   Venue is proper under 28 U.S.C. § 1391(b).   On information and belief, all or most of the parties reside in Milwaukee County, and the events giving rise to the claims asserted herein all occurred within this district.

4.   Plaintiffs, James Ashford, S.C., Keon Canada, M.C., Walter Coleman, Jerrold Ezell, R.P., Anthony Pettis, L.L.R., M.R., Charles Smith, Brandon Graham, Jeffrey Jefferson, Henry Zak Ezell, Michael Corbitt, Duanne Townsend, Travoris Walton, Terry Jackson, Alveria Rogers, Michael D. Smith, Joseph Bynum, Devonte Harris, and Jimmie Horn are residents of the City of Milwaukee.

5.   Defendant Edward Flynn is and was at the times relevant to this action, the Chief of the Milwaukee Police Department, acting under color of law and within the scope of his employment.Defendant Flynn is being sued in his individual and official capacities.

6.   Defendant Edith Hudson is and was at all times relevant to this action the Captain of the Fifth District of the Milwaukee Police Department, acting under color of law and within the scope of her employment.

7.   Sergeant Williams was a supervisor in the Fifth District.  At all times relevant to this action, Sergeant Williams acted under color of law and within the scope of his employment.

8. Sergeant Jason Mucha was a supervisor in the Fifth District and of its "power shift," consisting of a small group of officers assigned to target violent and drug crime during the 7pm to 3am shift. At all times relevant to this action, Sergeant Mucha acted under color of law and within the scope of his employment.

9. Defendant Officers Vagnini, Knight, Gasser, Bartol, Dollhopf, Serio, Sietz, Vandervast, Bleichwehl, Vento, Cline, Cherone, Paskiewicz, Thoms, Kopesky, Krueger, Maglio, Kuspa, Lelinski, Martinez, Letier, Szediewski, Juarez, Viera, Enk, Navarette, and Terrell, were Milwaukee police officers at all times relevant to this action, acting under color of law and within the scope of their employment as Milwaukee police officers.

10. Unknown Defendant Officers ("Unknown Defendant Officers") are current and/or former employees, officers, and/or supervisors of the Milwaukee Police Department who at all relevant times were acting under color of law and within the scope of their employment.

11. The City of Milwaukee is a Wisconsin municipal corporation with its principal place of business in Milwaukee, Wisconsin.

### *Background Facts*

12.  The Fourth Amendment and the Due Process Clause of the
Fourteenth Amendment require that all searches must be
reasonable.  To be reasonable, an invasive body cavity search
must be supported by probable cause and a warrant (if no
exigency exists), and must be conducted in private in a safe,
medically proper, and hygienic manner.

13.  Wisconsin law defines a "strip search" as a search in
which a detained person's genitals, pubic area, buttock or anus,
or a detained female person's breast, is uncovered and either is
exposed to view or is touched by a person conducting the search.
*See* Wis. Stat. Sec. 968.255(1)(b).

14.  A police officer may not perform a strip search on an
individual unless they have been "detained," which means they
have been arrested.

15.  In order to perform a strip search on a detained
person, the officer must "obtain[] the prior written permission
of the chief, sheriff or law enforcement administrator of the
jurisdiction where the person is detained, or his or her
designee, unless there is probable cause to believe that the
detained person is concealing a weapon." Wis. Stat. Sec.
968.255(2)(d).

16.  An officer conducting an authorized strip search must
do so in a way that makes "sure the person is not exposed to the

view of any person not conducting the search." Wis. Stat. Sec. 968.255(2)(b).

17.  Under Wisconsin law, it is illegal for police officers to perform body cavity searches of persons suspected to be secreting contraband in their bodies. Body cavity searches are illegal unless performed by a physician, physician assistant or registered nurse licensed to practice in the State of Wisconsin. *See* Wis. Stat. Sec. 968.255(3).

### *February 2010 Search of Mr. Ezell*

18.  In February 2010, Mr. Ezell was sitting in his car parked in front of his grandmother's home.

19.  Sergeant Mucha, along with Officers Vagnini and Knight approached his car with their weapons drawn.

20.  Officer Vagnini called to Mr. Ezell by his name and ordered him to get out of his car.

21.  Mr. Ezell asked what was going on, and why the officers had their guns pointed at him.

22.  Defendant Officers did not respond to Mr. Ezell's questions.Instead, Officer Vagnini asked him if he had any drugs on him.  Mr. Ezell responded that he did not.

23.  Officer Vagnini then said, "I know how you all get down," or words to that effect.

24.  Mr. Ezell then exited his car and Officer Vagnini searched him by patting him down.

25. Although he lacked probable cause to believe Mr. Ezell had any contraband on his person, Officer Vagnini proceeded to grab Mr. Ezell's scrotum and put his hand through Mr. Ezell's buttocks cheeks with a blading motion, all outside his pants.

26. Officer Vagnini then pulled open Mr. Ezell's pants at the waist and shined his flash light down in them.

27. Mr. Ezell asked Sergeant Mucha and Officers Knight and Vagnini whether Officer Vagnini was supposed to be doing this to him. None of the Defendant Officers responded.

28. Unsatisfied with his search of Mr. Ezell, Officer Vagnini then began to use his fingers to claw and attempt to penetrate Mr. Ezell's anus.

29. Officer Vagnini threatened Mr. Ezell stating: "If you try to run, I'll blow your fucking head off," or words to that effect.

30. Sergeant Mucha and Officer Knight stood by and watched Officer Vagnini's searches of Mr. Ezell, but did nothing to intervene or stop him.

31. No exigent circumstances justified Officer Vagnini's warrantless cavity search of Mr. Ezell much less is his forcible intrusion into Mr. Ezell's body in a non-hygienic, public setting by an officer who lacked any medical training to conduct a safe cavity search.

32.  Eventually, Officers Vagnini and Knight took Mr. Ezell to the Fifth District where he was booked.

33.  Mr. Ezell thereafter reported the assault to his parole officer.

34.  As a result of the illegal searches perpetrated and allowed by Sergeant Mucha, Officers Vagnini and Knight, Mr. Ezell experienced physical pain, emotional distress, humiliation, and trauma.

### February 27, 2010 Search of L.L.R.

35.  On February 27, 2010, L.L.R. was driving himself and two passengers towards the intersection of 12th and Chambers in the City of Milwaukee when he was stopped by Officers Vagnini and Gasser for an alleged traffic violation.

36.  L.L.R. had not committed any traffic violation. Rather, Officers Vagnini and Gasser used an alleged traffic stop as false pretense to search Plaintiff without probable cause.

37.  Officers Vagnini and Gasser approached L.L.R.'s car and ordered him to get out of his car.  Officer Vagnini went to the passenger side of the vehicle and Officer Gasser went to the driver's side of the vehicle. Officer Gasser conducted a pat-down of L.L.R.'s person and recovered no weapons.

38.  Officer Vagnini approached the driver's side of the vehicle and asked L.L.R. about "the drugs."  L.L.R. denied having any drugs on his person.

39. Officer Vagnini then assaulted L.L.R. by placing him in a chokehold, and began to pull back on L.L.R. neck.

40. As a result of Officer Vagnini's assault and chokehold, L.L.R. had trouble breathing.

41. While choking L.L.R., Officer Vagnini then put his hands inside L.L.R. underwear and violently probed L.L.R. in his anus.

42. L.L.R. began screaming in pain and humiliation.

43. Officer Gasser observed this assault and did nothing to intervene on L.L.R.'s behalf.

44. Officer Vagnini performed a cavity search of L.L.R. in public and without a warrant.

45. Officer Vagnini's warrantless cavity search of L.L.R. lacked any exigent circumstances to justify dispensing the need to obtain a warrant.Moreover, Officer Vagnini lacked any justification for his forcible intrusion into L.L.R.'s body in a non-hygienic, public setting by an officer who lacked any medical training to conduct a safe cavity search.

46. L.L.R. was taken into custody.

47. Once at the police station, L.L.R. made a complaint about Defendant Vagnini's conduct.

48. L.L.R. again complained about Officer Vagnini's conduct when he was admitted into the Milwaukee County Jail to a captain.

49. While incarcerated, L.L.R. met with officers from Internal Affairs and provided a statement complaining of Officer Vagnini's misconduct.

50. L.L.R. received a letter from Internal Affairs indicating that they were still investigating his complaint.

51. As a result of the illegal searches perpetrated and allowed by Officers Vagnini, Gasser and other Unknown Defendant Officers, L.L.R. experienced physical pain, emotional distress, humiliation, and trauma.

### *July 2011 Search of Mr. Pettis*

52. In July 2011, Mr. Pettis and some of his friends stopped at a gas station and were approached by Officers Bartol and Seitz. The Officers claimed that Mr. Pettis and his companions may have violated bail conditions.

53. Officers Bartol and Seitz brought Mr. Pettis to the Seventh District police station and placed him in an interrogation room.

54. Eventually, Officer Vagnini entered the room.

55. Despite having no probable cause to believe any weapons or drugs were concealed on Mr. Pettis' person, Officer Vagnini shoved his fingers inside Mr. Pettis' rectum.

56. Officer Vagnini did not have a warrant to conduct a cavity search of Mr. Ezell.

57.  Officer Vagnini then announced to Officers Bartol and Seitz, "This is how you search these guys," or words to that effect.

58.  At no time did Officer Vagnini obtain Mr. Pettis' consent for the July 2011 body cavity search, nor did Officer Vagnini have authorization from the court.   No circumstances justified Officer Vagnini's forcible entry into Mr. Pettis' body in a public, non-hygienic setting by an officer who lacked any medical training to safely perform such search.

59.  As a result of Officers Vagnini's, Bartol's and Seitz' actions, Mr. Pettis suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

### November 2011 Search of Mr. Ezell and Mr. Pettis

60.  In November 2011, Mr. Pettis and a Mr. Ezell were sitting on the front porch of a friend's home, waiting to meet her. As Mr. Pettis and Mr. Ezell waited, Officers Bartol and Seitz began observing them from a nearby alley.

61.  When their friend returned home, Mr. Pettis and Mr. Ezell helped their friend carry her groceries inside, where they gathered as the friend cooked a meal.

62.  Even though these Officers had no reason to think any crime was taking place, they entered the home.

63.  A few minutes after Officers Bartol and Seitz entered the home, dozens of other police officers began arriving at the

home, including Officers Vagnini and Knight.

64. When someone asked Officer Vagnini whether the Officers had a warrant to be in the home, he replied: "You are with Anthony Pettis and that is warrant enough" or words to that effect. None of the Defendant Officers had obtained a warrant to search Mr. Pettis or Mr. Ezell.

65. Despite having no probable cause, these Defendant Officers detained Mr. Pettis and Mr. Ezell.

66. Officer Vagnini ordered Mr. Pettis and Mr. Ezell to stand up.

67. Officer Vagnini then shoved his bare two fingers into both Mr. Ezell's and Mr. Pettis' rectums one after another without pausing to wash his hands or put on gloves.

68. Officer Vagnini did not have a warrant to conduct the cavity searches of Mr. Pettis or Mr. Ezell and he searched them in plain view of all of the other officers and Mr. Pettis' and Ezell's friend.Officer Vagnini's search of Mr. Pettis and Mr. Ezell was unsafe, non-hygienic, and performed by an officer who lacked any medical training to safely perform such searches.

69. No drugs were found on Mr. Pettis or Mr. Ezell.

70. Nevertheless, the Defendant Officers arrested Mr. Pettis and Mr. Ezell.

71. Mr. Pettis remained in custody and was held for five days and released with time served. Mr. Ezell was held for

several hours.

72. As a result of Officers Vagnini's, Bartol's, Seitz's and other Unknown Defendant Officers' actions, Mr. Pettis and Mr. Ezell suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

### Additional Searches of Mr. Pettis

73. Officer Vagnini stopped Anthony Pettis and performed illegal body cavity searches on Mr. Pettis numerous other occasions.

74. As a result of Officer Vagnini's repeated actions, Mr. Ezell suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

### *Summer 2011 Search of Keon Canada*

75. One evening during the summer of 2011, Keon Canada was driving in his vehicle when he was pulled over by Officer Vagnini and another as yet Unknown Defendant Officer.

76. Mr. Canada did not know why he was being stopped. Officer Vagnini told him to get out of the car, go to the back of the vehicle and put his hands up. Mr. Canada obeyed.

77. Officer Vagnini first conducted a pat-down of Mr. Canada.

78. Despite having no probable cause, Officer Vagnini then inserted his bare hand inside Mr. Canada's underwear and felt between his buttocks.

79. The other Milwaukee police officer with Officer Vagnini observed Officer Vagnini's actions and did not stop him.

80. Officer Vagnini then told Mr. Canada to sit on the curb and take off his shoes so that they could be searched.

81. No drugs were found during either search.

82. Officer Vagnini gave Mr. Canada a traffic ticket.

### *Second Search of Keon Canada*

83. A few weeks after the first search, Mr. Canada was driving alone near 28th and Roosevelt Streets at about 2:00 a.m. when he was stopped by one police vehicle.

84. Officer Vagnini and an as yet unidentified Defendant Officer approached Mr. Canada's car and ordered him to the back of the vehicle.

85. Although he lacked probable cause to believe that Mr. Canada had committed any offense, Officer Vagnini proceeded to put his bare hand inside Mr. Canada's underwear and felt between his buttocks.

86. When Mr. Canada tried to move away from Officer Vagnini in response, the as yet unidentified officer grabbed him to keep Mr. Canada from moving.

87. The as yet unidentified officer observed Officer Vagnini's actions and did nothing to stop him.

88. No drugs were found on Mr. Canada.

89. The Officers let Mr. Canada go and told him it was "too late" for him to be out, or words to that effect.

### *Third Search of Keon Canada*

90. A couple of days later, Mr. Canada was driving in the area of Hopkins and Glendale streets when Officer Vagnini pulled him over with as-yet unidentified Defendant Officer.

91. Officer Vagnini approached his vehicle and asked Mr. Canada where his brother J.A. was.

92. Mr. Canada provided Officer Vagnini his driver's license.

93. Officer Vagnini then proceeded to remove Mr. Canada from the car and conducted a pat down search of him.

94. Although he lacked probable cause to believe that Mr. Canada had committed any offense, Officer Vagnini grabbed Mr. Canada's underwear and pulled it up in between the cheeks of his buttocks.

95. Officer Vagnini then searched Mr. Canada by inserting his bare hand into his underwear and felt in between his buttocks.

96. Officer Vagnini then moved his hand forward and touched Mr. Canada's testicles.

97. The officer with Officer Vagnini observed his search of Mr. Canada, but did nothing to stop it.

98. No drugs were found.

99. Officer Vagnini then let Mr. Canada go.

### *July 2011 Search of Keon Canada*

100. In early July 2011, Mr. Canada was returning home with a friend after being out for the evening. He had just pulled up in front of his home when a police vehicle pulled up beside his car.

101. Officer Vagnini approached Mr. Canada's vehicle and ordered Mr. Canada and his friend to get out of the car. Both men obeyed.

102. Although he lacked probable cause to believe Mr. Canada had committed any offense, Officer Vagnini then proceeded to search Mr. Canada by inserting his bare hand into his underwear and moving his hand up and down between his buttocks with a blading motion.

103. Officer Vagnini then searched Mr. Canada's friend.

104. The police officer who was with Officer Vagnini stood by and watched Officer Vagnini's search of Mr. Canada and his friend, but he did not take any actions to stop it.

### *July 17, 2011 Search of Keon Canada*

105. On or about July 17, 2011 around 1:30pm in the afternoon, Mr. Canada was in his vehicle was pulled over in the alley behind his home by three police vehicles traveling together, which is referred to in the Fifth District's power shift as a "train." The "train" included two unmarked and one marked cars.

106. Officers Vagnini and Vandervast approached Mr. Canada's vehicle.   Mr. Canada rolled down his window and handed the officers his driver's license.

107. Although he lacked probable cause that Mr. Canada had committed any offense, Officer Vagnini opened Mr. Canada's car door and pulled him out of his vehicle and brought him to the car's rear bumper.

108. Officer Serio then had Mr. Canada put his hands on the trunk of his vehicle while he conducted a pat down search of Mr. Canada.

109. Officer Serio proceeded to then open up the front of Mr. Canada's pants and look into his pants.

110. The other officers, including Officers Vagnini and Vandervast observed Officer Serio's search of Mr. Canada, but did nothing to stop it.

111. As a result of Officer Vagnini's, Vandervast's, Serio's and other Unknown Defendant Officers' actions, Mr. Canada suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

### *September 2011 Search of R.P.*

112. In September 2011, R.P. was riding in the back seat of his friend's vehicle when Officer Vagnini was pulled over the vehicle for allegedly having excessive tint on the windows.

113. Officer Vagnini ordered R.P. to exit the vehicle. R.P. obeyed.

114. Officer Vagnini proceeded to conduct a pat down search of R.P.

115. Although he lacked probable cause to believe R.P. had committed any offense, Officer Vagnini then grabbed R.P.'s underwear and pulled it up in between R.P.'s buttocks.

116. Officer Vagnini then inserted his bare hand into R.P's pants and rubbed in between R.P.'s testicles and buttocks.

117. The Officers with Officer Vagnini observed his searches of R.P., but did nothing to stop it.

### December 2011 Search of R.P.

118. In December 2011, R.P. was in the car with his friend near 22nd and Capitol Streets at approximately 8p.m. in the evening when he was pulled over by a "train" of police vehicles.

119. Officers Vagnini and Knight along with approximately six other officers were part of the traffic stop.

120. Officer Vagnini ordered R.P. and his friend to get out of the car. They both obeyed.

121. Officer Vagnini first took R.P.'s watch that he was wearing. One of the other officers commented that Officer Vagnini was not allowed to do that. Officer Vagnini responded that he was taking it.

122. Although he lacked probable case, Officer Vagnini then searched R.P. by pulling his underwear up in between his buttocks. Then, Officer Vagnini used R.P.'s underwear as a shield and inserted his hand in between R.P.'s buttocks.

123. None of the other officers who stood by watching, including Officer Knight, did anything to stop Officer Vagnini.

124. After the search, the Defendant Officers let R.P. and his friend go without issuing any citations.

125. R.P. followed the police cars back to the Fifth District.

126. R.P. went inside to make a complaint regarding the officers' conduct and to obtain the inventory for his watch that Officer Vagnini took from him.

127. Sergeant Mucha approached R.P., who asked Sergeant Mucha for a complaint form.

128. Sergeant Mucha responded that he would not give R.P. a complaint form.Sergeant Mucha then threatened that he would call the FBI on R.P.

129. R.P. left the Fifth District without being able to file a complaint.

130. As a result of Sergeant Mucha's, Officers Vagnini's, Knight's, and other Unknown Defendant Officers' actions, R.P. suffered physical pain, emotional distress, anxiety, humiliation, shame and terror.

### The Summer 2011 Searches of M.C.

131. In the summer of 2011, M.C. was stopped and searched three times in a 24-hour period by Officers Vagnini, Knight and other Unknown Defendant Officers.

132. In the early afternoon one day, M.C. and his two companions were in a vehicle near the intersection of 11th and Capital streets. Plaintiff M.C. was in the backseat of the car.

133. Three police cars, part of the "train," began following the young men and pulled the car over.

134. Officers Vagnini and Knight, along with approximately six other as yet unidentified Milwaukee police officers, exited three vehicles.

135. Officer Vagnini went to the driver side of the car. Officer Vagnini told the young men that he pulled them over because one of the occupants of the car was with them.

136. Despite having no probable cause, Officer Vagnini told the young men to exit the vehicle and stand at the back of the vehicle.

137. Officer Vagnini then conducted a pat-down one of M.C.'s companions. After the external pat-down, M.C. observed Vagnini put his hand inside the man's pants and the man began yelling.

138. Officer Vagnini then conducted an external pat-down of M.C.  After the external pat-down, he put his hand inside M.C.'s pants and, using M.C.'s underwear as a "shield," glided his hand back and forth between M.C.'s buttocks with a blading motion.

139. Officer Vagnini then put his bare hand inside M.C.'s underwear and once again glided his hand back and forth between M.C.'s buttocks.

140. No drugs were found on any of the men, nor were any of them charged with a crime.  The men returned to their car and left.

141. Later that same day, in the early evening hours, the three young men were once again in the vicinity of 11th Street Capital Streets when the car was pulled over by Officers Knight, Vagnini, and two other as yet unidentified Milwaukee police officers. The officers were traveling in two vehicles.

142. Plaintiff M.C. was riding in the passenger seat of the car.

143. Officer Vagnini came to the driver's side of the car and shined a flashlight in the driver's face.

144. Officer Knight went to the passenger's side of the vehicle to speak to M.C.  The other two officers stood by watching.

145. Despite having no probable cause to do so, Officer Vagnini told all three men to get out of the car and go to the rear of the vehicle.

146. Officer Vagnini then patted down each of M.C.'s companions and put his hand inside of their pants.

147. Officer Vagnini then put his hand inside M.C.'s pants and, using M.C.'s underwear as a "shield," glided his hand back and forth between M.C.'s buttocks.

148. The Defendant Officers then searched the vehicle.

149. In the course of the search, the Defendant Officers threw clothing and other items found in the car into the middle of the street.

150. The Officers then told the young men to pick up these items from the street.

151. No drugs were found on any of the men, nor were any of them charged with a crime. The men returned to their vehicle and left.

152. Several hours later, in the early morning hours of the following day, M.C. was traveling alone near Humboldt and Center Streets in the same vehicle.

153. Five Milwaukee police officers on bicycles then began following M.C. Eventually a police car also began following M.C. Other police cars or other vehicles also joined the group.

154. M.C. pulled into an alley. Officer Vagnini approached M.C's vehicle from the front of his vehicle.

155. Defendant Vagnini then told M.C. to get out of the vehicle and go to the back of the car.

156. Despite having no probable cause to perform a search, Officer Vagnini first conducted a pat-down of M.C. Defendant Vagnini then put his hand inside M.C.'s pants and, using M.C.'s underwear as a "shield," glided his hand back and forth between M.C.'s buttocks.

157. Officer Knight and as yet unidentified Defendant Officers observed Vagnini's actions and did nothing to intervene.

158. No drugs were found and M.C. was not placed under arrest. He returned home.

### The December 31, 2011 Search of M.C.

159. On December 31, 2011 in the late evening hours M.C. was driving near 14th and Burleigh Streets in the City of Milwaukee. M.C.'s friend was asleep in the passenger seat.

160. M.C. exited the car briefly to check on a residence owned by a family member.

161. When he got back into his vehicle, he suddenly heard someone trying to open the driver's side door. M.C. could not tell who the person at the door was and saw a gun through the window.

162. M.C. drove off quickly.

163. Three cars then began following M.C.

164. When M.C. saw flashing lights on top of one of the cars, he realized the vehicles were police cars and he pulled over.

165. M.C. then put his arms outside of his car in a "V" formation to show that he was unarmed.

166. Without warning, Officer Vagnini quickly approached the car, swung his fist inside the vehicle, and hit M.C. in the face, breaking his glasses.

167. Officer Vagnini then grabbed a cord that was hanging from M.C.'s neck. Using the cord, Officer Vagnini then threw M.C. to the ground.

168. During this assault, five additional Milwaukee Police cars pulled up to the scene.

169. M.C. was lying face down on the ground. A Defendant Officer knelt on M.C.'s knees and another officer held down his arms.

170. Officer Vagnini then put one or two of his bare fingers inside M.C.'s anus. M.C. screamed in protest.

171. On information and belief, Officer Vagnini then performed a body cavity search on the passenger of the vehicle.

172. Officer Knight and as yet unidentified Milwaukee Police officers observed Vagnini's actions and did nothing to stop him.

173. No exigent circumstances justified Officer Vagnini's warrantless cavity search of M.C. much less his violent intrusion into M.C.'s body in a non-hygienic, public setting.

### *The January 7, 2012 Search of M.C.*

174. On or about January 7, 2012 in the midafternoon, M.C. was driving near 28th and Chambers Streets in the City of Milwaukee.

175. Three police cars approached M.C.'s car head on.

176. M.C. recognized Officer Vagnini as the driver of the unmarked car.

177. Officer Vagnini drove his car directly towards M.C.'s car and stopped in front of M.C.'s car.

178. M.C. put his vehicle in reverse and traveled approximately half a block away from Defendants' vehicles when Officer Vagnini activated the lights on his vehicle.

179. M.C. pulled his vehicle over and opened his car door.

180. Without warning or probable cause, Officer Vagnini then approached the driver's side of the vehicle, hit M.C. in the face, and grabbed a cord around M.C.'s neck. Using the cord, Officer Vagnini threw M.C. to the ground.

181. On information and belief, several civilian bystanders observed Vagnini's conduct.

182. M.C. was then laying face-down on the ground. Officer Vagnini then knelt on M.C.'s knees.

183. M.C. began shouting, "Record this, record this! He's harassing me. I'm sick of you harassing me! I don't have anything," or words to that effect.

184. Officer Vagnini then inserted 1-2 fingers inside of M.C.'s anus. M.C. continued yelling.

185. No exigent circumstances existed to justify Officer Vagnini dispensing of need for a warrant before conducting a cavity search of M.C., which was performed in a public setting. In addition, Officer Vagnini was not wearing any gloves nor did he take any health precautions in conducting his cavity search of M.C.

186. The other Defendant Officers present observed Defendant Vagnini's actions and did nothing to stop him.

187. An officer from Internal Affairs spoke with M.C. about what happened to him.

188. M.C. never received any further information from Internal Affairs with regard to its investigation.

189. As a result of Officer Vagnini's, Knight's and other Unknown Defendant officers' actions, M.C. suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

### *First Search of Mr. Coleman*

190. When Mr. Coleman was seventeen years old, he was pulled over in the vicinity of 21st Street and Keefe Avenue.

191. Two police cars, one marked one under cover, pulled

Mr. Coleman over for allegedly failing to stop completely at a stop sign.

192. Officer Vagnini approached Mr. Coleman's car and snatched him out of his vehicle.

193. Officer Vagnini first conducted a pat-down search of Mr. Coleman.

194. Without explanation, Officer Vagnini then handcuffed Mr. Coleman.

195. Although he lacked probable cause, Officer Vagnini proceeded to insert his hand in between Mr. Coleman's buttocks with a blading motion.

196. Officer Vagnini then reached forward and touched Mr. Coleman's penis.

197. None of the other Defendant Officers witnessing the search took any actions to stop Officer Vagnini.

### *Second Search of Mr. Coleman*

198. In the summer of 2011, Mr. Coleman was a gas station with a friend when he looked in his rear view mirror and observed Milwaukee police officers walking towards his vehicle, including Officers Vagnini and Dollhopf.

199. Although Mr. Coleman had not committed any offense, Officer Vagnini pulled Mr. Coleman out of his vehicle and asked him "What are you doing at a gas station?" or words to that effect.

200. Officer Vagnini moved Mr. Coleman to the back of his vehicle and the officers searched his vehicle.

201. Officer Vagnini then pulled out a pair of rubber gloves and put them on.

202. Mr. Coleman asked Officer Vagnini if he had a search warrant. Officer Vagnini laughed.

203. Although he lacked probable cause, Officer Vagnini proceeded to search Mr. Coleman by blading his hands in between his buttocks.

204. No drugs were found on Mr. Coleman.

205. Nevertheless, Officer Vagnini arrested Mr. Coleman and held him for approximately two hours and then released him Coleman without charging him.

### *Third Search of Mr. Coleman*

206. Approximately 3-4 months later, Officer Vagnini pulled Mr. Coleman over two times in one day.

207. During both occasions, Mr. Coleman was driving in his car and had not committed any traffic violations.

208. Although Officer Vagnini lacked probable cause, both times Officer Vagnini searched Mr. Coleman by using his

underwear as a shield and blading his hand in between Mr. Coleman's buttocks.

209. No drugs were found on Coleman on either occasion.

210. Mr. Coleman reported what had happened to him to his parole officer.

211. Later, Mr. Coleman met with Internal Affairs officers on two or three occasions to report Officer Vagnini's misconduct.

212. As a result of the illegal searches perpetrated and allowed by Officers Vagnini, Dollhopf and other Unknown Defendant Officers, Mr. Coleman experienced physical pain, emotional distress, humiliation, and trauma.

### *The First Search of Mr. Ashford*

213. Mr. Ashford was subjected to six inappropriate searches by the Defendant Officers during an approximately six month period beginning in the summer of 2011 when he was 19 years old.

214. The first time Mr. Ashford was stopped he was driving on 25th Street in Milwaukee. Mr. Ashford had two friends in the vehicle with him.

215. The "train," made up of three police cars, began following Mr. Ashford. He pulled over.

216. Officers Vagnini and Serio came to the driver's side of the vehicle.Six to eight as yet unidentified Defendant

Officers were also present.   Mr. Ashford had no idea why he was being stopped.

217. Officer Vagnini called Mr. Ashford by name and said "I know you're a drug dealer, where's the drugs?" or words to that effect.   Mr. Ashford denied having any drugs.

218. Officer Vagnini then asked if he could search the vehicle and Mr. Ashford consented.   No drugs were found in the search.

219. Despite having no probable cause to believe Mr. Ashford had committed any offense, Officer Vagnini then ordered all three occupants of the car to exit the vehicle, go the rear of the vehicle and put their hands up.

220. Officer Vagnini conducted an external pat-down of each young man.

221. Officer Vagnini then put his two bare fingers into the rectum of each young man, one after the other.

222. No exigent circumstances existed to justify Officer Vagnini's warrantless cavity search of Mr. Ashford or the other men.   Moreover, Officer Vagnini was not wearing any gloves nor did he take any health precautions before conducting the cavity searches.

223. The other six to eight Defendant Officers observed Defendant Vagnini's actions and did nothing to stop him from conducting the searches.

224. Officer Vagnini then forced the men to take off their shoes so they could be searched.

225. No drugs were found on any of the men and none of the men were arrested.

### *The Second Search of Mr. Ashford*

226. A few days after the first incident, Mr. Ashford was standing outside of his grandmother's house when a "train" of two or three unmarked police vehicles passed in front of him.

227. Officer Vagnini immediately said "Ashford, what are you doing out here?" or words to that effect. Mr. Ashford explained that the residence belonged to his grandmother.

228. Officer Vagnini responded, "You look suspicious. Where are the drugs?" or words to that effect. Mr. Ashford again denied having any drugs.

229. Officer Vagnini then conducted a pat down search of Mr. Ashford.

230. Despite having no probable cause to conduct a search, Officer Vagnini then told Mr. Ashford to turn around and put his hands up. He then searched him by inserting two bare fingers into Mr. Ashford's rectum.

231. There were no exigent circumstances to justify Officer Vagnini's warrantless cavity search of Mr. Ashford. In addition, Officer Vagnini conducted his cavity search of Mr. Ashford in a pubic setting without taking any health precautions.

232. Officers Serio, Knight, and at least one other as yet unidentified Milwaukee police officer, observed Officer Vagnini's actions and did nothing to stop him.

233. No drugs were found on Mr. Ashford and he was not arrested.

### *The Third Search of Mr. Ashford*

234. The third incident occurred a few days after the second incident.    Mr. Ashford was in Garden Homes Park with about a dozen other young people when a "train" of police vehicles, this time consisting of four to six unmarked vehicles, came through the park. Two to four police cars approached on one side of the recreation area where they young people were standing and the other cars approached on the opposite side. As a result, Mr. Ashford and his friends were surrounded by police officers on both sides.

235. Officer Vagnini along with eight to ten as yet unidentified Milwaukee Police Officers then rushed towards the young people with their guns drawn.

236. Officer Vagnini then said, "Ashford where are the drugs?" or words to that effect.    Mr. Ashford denied having any drugs.

237. Some Defendant Officers conducted external pat-downs of several young people, including Mr. Ashford.

238. Officer Vagnini then inserted his fingers in Mr. Ashford's rectum. He also inserted his fingers in the rectums of four or five other young people, one after another.

239. No exigent circumstances justified Officer Vagnini's warrantless cavity searches. Moreover, Officer Vagnini was not wearing any protective gloves nor did he take any other health precautions in conducting the sequential, public cavity searches these men.

240. Defendant Officers observed Defendant Vagnini's cavity searches and did nothing to stop him.

241. No drugs were found on Mr. Ashford and he was not arrested.

### *The Fourth Search of Mr. Ashford*

242. The fourth incident also occurred during summer 2011 while Mr. Ashford was sitting in a car with two friends.

243. Sergeant Mucha, along with other as yet unidentified Defendant Officers, approached the vehicle.

244. Despite having no probable cause to conduct a search, the Defendant Officers proceeded to search all three young men.

245. In the course of the search, one of the officers put his hand inside Mr. Ashford's underwear and touched his testicles.

246. Mr. Ashford began yelling and calling attention to the scene.

247. One of the officers said to Mr. Ashford's companions, "You don't want to go to jail, tell your friend to stop talking," or words to that effect.

248. Defendant Officers observed the inappropriate search and did nothing to intervene.

249. Mr. Ashford pleaded with bystanders to record the incident.

250. Mr. Ashford's relatives video recorded the moments just after Sergeant Mucha's search.

### *The Search of Mr. Ashford and Mr. Graham*

251. In December 2011, Mr. Ashford was driving on 26th Street in Milwaukee with Brandon Graham and another friend when Officers Vagnini, Knight, Bleichwehl, Kopesky, and Thoms stopped the car.

252. The officers told the young men to get out of the car.

253. Officer Vagnini asked Mr. Ashford about "some drugs," or words to that effect. Mr. Ashford denied having any drugs.

254. The Officers then conducted a pat down search of Mr. Ashford and Mr. Graham and their friend.

255. Officer Vagnini then put his two bare fingers into the rectums of James Ashford and Brandon Graham, one after the other. There was no probable cause to conduct a search of either man.

256. Officer Vagnini's warrantless cavity searches of Mr. Ashford and Mr. Graham lacked any exigent circumstances to justify them, took place in a public setting, and lacked hygienic procedures.

257. Defendant Officers, including Officers Knight, Bleichwehl, Kopesky, and Thoms observed Defendant Vagnini's actions and did nothing to stop him.

### *The Sixth Search of Mr. Ashford*

258. The sixth incident also occurred in December 2011. Mr. Ashford was sitting in his parked car in front of his grandmother's house when the "train," made up of a few unmarked cars, drove through the neighborhood.

259. Officers Vagnini, Bleichwehl, Serio, Vandervast, and Vento, and other as yet unidentified Milwaukee Police officers pulled their cars up in front of Mr. Ashford. One of the officers said, "We caught [ASHFORD's friend,] we know soon we'll catch you," or words to that effect.

260. The officers parked their car at an angle so that Mr. Ashford could not leave.

261. Despite having no probable cause to conduct a search, the officers pulled Mr. Ashford from the car.

262. After conducting a pat down, Officer Vagnini then searched him by putting his two fingers in Mr. Ashford's rectum.

263. No exigent circumstances existed to support Officer Vagnini's warrantless cavity search of Mr. Ashford much less his violent entry into Mr. Ashford's body in a public setting that lacked basic hygienic procedures.

264. Defendant Officers, including Officers Bleichwehl, Serio, Vandervast, and Vento, observed Officer Vagnini's actions and did nothing to stop him.

265. No drugs were found on Mr. Ashford and he was not arrested.

266. In the summer of 2011, Mr. Ashford's mother filed a complaint with the Fifth District regarding the ongoing harassment of her son by Officer Vagnini and his fellow officers.

267. Mr. Ashford and several of his close relatives, including his mother, met with Sergeant Williams and Officers Vandervast and Vento in the summer of 2011.

268. The meeting occurred at the Fifth District and lasted for approximately one hour.

269. During the meeting, Mr. Ashford and his family members reported to Sergeant Williams and the other Officers, the conduct of Defendant Officers, and specifically detailed Defendant Vagnini's repeated, warrantless rectal searches of Mr. Ashford and his friends.

270. Sergeant Williams responded to Mr. Ashford and his family's complaint about the officers' harassing conduct by telling Mr. Ashford to stay out of certain neighborhoods, or words to that effect.

271. At no point did Sergeant Williams acknowledge that Defendant Officers' actions, including Officer Vagnini's warrantless cavity searches, were inappropriate, nor did he indicate that the officers would be investigated or disciplined for their conduct.

272. Mr. Ashford never received any further information from the Milwaukee Police Department regarding the supervision or discipline of the involved officers.

273. As a result of Sergeant Williams, Sergeant Mucha, and Officers Vagnini, Serio, Knight, Bleichwehl, Vandervast, Vento, Kopesky, Thoms, and other Unknown Defendant Officers' actions, Mr. Ashford suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

### *Additional Searches of Brandon Graham*

274. In addition to the December 2011 search described in paragraphs 247-253, Officer Vagnini conducted at least two other body cavity searches of Brandon Graham in public in the time period from 2009-2011.

275. Officer Vagnini had no probable cause, let alone exigent circumstances, justifying these public, violent body

cavity searches.

276. Unknown Defendant Officers observed one or more of these searches and did nothing to stop Officer Vagnini's actions.

277. As a result of the actions of Vagnini, Knight, Kopesky, Thoms, and Unknown Defendant Officers, Brandon Graham suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

### *Search of S.C.*

278. On or about the spring of 2012, S.C. was driving home in his car when he was pulled over by three police vehicles that were traveling together in a "train," including two unmarked and one marked, in the alley behind his home.

279. Defendant Officers had no probable cause to believe S.C. had committed any crime.

280. Three officers, including Officer Vagnini, approached his car with their guns drawn.

281. Without warning or probable cause, one of the Defendant Officers opened S.C.'s car door, reached in and pulled him out.

282. Officer Vagnini then searched S.C., grabbing his testicles with his bare hands and pulling S.C.'s underwear into the crack of his buttocks.

283. Officer Vagnini did not recover any drugs on S.C.'s person.

284. One of the Defendant Officers handcuffed S.C., but they did not charge him with any crimes or take him to the police station. Instead, they released S.C.

285. S.C. filed a complaint with the Milwaukee Police Department's Internal Affairs on or about the following day, but he did not hear anything in response.

286. As a result of Officer Vagnini's and other Unknown Defendant Officers' actions, S.C. suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

### *Search of Jeffrey Jefferson*

287. On or about April 10, 2011, near 24th Street in Milwaukee, Jeffrey Jefferson was approached by Officers Vagnini, Cline, and other Unknown Defendant Officers.

288. Officer Vagnini punched Jefferson several times in his face, which resulted in Jefferson falling to the ground. The officers then handcuffed Jefferson's hands behind his back.

289. Vagnini then made the following racially derogatory comment, "Where the drugs at, n---er?" or words to that effect. One of the officers pushed Mr. Jefferson against the wall. Officer Vagnini put on a pair of gloves and inserted his finger into Mr. Jefferson's anus. There was no probable cause to

conduct a body cavity search.

290. No drugs were recovered from this search.

291. Officer Cline observed Officer Vagnini's actions and did nothing to stop him.

292. No exigent circumstances existed to justify the warrantless, violent search of Mr. Jefferson in a public and unhygienic setting.

293. As a result of Officer Vagnini's and other Unknown Defendant Officers' actions, Mr. Jefferson suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

### *November 2010 Search of M.R.*

294. In November of 2010, M.R. was stopped by Officer Krueger outside of a convenience store. Officers Vagnini, Kopesky and Knight then arrived at the same location.

295. Despite having no probable cause to do so, Officer Vagnini put his fingers inside M.R.'s underwear and placed his fingers inside M.R.'s rectum.

296. No drugs were recovered in this search.

297. No exigent circumstances justified this search in a public, unhygienic setting.

298. Officers Krueger, Kopesky and Knight observed Officer Vagnini's actions and did nothing to stop him.

### *February 2011 Search of M.R.*

299. In February of 2011, Officers Vagnini, Dollhopf, and Cline again stopped M.R., this time on or about 26th St. in the City of Milwaukee.

300. Officer Vagnini searched M.R., putting his fingers inside M.R.'s rectum. Vagnini lacked probable cause to conduct a search of M.R.'s person.

301. No exigent circumstances justified this search in a public, unhygienic setting.

302. Officers Dollhof and Cline observed Officer Vagnini's actions and did nothing to stop him.

### *Additional Searches of M.R.*

303. Unfortunately, the foregoing two searches were not the only assaults M.R. experienced.

304. On multiple occasions between May 2009 and March 2011, Officer Vagnini conducted public body cavity searches of M.R.

305. On each occasion, Officer Vagnini inserted his fingers into M.R.'s anus.

306. Officer Vagnini acted without probable cause on each occasion.

307. Unknown Defendant Officers observed one or more of these searches and did nothing to stop Officer Vagnini's actions.

308. M.R. attempted to inform Officer Kuspa about the inappropriate searches, but Officer Kuspa indicated he did not want to hear the information. On information and belief, Officer Kuspa took no action to stop the inappropriate searches or investigate them.

309. No exigent circumstances existed to justify the warrantless, violent search of M.R. in a public and unhygienic setting.

310. As a result of Officer Vagnini, Knight, Krueger, Cline, Dollhopf, and Unknown Defendant Officers' actions, M.R. suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

### *First Search of Charles Smith*

311. In January 2011, Charles Smith was driving in the City of Milwaukee when Officer Vagnini, Officer Knight, and other Unknown Defendant Officers pulled over his vehicle.

312. Defendant officers had no cause to believe that Mr. Smith had committed any crime.

313. Officer Vagnini pulled down Mr. Smith's clothing and underwear and put his fingers in Mr. Smith's anus. There was no probable cause to conduct a search of Mr. Smith's person.

314. No drugs were recovered from this search.

315. No exigent circumstances existed to justify the warrantless, violent search of Mr. Smith in a public and unhygienic setting.

316. Officer Knight and other Unknown Defendant Officers observed Officer Vagnini's actions and did nothing to stop him.

### Second Search of Charles Smith

317. Later in the winter of 2011 Charles Smith was driving near 31st St. and Hampton in the City of Milwaukee when he was stopped by Officer Vagnini and Unknown Defendant Officers.

318. Defendant officers had no cause to believe that Mr. Smith had committed any crime. There was no probable cause to conduct a search of Mr. Smith's person.

319. Officer Vagnini put his fingers in Mr. Smith's anus.

320. No drugs were recovered from this search.

321. No exigent circumstances existed to justify the warrantless, violent search of Mr. Smith in a public and unhygienic setting.

322. Unknown Defendant Officers observed Officer Vagnini's actions and did nothing to stop him.

### Third Search of Charles Smith

323. Later in 2011, Charles Smith was standing near 19th Place and Hampton in the City of Milwaukee when Officer Vagnini and Unknown Defendant Officers approached in several vehicles.

324. Despite having no probable cause to do so, Officer Vagnini put his fingers in Mr. Smith's anus.

325. No drugs were recovered from this search.

326. No exigent circumstances existed to justify the warrantless, violent search of Mr. Smith in a public and unhygienic setting.

327. Unknown Defendant Officers observed Officer Vagnini's actions and did nothing to stop him.

328. As a result of Officer Vagnini's, Officer Bleichwehl's and other Unknown Defendant Officers' actions, Mr. Smith suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

### *Search of Henry Zak Ezell*

329. On November 9, 2008 while driving on or about N. 20th St. in the City of Milwaukee, Henry Ezell was stopped by Officers Pasziewicz and Cherone for a traffic violation.

330. Officers Pasziewicz and Cherone performed a pat-down search of Mr. Ezell and searched the vehicle. They discovered no drugs.

331. Officers Vagnini, Knight, Dollhopf, Maglio, and Cline arrived and surrounded the car.

332. Despite having no probable cause to do so, Officer Vagnini reached inside Mr. Henry Ezell's clothing and bladed his hand between Mr. Henry Ezell's buttocks. Officer Vagnini then

put his fingers inside Mr. Ezell's anus.

333. Officers Pasziewicz, Knight, Dollhopf, Maglio, Cherone, and Cline observed Officer Vagnini's actions and did nothing to stop him.

334. No exigent circumstances existed to justify the warrantless, public, and unhygienic search of Mr. Ezell.

335. As a result of the actions of Officers Vagnini, Knight, Dollhopf, Maglio, Cline and other Unknown Defendant Officers' actions, Mr. Henry Ezell suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

### *June 2009 Search of Michael Corbitt*

336. In June of 2009, Michael Corbitt was standing outside a relative's home in the City of Milwaukee, visiting with his family members and friends.

337. Officer Vagnini suddenly approached the area where Mr. Corbit was standing with his family and told Corbitt to step aside and place his hands on a nearby vehicle.

338. Officer Vagnini then donned gloves and informed Mr. Corbitt that he intended to perform a rectal search.

339. Michael Corbitt objected strongly.

340. Officer Vagnini then proceeded to shove his gloved fingers into Mr. Corbitt's anus.

341. Officer Vagnini had no warrant to conduct the search and no exigent circumstances existed to justify the public,

non-hygenic search.

342. No drugs were recovered in the course of this search.

343. As a result of the unreasonable search, Mr. Corbitt suffered pain, suffering, and emotional distress.

### *November 2009 of Michael Corbitt*

344. In November of 2009, Milwaukee Police Officers Vagnini, Krueger, Lelinski, Martinez, Dollhopf, and Mucha came to the home of Michael Corbitt's uncle looking for Michael Corbitt.

345. The officers found Mr. Corbitt who was wearing only his underwear.

346. Officer Vagnini told Mr. Corbitt, "Stand up, I need to search you." Mr. Corbitt replied that he was in his underwear. Officer Vagnini replied, "You know what I mean."

347. Officer Vagnini proceeded to force Mr. Corbitt face forward towards a table. Two other officers held Mr. Corbitt's arms down.

348. Officer Vagnini then pulled Mr. Corbitt's underwear down and shoved his fingers into Mr. Corbitt's anus.

349. The other officers did nothing to prevent Officer Vagnin's intrusive and violent search.

350. Officer Vagnini had no warrant to conduct the violent search of Mr. Corbitt and no exigent circumstances existed to justify it.

351. As a result of the actions of Officers Vagnini, Krueger, Lelinski, Martinez, Dollhopf, and Mucha, Mr. Corbitt suffered physical pain and suffering, emotional distress, anxiety, humiliation, shame and terror.

### Search of Duanne Townsend

352.  In April 2011, Duanne Townsend was apprehended at his home by several Milwaukee police officers.

353. Officer Vagnini began searching Mr. Townsend and put his hands inside Mr. Townsend's underwear.

354. When Mr. Townsend protested, Officer Vagnini continued to claw at Mr. Townsend genital area.

355. Officers Letier and Knight were present for the unreasonable search and did nothing to stop it.

356. Officer Vagnini had no warrant to conduct the search and no exigent circumstances warranted the unsafe and non-hygenic search.

357. As a result of Officer Vagnini's, Knight's and Leitier's actions, Mr. Townsend suffered pain, suffering, emotional distress, anxiety, humiliation, shame and terror.

### Search of Travoris Walton

358.  In September of 2008, Travoris Walton was walking towards his car in the City of Milwaukee.

359. Travoris Walton was stopped by Milwaukee Police Officers Szedziewski, Juarez, Viera, Enk, Navarette, and

Terrell. Some of the officers were dressed in plain clothes.

360. The officers conducted two pat-down searches of Mr. Walton's person.

361. The officers then pushed Mr. Walton onto the hood of the car.

362. One of the officers then went inside Mr. Walton's clothing and one of them put his or her fingers inside his anus.

363. The other officers present stood by and watched, but did nothing to stop the invasive search of Mr. Walton.

364. There was no warrant for this search and no exigent circumstances justified the unsafe and non-hygenic search.

365. As a result of the actions of Officers Szedziewski, Juarez, Viera, Enk, Navarette, and Terrell, Mr. Walton suffered physical pain, emotional distress, anxiety, humiliation, shame and terror.

### *Search of Terry Jackson*

366. In December of 2010, Terry Jackson was near the intersection of Kilborn and Wells Street in the City of Milwaukee.

367. Milwaukee Police Officers Gajevic, Wiesmueller, and Strasser approached Mr. Jackson with their guns drawn and handcuffed him.

368. Officer Gajevic then unbuttoned Mr. Jackson's pants, reached inside his underwear and touched Mr. Jackson's genitalia.

369. Officers Wiesmuelller and Strasser stood by and watched, but took no actions to stop the invasive search of Mr. Jackson.

370. Officer Gajevic did not have a warrant to conduct this public, unreasonable search of Mr. Jackson and no exigent circumstances existed to justify the unsafe and non-hygenic search.

371. As a result of Officers Gajevic's, Wiesmueller's, and Strasser's actions, Mr. Jackson suffered physical pain, emotional distress, anxiety, humiliation, shame and terror.

### Search of Alveria Rogers

372. In March of 2013, Alveria Rogers was sitting with friends in his vehicle near 27th and Capital in the City of Milwaukee.

373. Three Milwaukee police cars approached Mr. Rogers without activated sirens or lights.

374. Three Milwaukee Police Officers walked towards Mr. Rogers' vehicle and told the occupants to exit the car.

375. Detective Zebdee Wilson then unbuckled Mr. Rogers' pants and put his hand inside Mr. Rogers' underwear, fondling his genitalia and rectal area.

376. Detective Wilson did not have a warrant to conduct this public, unreasonable search of Mr. Rogers and no exigent circumstances existed to justify the unsafe and non-hygenic search.

377. Officers Takacs, Tucker and Johnson witnessed Officer Wilson's invasive search of Mr. Rogers but did nothing to stop it.

378. As a result of the actions of Officers Wilson, Takacs, Tucker and Johnson, Mr. Rogers suffered emotional distress, anxiety, humiliation, shame and terror.

### *Search of Michael D. Smith*

379. In August of 2011, Mr. Smith was arrested by Milwaukee Police officers, including Officer Jacob Knight, and taken to the Fifth District police station.

380. Upon arrival at the Fifth District police station, Mr. Smith was taken to a small room off of the garage.

381. Mr. Smith was handcuffed to a bench in the small room.

382. Officer Knight asked Mr. Smith if he "had any dope" and then proceeded to push his hand inside of Mr. Smith's underwear.

383. Officer Knight recovered no contraband.

384. Officer Knight told Mr. Smith "You're lucky you don't have no pipe on you because I would've stuck that up your ass, too."

385. Officer Knight did not have a warrant to conduct this unreasonable search of Mr. Smith and no exigent circumstances existed to justify the unsafe and non-hygenic search.

386. As a result of Officer Knight's actions, Mr. Smith suffered pain, emotional distress, anxiety, humiliation, shame and terror.

### *2009 Search of Jimmie Horn*

387. In early 2009, Mr. Horn was driving near the intersection of 23rd and Hopkins in the City of Milwaukee when an unmarked police vehicle pulled up near him.

388. Officer Vagnini used a bullhorn to announce that Mr. Horn should step out of the car.

389. Mr. Horn exited the vehicle and Officer Vagnini and Sergeant Mucha approached Mr. Horn.

390. Officer Vagnini placed his bare hand inside Mr. Horn's clothing, "blading" between his buttocks and inserting his finger inside Mr. Horn's rectum.

391. No drugs or contraband were recovered in the search.

392. Officer Vagnini had no warrant to conduct the search and no exigent searches existed to justify the public, non-hygenic search.

### *Summer 2010 Search of Jimmie Horn*

393. In July 2010, Mr. Horn was driving in the City of Milwaukee near the intersection of 29th and Ruby when he was

pulled over by Officer Vagnini and one other Unknown Defendant Officer.

394. Officer Vagnini immediately asked "Where the drugs?" and Mr. Horn stated that he did not have any.

395. Officer Vagnini moved Mr. Horn to the back of the vehicle where Officer Vagnini placed his bare hand inside Mr. Horn's pants "blading" between his buttocks and inserting his finger inside Mr. Horn's rectum.

396. No drugs or contraband were recovered in the search.

397. The Unknown Defendant Officer observed the violent, intrusive search and did nothing to stop it.

398. Officer Vagnini had no warrant to conduct the search and no exigent circumstances existed to justify the public, non-hygenic search.

### *Late 2010 Search of Jimmie Horn*

399. In late 2010, Mr. Horn was driving in the City of Milwaukee near the intersection of 27th and Capital when he was pulled over by the "train."

400. Officer Vagnini approached the driver's side of the vehicle and told Mr. Horn to exit the vehicle.

401. Mr. Horn was taken to the passenger side of the vehicle where an officer conducted a pat down search of Mr. Horn's person.

402. Officer Vagnini then placed his bare hand inside Mr.

Horn's pants, "blading" between his buttocks and inserting his finger inside Mr. Horn's rectum.

403. Unknown Defendant Officers were present for the violent and intrusive search and did nothing to stop it.

404. No drugs or contraband were recovered in the course of this search.

405. Officer Vagnini had no warrant to conduct the search and no exigent circumstances existed to justify the public, non-hygenic search.

*Autumn 2011 Search of Jimmie Horn*

406. In Autumn of 2011, Mr. Horn was driving near the intersection of 21st and Keys in the City of Milwaukee when he was stopped by Officer Vagnini.

407. Officer Vagnini approached the vehicle and ordered Mr. Horn to step out.

408. Officer Vagnini then placed his bare hand inside Mr. Horn's pants, "blading" between his buttocks and placing his finger inside Mr. Horn's rectum.

409. No drugs or contraband were recovered in the course of the search.

410. Officer Vagnini had no warrant to conduct the search and no exigent circumstances existed to justify the public, non-hygenic search.

### *Additional Searches of Mr. Horn*

411. On numerous other occasions, Mr. Horn was stopped by Officer Vagnini and subjected to public, warrantless body cavity searches that were not justified by any exigent circumstances.

412. No drugs or contraband were recovered during any of these searches.

413. As a result of the actions of Defendants Vagnini, Mucha, and other Unknown Defendant Officers, Mr. Horn experienced emotional distress, anxiety, humiliation, shame, and terror.

### *Winter 2011 Search of Devonte Harris*

414. During the winter of 2011, Mr. Harris was a passenger in a vehicle traveling near the intersection of 27th and Atkinson in the City of Milwaukee when he was stopped by Officer Vagnini, Officer Knight, and other Unknown Defendant Officers in "the train."

415. Officer Vagnini approached Mr. Harris, pulled his underwear back and down, placed his bare hand between Mr. Harris' buttocks and inserted his fingers inside Mr. Harris' anus.

416. No drugs or contraband were recovered in the course of the search.

417. Officer Vagnini had no warrant to conduct the search and no exigent circumstances existed to justify the public, non-hygenic search.

418. Officer Knight and other Unknown Defendant Officers observed the violent, intrusive search and did nothing to stop it.

### *Second Winter 2011 Search of Devonte Harris*

419. Approximately six weeks after the first search of Mr. Harris in the winter of 2011, Mr. Harris was once again stopped by Officer Vagnini when Mr. Harris was traveling near the intersection of Third and Center in the City of Milwaukee.

420. Officer Vagnini approached the vehicle to search Mr. Harris and Mr. Harris objected strongly.

421. Officer Vagnini placed his bare hand inside Mr. Harris' clothing, "blading" between Mr. Harris' buttocks and inserting his fingers inside Mr. Harris' rectum.

422. No drugs or contraband were recovered in the course of the search.

423. Officer Vagnini had no warrant to conduct the search and no exigent circumstances existed to justify the public, non-hygenic search.

424. Unknown Defendant Officers observed the violent, intrusive search of Mr. Harris, but they did nothing to stop it.

### *Summer 2012 Search of Devonte Harris*

425. During the summer of 2012, Mr. Harris was standing outside with his friends near a relative's home in the City of Milwaukee, when Officer Vagnini and the "train" approached the group.

426. Officer Vagnini placed his bare hand inside Mr. Harris' clothing, "blading" between his buttocks and inserting his fingers inside Mr. Harris' anus.

427. No drugs or contraband were recovered during the search.

428. Officer Vagnini had no warrant to conduct the search and no exigent circumstances existed to justify the public, non-hygenic search.

429. Unknown Defendant Officers observed the violent, intrusive search, but they did nothing to stop it.

### *Second Summer 2012 Search of Devonte Harris*

430. During the summer of 2012, Mr. Harris was near Cornell St. in the City of Milwaukee traveling in a vehicle with two friends when Officer Vagnini stopped the vehicle.

431. Officer Vagnini placed his bare hand inside Mr. Harris' clothing, "blading" between his buttocks and inserting his fingers inside Mr. Harris' anus.

432. No drugs or contraband were recovered during the search.

433. Officer Vagnini had no warrant to conduct the search and no exigent circumstances existed to justify the public, non-hygenic search.

434. Unknown Defendant Officers observed the violent, intrusive search, but they did nothing to stop it.

435. As a result of the actions of Defendant Vagnini, Knight and other Unknown Defendant Officers, Mr. Harris experienced emotional distress, anxiety, humiliation, shame, and terror.

### *2009 Search of Joseph Bynum*

436. On April 20, 2009, Plaintiff Joseph Bynum went at the Citgo gas station located at 20th and Hopkins in the City of Milwaukee to purchase gasoline.

437. Mr. Bynum was waiting in his car while the gas pumped when he was startled by an Unknown Milwaukee Police Officer outside his driver's side window with a gun pointed at his head.

438. The Defendant Officer pulled Mr. Bynum out of his car.

439. Approximately ten additional Unknown Defendant Officers were surrounding Mr. Bynum's car.  The officers proceeded to demand Mr. Bynum to tell them what was going on.

440. Mr. Bynum responded that he had no idea what they were talking about.

441. The Defendant Officers proceeded to perform a pat down search of Mr. Bynum.

442. When the Defendant Officers failed to find any contraband on his person, the Defendant Officers proceeded to assault Mr. Bynum by striking him in his face and body.  Mr. Bynum was forced to the ground as the Defendant Officers continued to punch and kick him.

443. The other Defendant Officers, who were present but not assaulting Mr. Bynum, stood by and watched without taking any action to stop the others Defendant Officers' assault of Mr. Bynum.

444. The Defendant Officers then handcuffed and arrested Mr. Bynum.  The Defendant Officers searched Mr. Bynum's person again, but found no contraband.

445. Mr. Bynum was transported to the Fifth District in a police conveyance wagon.   Several of the Defendant Officers rode in the back of the wagon with him.

446. Once at the Fifth District, the Defendant Officers placed Mr. Bynum in a room located in the garage of the Fifth District.  The Unknown Defendant Officers handcuffed Mr. Bynum to the wall in the room.

447. Then, two of the Unknown Defendant Officers entered the room and one of the Unknown Defendant Officers pulled down Mr. Bynum's pants and underwear and proceeded to insert his

gloved fingers into the Mr. Bynum's rectum and retrieved narcotics from Mr. Bynum's anus.

448. The other Unknown Defendant Officer that was present stood by and witnessed the unauthorized cavity search of Mr. Bynum, but failed to take any actions to stop it.

### *2013 Search of Joseph Bynum*

449. In 2013, Joseph Bynum was driving a vehicle in the City of Milwaukee when he was pulled over by a Milwaukee police vehicle.

450. Two Unknown Defendant Officers approached Mr. Bynum's vehicle. One of the Unknown Defendant Officers stated that he recognized Mr. Bynum from the 2009 search described above.

451. The Unknown Defendant Officer then ordered Mr. Bynum out of his car.

452. The Unknown Defendant Officer inserted his hand inside Mr. Bynum's clothing and "bladed" it between Mr. Bynum's buttocks.

453. The other Unknown Defendant Officer witnessed the intrusive search of Mr. Bynum, but did nothing to stop it.

454. No contraband was recovered in the search.

455. The Unknown Defendant Officer had no warrant to conduct the search and no exigent circumstances existed to justify it.

456. As a result of Defendant Officers' actions, Mr. Bynum suffered physical pain, emotional distress, anxiety, humiliation, shame and terror.

### *John Doe Proceeding*

457. On information and belief, on or about March 2012, the Milwaukee County District Attorney's Office initiated a "John Doe" proceeding to investigate the allegations of illegal strip and cavity searches within the Milwaukee Police Department.

458. On information and belief, the John Doe proceeding included testimony from 30 victims of illegal strip and cavity searches performed by Milwaukee Police Officers.

459. On October 8, 2012, the State of Wisconsin charged Officers Vagnini, Knight, Dollhopf and one other officer for their criminal conduct with respect to illegal body cavity and strip searches of Milwaukee citizens. In the criminal complaint, the State charged Defendant Vagnini with two counts of illegal cavity searches, eight counts of illegal strip searches, four counts of second degree sexual assault, one count of third degree sexual assault, two counts of fourth degree sexual assault, and eight counts for misconduct in public office/act in excess of lawful authority.

460. The State charged Defendant Dollhopf with one count of illegal cavity search, one count of illegal strip search, and two counts of misconduct in public office/act in excess of

lawful authority.

461. The State charged Defendant Knight with one count of illegal cavity search and one count for misconduct in public office/act in excess of lawful authority.

462. On November 15, 2012, the State filed a Criminal Information adding two additional counts against Officer Vagnini for false imprisonment and misconduct in office.

463. On April 22, 2013, Officer Vagnini entered a no contest plea to four misdemeanor charges of illegal strip/cavity searches (Counts 1, 4, 6, and 9) and four felony charges of misconduct in office/excess authority (Counts 3, 5, 8 and 11).

464. In his plea, Officer Vagnini pleaded no contest to, inter alia, his February 27, 2010, illegal body cavity search of L.L.R.

465. On June 21, 2013, the court sentenced Officer Vagnini to 26 months imprisonment and 34 months of extended supervision.

466. On July 12, 2013, Officer Knight pleaded no contest to one count of conducting an illegal body cavity search.

467. On October 21, 2013, Officer Dollhopf pleaded no contest to one count of disorderly conduct as a party to a crime.

*City of Milwaukee*

468. As early as 2008, Internal Affairs and other municipal authorities received complaints about Defendant Officers' inappropriate strip and body cavity searches of citizens, particularly from the Fifth District, although not exclusively limited to that district.  These complaints demonstrated a clear and obvious pattern of illegal and abusive cavity searches.

469. Despite receiving similar complaints from citizens over several years, Internal Affairs repeatedly found no merit to these complaints, ignored the existence of a clear pattern of complaints, and did not recommend discipline for any of the subject officers.

470. Indeed, in a Milwaukee Journal Sentinel article dated April 21, 2013, Chief Flynn admitted that the Department had been receiving complaints for a "couple of years" before it opened its own investigation of the allegations.

471. In addition, supervisors within the Department, specifically Defendants Captain Edith Hudson, Sergeant Williams and Sergeant Jason Mucha, had knowledge of the repeated complaints of strip and body cavity searches.

472. In fact, several body cavity searches were conducted at the Fifth District where supervisors were knowledgeable of the illegal searches.

473. Despite their knowledge of these illegal searches, the policymakers, including but not limited to Defendants Flynn, Hudson, Williams and Mucha, took no action to train, supervise or discipline the officers who committed these knowingly illegal searches.

474. Instead, certain of the Defendant Officers were rewarded with commendations for their aggressive police tactics and jobs well-done by their Supervisors, including commendations from Chief Edward Flynn.

## Count I - 42 U.S.C. § 1983
### Fourth Amendment/Illegal Search and Seizure

475. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

476. As described in the preceding paragraphs, various of the Defendant Officers violated each of the Plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures.

477. As described in the preceding paragraphs, the Defendant Officers violated Plaintiffs' Fourth Amendment rights in that they seized Plaintiffs without justification and without probable cause and conducted and illegal search of their bodies by touching their genitalia, including a strip searches and cavity searches of their persons.   With respect to Count I:

a. Plaintiff James Ashford is suing Defendants Flynn, Hudson, Mucha, Williams, Vagnini, Serio, Knight, Bleichwehl, Vandervast, Vento, Kopesky, Thoms, and other Unknown Defendant Officers of the Milwaukee Police Department;

b. Plaintiff S.C. is suing Defendants Flynn, Hudson, Mucha, Vagnini and Unknown Defendant Officers of the Milwaukee Police Department;

c. Plaintiff Keon Canada is suing Defendants Flynn, Hudson, Mucha, Serio, Vagnini, Vandervast and other Unknown Defendant Officers of the Milwaukee Police Department;

d. Plaintiff M.C. is suing Defendants Flynn, Hudson, Mucha, Vagnini, Knight and other Unknown Defendant Officers of the Milwaukee Police Department;

e. Plaintiff Walter Coleman is suing Defendants Flynn, Hudson, Mucha, Vagnini, Dollhopf and other Unknown Defendant Officers of the Milwaukee Police Department;

f. Plaintiff Jerrold Ezell is suing Defendants Flynn, Hudson, Mucha, Vagnini, Knight, Bartol, Seitz, and Unknown Defendant Officers of the Milwaukee Police Department;

g.   Plaintiff R.P. is suing Defendants Flynn,
     Hudson, Mucha, Vagnini, Knight, and Unknown
     Defendant Officers of the Milwaukee Police
     Department;

h.   Plaintiff Pettis is suing Defendants Flynn,
     Hudson,Mucha, Vagnini, Knight, Bartol, Seitz,
     and Unknown Defendant Officers of the
     Milwaukee Police Department;

i.   Plaintiff L.L.R. is suing Defendants Flynn,
     Hudson, Mucha, Vagnini, Gasser, and Unknown
     Defendant Officers of the Milwaukee Police
     Department;

j.   Plaintiff Graham is suing Defendants Vagnini,
     Bleichwehl, Knight, Kopesky, Thoms, and
     Unknown Defendant Officers of the Milwaukee
     Police Department;

k.   Plaintiff Jefferson is suing Defendant
     Vagnini, Defendant Cline, and Unknown
     Defendant Officers of the Milwaukee Police
     Department;

l.   Plaintiff M.R. is suing Defendants Vagnini,
     Knight, Kuspa, Krueger, Cline, Dollhopf,
     Kopesky and Unknown Defendant Officers of the
     Milwaukee Police Department;

m.  Plaintiff Smith is suing Defendants Vagnini, Knight,and Unknown Defendant Officers of the Milwaukee Police Department;

n.  Plaintiff Henry Zak Ezell is suing Defendants Vagnini, Knight, Dollhopf, Cline, Pasziewicz, Cherone, Maglio, and Unknown Defendant Officers of the Milwaukee Police Department.

o.  Plaintiff Corbitt is suing Defendants Vagnini, Krueger, Mucha, Lelinski, Martinez, and Dollhopf.

p.  Plaintiff Townsend is suing Defendants Vagnini, Knight, and Letier.

q.  Plaintiff Walton is suing Defendants Szedziewski, Juarez, Viera, Enk, Navarette, and Terrell.

r.  Plaintiff Jackson is suing Defendants Gajevic, Wiesmueller, and Strasser.

s.  Plaintiff Rogers is suing Defendants Takacs, Tucker, and Johnson.

t.  Plaintiff Michael D. Smith is suing Defendant Knight and Unknown Defendant Officers.

u.  Plaintiff Harris is suing Defendants Vagnini, Knight, and Unknown Defendant Officers.

> v.   Plaintiff Horn is suing Defendants Vagnini,
>       Mucha, and Unknown Defendant Officers.
>
> w.   Plaintiff Bynum is suing Unknown Defendant
>       Officers.

478. The misconduct described in this Count was objectively unreasonable and undertaken with malice, willfulness, and reckless indifference to the rights of others.

479. The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Milwaukee in that:

> a.   As a matter of both police and practice, the City
>       of Milwaukee encourages, and is thereby the
>       moving force behind, the very type of misconduct
>       at issue here by failing to adequately train,
>       supervise, control and discipline its officers
>       who conduct illegal strip and cavity searches,
>       such that its failure to do so manifests
>       deliberate indifference;
>
> b.   As a matter of both policy and practice, the
>       City of Milwaukee facilitates the very type of
>       misconduct at issue here by failing to
>       adequately punish and discipline prior instances
>       of similar misconduct, thereby leading Milwaukee
>       police officers to believe their actions will

never be scrutinized and, in that way, directly
encouraging future abuses such as those
Plaintiffs; specifically, Milwaukee police
officers accused of conducting illegal strip or
body cavity searches can be confident that their
supervisor and Internal Affairs will not
investigate those accusations in earnest and
will refuse to recommend discipline even where
the officer has engaged in illegal searches;

c.  Generally, as a matter of widespread practice so
prevalent as to comprise municipal policy,
officers of the Milwaukee Police Department
abuse citizens in a manner similar to that
alleged by Plaintiff in this Count on a frequent
basis, yet the Milwaukee Department makes
findings of wrongdoing in a disproportionately
small number of cases;

d.  Policy makers failed to perform pattern
analysis and ignored the clear pattern of
complaints of illegal and abusive cavity
searches;

e.  City of Milwaukee policy-makers are aware of,
and condone and facilitate by their inaction, a
"code of silence" in the Milwaukee Police

Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case; and

f.   The City of Milwaukee has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

480. The misconduct described in this Count was undertaken by Defendant Officers within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

481. As a result of the City of Milwaukee's policy and practice and the unjustified and unreasonable conduct of the Defendant Officers, Plaintiffs have suffered injuries, including emotional distress.

## Count II - 42 U.S.C. § 1983
### Excessive Force

482. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

483. As described in the preceding paragraphs, the conduct of the Defendant Officers toward Plaintiffs constituted excessive force in violation of the United States Constitution. With respect to Count II:

a.   Plaintiff James Ashford is suing Defendants
     Flynn, Hudson, Mucha, Williams, Vagnini, Serio,
     Knight, Bleichwehl, Vandervast, and Vento and
     other Unknown Defendant Officers of the Milwaukee
     Police Department;

b.   Plaintiff S.C. is suing Defendants Flynn, Hudson,
     Mucha, Vagnini and Unknown Defendant Officers of
     the Milwaukee Police Department;

c.   Plaintiff Keon Canada is suing Defendants Flynn,
     Hudson, Mucha, Serio, Vagnini, Vandervast and
     other Unknown Officers of the Milwaukee Police
     Department;

d.   Plaintiff M.C. is suing Defendants Flynn, Hudson,
     Mucha, Vagnini, Knight and other Unknown Officers
     of the Milwaukee Police Department;

e.   Plaintiff Walter Coleman is suing Defendants
     Flynn, Hudson, Mucha, Vagnini, Dollhopf and other
     Unknown Defendant Officers of the Milwaukee
     Police Department;

f.   Plaintiff Ezell is suing Defendants Flynn,
     Hudson, Mucha, Vagnini, Knight, Bartol, Seitz,
     and Unknown Defendant Officers of the Milwaukee
     Police Department;

g.   Plaintiff R.P. is suing Defendants Flynn, Hudson,

Mucha, Vagnini, Knight, and Unknown Defendant
Officers of the Milwaukee Police Department;

h.   Plaintiff Pettis is suing Defendants Flynn,
Hudson, Mucha, Vagnini, Knight, Bartol, Seitz,
and Unknown Defendant Officers of the Milwaukee
Police Department;

i.   Plaintiff L.L.R. is suing Defendants Flynn,
Hudson, Mucha, Vagnini, Gasser, and Unknown
Defendant Officers of the Milwaukee Police
Department;

j.   Plaintiff Graham is suing Defendants Vagnini,
Bleichwehl, Knight, Kopesky, Thoms, and Unknown
Defendant Officers of the Milwaukee Police
Department;

k.   Plaintiff Jefferson is suing Defendant Vagnini,
Defendant Cline, and Unknown Defendant Officers
of the Milwaukee Police Department;

l.   Plaintiff M.R. is suing Defendants Vagnini,
Knight, Kuspa, Krueger, Cline, Dollhopf, Kopesky
and Unknown Defendant Officers of the Milwaukee
Police Department;

m.   Plaintiff Smith is suing Defendants Vagnini,
Knight, and Unknown Defendant Officers of the
Milwaukee Police Department;

n. Plaintiff Henry Zak Ezell is suing Defendants Vagnini, Knight, Dollhopf, Cline, Pasziewicz, Cherone, Maglio, and Unknown Defendant Officers of the Milwaukee Police Department;

o. Plaintiff Corbitt is suing Defendants Vagnini, Krueger, Mucha, Lelinski, Martinez, and Dollhopf.

p. Plaintiff Townsend is suing Defendants Vagnini, Knight, and Letier.

q. Plaintiff Jackson is suing Defendants Gajevic, Wiesmueller, and Strasser.

r. Plaintiff Rogers is suing Defendants Takacs, Tucker, and Johnson.

s. Plaintiff Michael D. Smith is suing Defendant Knight and Unknown Defendant Officers.

t. Plaintiff Harris is suing Defendants Vagnini, Knight, and Unknown Defendant Officers.

u. Plaintiff Horn is suing Defendants Vagnini, Mucha, and Unknown Defendant Officers.

v. Plaintiff Bynum is suing Unknown Defendant Officers.

484. The misconduct described in this Count was objectively unreasonable and undertaken with malice, willfulness, and reckless indifference to the rights of others.

485. The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Milwaukee in that:

    a.   As a matter of both police and practice, the City of Milwaukee encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise, control and discipline its officers such that its failure to do so manifests deliberate indifference;

    b.   As a matter of both policy and practice, the City of Milwaukee facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Milwaukee police officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those Plaintiffs; specifically, Milwaukee police officers accused of excessive force can be confident that Internal Affairs will not investigate those accusations in earnest and will refuse to recommend discipline even where the officer has engaged in excessive force;

c.     Generally, as a matter of widespread practice so
       prevalent as to comprise municipal policy,

       officers of the Milwaukee Police Department

       abuse citizens in a manner similar to that

       alleged by Plaintiffs in this Count on a

       frequent basis, yet the Milwaukee Police

       Department makes findings of wrongdoing in a

       disproportionately small number of cases;

d.     Policy makers failed to perform pattern analysis

       and ignored the clear pattern of complaints of

       illegal and abusive cavity searches;

e.     City of Milwaukee policy-makers are aware of,

       and condone and facilitate by their inaction, a

       "code of silence" in the Milwaukee Police

       Department, by which officers fail to report

       misconduct committed by other officers, such as

       the misconduct at issue in this case; and

f.     The City of Milwaukee has failed to act to

       remedy the patterns of abuse described in the

       preceding sub-paragraphs, despite actual

       knowledge of the same, thereby causing the types

       of injuries alleged here.

486. The misconduct described in this Count was undertaken
by Defendant Officers within the scope of their employment and

under color of law such that their employer, City of Milwaukee, is liable for their actions.

487. As a result of the City of Milwaukee's policy and practice and the unjustified and unreasonable conduct of the Defendant Officers, Plaintiffs have suffered injuries, including emotional distress.

## Count III - 42 U.S.C. § 1983
## False Arrest/Illegal Detention

488. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

489. As described above, Defendant Officers falsely arrested and unlawfully detained Plaintiffs Ezell, Pettis and without justification and without probable cause. With respect to Count III:

   a. Plaintiff James Ashford is suing Defendants Flynn, Hudson, Mucha, Williams, Vagnini, Serio, Knight, Bleichwehl, Vandervast, Vento and other Unknown Defendant Officers of the Milwaukee Police Department;

   b. Plaintiff S.C. is suing Defendants Flynn, Hudson, Mucha, Vagnini and Unknown Officers of the Milwaukee Police Department;

   c. Plaintiff Keon Canada is suing Defendants Flynn, Hudson, Mucha, Serio, Vagnini, Vandervast and

other Unknown Officers of the Milwaukee Police
Department;

d.  Plaintiff M.C. is suing Defendants Flynn,
Hudson, Mucha, Vagnini, Knight and other Unknown
Officers of the Milwaukee Police Department;

e.  Plaintiff Walter Coleman is suing Defendants
Flynn, Hudson, Mucha, Vagnini, Dollhopf and
other Unknown Officers of the Milwaukee Police
Department;

f.  Plaintiff Ezell is suing Defendants Flynn,
Hudson, Mucha, Vagnini, Knight, Bartol, Seitz,
and Unknown Officers of the Milwaukee Police
Department;

g.  Plaintiff Pettis is suing Defendants Flynn,
Hudson, Mucha, Vagnini, Knight, Bartol, Seitz,
and Unknown Officers of the Milwaukee Police
Department;

h.  Plaintiff R.P. is suing Defendants Flynn,
Hudson, Mucha, Vagnini, Knight, and Unknown
Officers of the Milwaukee Police Department;

i.  Plaintiff L.L.R. is suing Defendants Flynn,
Hudson, Mucha, Vagnini, Gasser, and Unknown
Officers of the Milwaukee Police Department;

j.  Plaintiff Graham is suing Defendants

Vagnini, Bleichwehl, Knight, Kopesky,
Thoms, and Unknown Officers of the
Milwaukee Police Department;

k.  Plaintiff Jefferson is suing Defendant Vagnini,
Defendant Cline, and Unknown Officers of the
Milwaukee Police Department;

l.  Plaintiff M.R. is suing Defendants Vagnini,
Knight, Kuspa, Krueger, Cline, Dollhopf, Kopesky
and Unknown Officers of the Milwaukee Police
Department;

m.  Plaintiff Smith is suing Defendants Vagnini,
Knight, and Unknown Officers of the Milwaukee
Police Department;

n.  Plaintiff Henry Zak Ezell is suing Defendants
Vagnini, Knight, Dollhopf, Cline, Pasziewicz,
Cherone, Maglio, and Unknown Officers of the
Milwaukee Police Department;

o.  Plaintiff Corbitt is suing Defendants Vagnini,
Krueger, Mucha, Lelinski, Martinez, and
Dollhopf.

p.  Plaintiff Townsend is suing Defendants Vagnini,
Knight, and Letier.

q. Plaintiff Walton is suing Defendants Szedziewski, Juarez, Viera, Enk, Navarette, and Terrell.

r. Plaintiff Rogers is suing Defendants Takacs, Tucker, and    Johnson.

s. Plaintiff Michael D. Smith is suing Defendant Knight and Unknown Defendant Officers.

t. Plaintiff Harris is suing Defendants Vagnini, Knight, and Unknown Defendant Officers.

u. Plaintiff Horn is suing Defendants Vagnini, Mucha, and Unknown Defendant Officers.

490. The misconduct described in this Count was objectively unreasonable and undertaken with malice, willfulness, and reckless indifference to the rights of others.

491. The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Milwaukee in that:

a. As a matter of both police and practice, the City of Milwaukee encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise, control and discipline its officers who conduct false arrests/illegal detentions, such that its failure to do so manifests

deliberate indifference;

b. As a matter of both policy and practice, the City of Milwaukee facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Milwaukee police officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those Plaintiffs; specifically, Milwaukee police officers accused false arrests/illegal detentions can be confident that Internal Affairs will not investigate those accusations in earnest and will refuse to recommend discipline even where the officer has engaged in false arrests/illegal detentions;

c. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Milwaukee Police Department abuse citizens in a manner similar to that alleged by Plaintiffs in this Count on a frequent basis, yet the Milwaukee Department makes findings of wrongdoing in a disproportionately small number of cases;

d.    Policy makers failed to perform pattern analysis
       and ignored the clear pattern of complaints of
       illegal and abusive cavity searches;

e.    City of Milwaukee policy-makers are aware of, and
       condone and facilitate by their inaction, a "code
       of silence" in the Milwaukee Police Department,
       by which officers fail to report misconduct
       committed by other officers, such as the
       misconduct at issue in this case; and

f.    The City of Milwaukee has failed to act to remedy
       the patterns of abuse described in the preceding
       sub-paragraphs, despite actual knowledge of the
       same, thereby causing the types of injuries
       alleged here.

492. The misconduct described in this Count was undertaken
by Defendant Officers within the scope of their employment and
under color of law such that their employer, City of Milwaukee,
is liable for their actions.

493. As a result of the City of Milwaukee's policy and
practice and the unjustified and unreasonable conduct of the
Defendant Officers, Plaintiffs have suffered injuries, including
emotional distress.

## Count IV - 42 U.S.C. § 1983
## Failure to Intervene

494. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

495. As described more fully above, one or more of the Defendant Officers had a reasonable opportunity to prevent the violation of Plaintiffs' constitutional rights as set forth above in Counts I through III had they been so inclined, but failed to do so. Specifically Defendant Officers had a reasonable opportunity to intervene and prevent the strip and cavity searches of Plaintiffs, the excessive force used on Plaintiffs and the false arrest/detention of Plaintiffs. With respect to Count IV:

    a.    Plaintiff James Ashford is suing Defendants Vagnini and Dollhopf and other Unknown Officers of the Milwaukee Police Department;

    b.    Plaintiff S.C. is suing Defendants Mucha, Vagnini and Unknown Officers of the Milwaukee Police Department;

    c.    Plaintiff Keon Canada is suing Defendants Serio, Vagnini, Vandervast and other Unknown Defendant Officers of the Milwaukee Police Department;

    d.    Plaintiff M.C. is suing Defendants Vagnini, Knight and other Unknown Defendant Officers of

the Milwaukee Police Department;

e.  Plaintiff Walter Coleman is suing Defendants Flynn, Hudson, Mucha, Vagnini, Dollhopf and other Unknown Defendant Officers of the Milwaukee Police Department;

f.  Plaintiff Ezell is suing Defendants Mucha, Vagnini, Knight, Bartol, Seitz, and Unknown Officers of the Milwaukee Police Department;

g.  Plaintiff R.P. is suing Defendants Flynn, Hudson, Mucha, Vagnini, Knight, and Unknown Officers of the Milwaukee Police Department;

h.  Plaintiff Pettis is suing Defendants Mucha, Vagnini, Knight, Bartol, Seitz, and Unknown Officers of the Milwaukee Police Department;

i.  Plaintiff L.L.R. is suing Defendants Mucha, Vagnini, Gasser, and Unknown Officers of the Milwaukee Police Department;

j.  Plaintiff Graham is suing Defendants Vagnini, Bleichwehl, Knight, Kopesky, Thoms, and Unknown Officers of the Milwaukee Police Department;

k.  Plaintiff Jefferson is suing Defendant Vagnini, Defendant Cline, and Unknown Officers of the Milwaukee Police Department;

l.  Plaintiff M.R. is suing Defendants Vagnini,

Knight, Kuspa, Krueger, Cline, Dollhopf, Kopesky
and Unknown Officers of the Milwaukee Police
Department;

m.   Plaintiff Smith is suing Defendants Vagnini,
Knight, and Unknown Officers of the Milwaukee
Police Department;

n.   Plaintiff Henry Zak Ezell is suing Defendants
Vagnini, Knight, Dollhopf, Cline, Pasziewicz,
Cherone, Maglio, and Unknown Officers of the
Milwaukee Police Department;

o.   Plaintiff Corbitt is suing Defendants Vagnini,
Krueger, Mucha, Lelinski, Martinez, and Dollhopf.

p.   Plaintiff Townsend is suing Defendants Vagnini,
Knight, and Letier.

q.   Plaintiff Walton is suing Defendants Szedziewski,
Juarez, Viera, Enk, Navarette, and Terrell.

r.   Plaintiff Jackson is suing Defendants Gajevic,
Wiesmueller, and Strasser.

s.   Plaintiff Rogers is suing Defendants Takacs,
Tucker, and Johnson.

t.   Plaintiff Michael D. Smith is suing Defendant
Knight and Unknown Defendant Officers.

u.    Plaintiff Harris is suing Defendants Vagnini,
       Knight, and Unknown Defendant Officers.

v.    Plaintiff Horn is suing Defendants Vagnini,
       Mucha, and Unknown Defendant Officers.

w.    Plaintiff Bynum is suing Unknown Defendant
       Officers.

496. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

497. The misconduct described in this Count was undertaken by Defendant Officers within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

498. As a result of the misconduct described in this Count, Plaintiffs have suffered damages, including but not limited to emotional distress and anguish.

### Count V – 42 U.S.C. § 1983
### Conspiracy

499. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

500. As described more fully above, Defendant Officers reached an agreement among themselves to deprive Plaintiffs of their constitutional rights.

501. In furtherance of the conspiracy, each of the co-

conspirators committed overt acts and was an otherwise willful participant in joint activity.

502. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

503. The misconduct described in this Count was undertaken by Defendants within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

504. As a direct and proximate result of the illicit prior agreement referenced above, Plaintiffs' rights were violated and she suffered injuries, including, but not limited to emotional distress, as described above.

## Count VI – 42 U.S.C. § 1983
## Supervisory Liability

505. Each Paragraph of this Complaint is incorporated as if fully stated herein.

506. As described more fully above, Defendants Edward Flynn, Hudson, Williams and Mucha knew or reasonably should have known that Defendant Officers would violate citizens' constitutional rights in one or more of the ways describe above, and/or knew or reasonably should have known that Defendant Officers had a pattern of engaging in improper searches, including public strip and cavity searches.

507. Defendants Flynn, Hudson, Williams and Mucha facilitated, approved, condoned and/or turned a blind eye to purposely ignored Defendant Officers' pattern of misconduct.

508. As a result of the misconduct described in this Count, Plaintiffs have suffered damages, including but not limited to emotional distress and anguish.

### Count VII - Indemnification

509. Each of the foregoing paragraphs is incorporated as if fully stated herein.

510. Wisconsin law, Wisc. Stat. §895.46, requires public entities to pay any tort judgment for damages for which employees are liable within the scope of their employment activities.

511. At all times relevant herein, the Defendant Officers and Supervisors were employees of the Milwaukee Police Department, who acted within the scope of their employment.

WHEREFORE, Plaintiffs, JAMES ASHFORD, S.C., KEON CANADA, M.C., WALTER COLEMAN, JERROD EZELL, R.P., ANTHONY PETTIS, L.L.R., M.R., BRANDON GRAHAM, JEFFREY JEFFERSON, CHARLES SMITH,HENRY ZAK EZELL, MICHAL CORBITT, DUANNE TOWNSEND, TRAVORIS WALTON, TERRY JACKSON, ALVERIA ROGERS, MICHAEL D. SMITH, DEVONTE HARRIS, JOSEPH BYNUM AND JIMMIE HORN respectfully request that this Court enter judgment in his favor and against Defendants, CITY OF MILWAUKEE, CHIEF EDWARD FLYNN, CAPTAIN EDITH

HUDSON, SERGEANT JASON MUCHA, SERGEANT WILLIAMS, OFFICER MICHAEL VAGNINI, OFFICER JACOB KNIGHT, OFFICER MICHAEL GASSER, OFFICER AMY BARTOL, OFFICER JEFFREY DOLLHOPF, OFFICER SERIO, OFFICER STEPHANIE SEITZ, OFFICER VANDERVAST, OFFICER JASON BLEICHWEHL, OFFICER VENTO, OFFICER JEFFREY CLINE, OFFICER GARY CHERONE, OFFICER DAVID PASKIEWICZ, OFFICER ZACHARY THOMS, OFFICER KOPESKY, OFFICER LOUIS KRUEGER, OFFICER MAGLIO, OFFICER KUSPA, OFFICER LELINKSI, OFFICER MARTINEZ,OFFICER LETIER, OFFICER SZEDEIEWSKI, OFFICER JUAREZ, OFFICER VIERA, OFFICER ENK, OFFICER NAVARETTE, OFFICER TERRELL, and Unknown Milwaukee Police Department employees and officers, awarding compensatory damages and attorneys' fees, as well as punitive damages against the Defendant Officers in their individual capacities, as well as any other relief this Court deems just and appropriate.

**JURY DEMAND**

Plaintiffs, James Ashford, S.C., Keon Canada, M.C., Walter Coleman, Jerrod Ezell, R.P., Anthony Pettis, L.L.R., M.R., Brandon Graham, Jeffrey Jefferson, Charles Smith, Henry Zak Ezell, Michael Corbitt, Duanne Townsend, Travoris Walton, Terry Jackson, Alveria Rogers, Michael D. Smith, Joseph Bynum, Devonte Harris, and Jimmie Horn hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.


                                  RESPECTFULLY SUBMITTED,


                                  /s/ Heather Lewis Donnell
                                  Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Heather Lewis Donnell
Elizabeth Mazur

Joel Feldman
Theresa Kleinhaus
LOEVY & LOEVY
312 North May, Suite 100
Chicago, IL 60607
(312) 243-5900

Robin Shellow
324 West Vine Street
Milwaukee, Wisconsin 53212
(414) 263-4488