# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JAMES ASHFORD, et al.**
        **Plaintiffs,**

v.                                                 Case No. 13-C-0771

**CITY OF MILWAUKEE, et al.,**
        **Defendants.**

## DECISION AND ORDER

In this case, forty-seven African American men claim that they were subjected to strip or body-cavity searches by Milwaukee police officers in violation of the Fourth Amendment. The plaintiffs have sued the individual officers who participated in the searches under 42 U.S.C. § 1983. In addition, they allege that the City of Milwaukee is liable under § 1983 for the harm caused during the searches. See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). There are three ways to establish municipal liability under § 1983: (1) by showing that the constitutional deprivation was caused by the enforcement of an express municipal policy; (2) by showing that the constitutional deprivation was caused by a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; and (3) by showing that the constitutional injury was caused by a person with "final policymaking authority." McTigue v. City of Chicago, 60 F.3d 381, 382 (7th Cir. 1995).

Before me now are two motions to compel written discovery filed by two sets of plaintiffs. The first motion was filed by the plaintiffs whom I will refer to as the "Ashford

plaintiffs," and the second motion was filed by the plaintiffs whom I will refer to as the "D.J.B. plaintiffs." The motion filed by the D.J.B. plaintiffs raises some of the same issues as the Ashford plaintiffs' motion. I will address those overlapping issues in my discussion of the Ashford motion. I will then separately address the additional issues raised by the D.J.B. motion.

**I. ASHFORD MOTION**

The Ashford motion seeks to compel the defendants to respond to certain requests for the production of documents made under Federal Rule of Civil Procedure 34. The requests at issue pertain to three kinds of documents: (1) the personnel files and disciplinary-history files of Edward Flynn, who is the Chief of Police, and Edith Hudson, who was the captain of the police district in which most of the searches occurred; (2) documents pertaining to the police department's psychological testing of its officers; and (3) electronic communications, such as emails, text messages and social-media posts, relating to the searches at issue in this case.

Before turning to the specific requests for production at issue, I must first address the plaintiffs' argument that the defendants have waived all of their objections to those requests by failing to serve them on the plaintiffs within the time specified by Rule 34(a)(2)(A). Rule 34, by its terms, does not state that untimely objections are waived. In contrast, Rule 33, which governs interrogatories, provides that "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." See Fed. R. Civ. P. 33(b)(4). Many district courts have concluded that the automatic-waiver provision of Rule 33(b)(4) should be read into Rule 34. See 7 James Wm. Moore, Moore's Federal Practice–Civil § 34.13[2][c] (3d ed. 2014). But this is an odd conclusion to draw.

If the drafters of the Federal Rules saw fit to include an automatic-waiver provision in Rule 33 and to omit such a provision from Rule 34, that implies that there is no automatic waiver of an untimely objection under Rule 34.  Moreover, reading an automatic-waiver provision into Rule 34 could result in a court imposing discovery sanctions on a defendant that are disproportionate to the defendant's violation.  For example, assume that a defendant has a meritorious objection to a request for production and that it would cost the defendant $10,000 to respond to the request.  For whatever reason, the defendant fails to serve its objection to the request until one day after the deadline for doing so.  If the court deemed the untimely-yet-meritorious objection waived, the court would in effect be sanctioning the defendant $10,000 for filing its objection one day late.  This result would be contrary to the principle that discovery sanctions should be tailored to the severity of the violation, see Charter House Ins. Brokers, Ltd. v. New Hampshire Ins. Co., 667 F.2d 600, 605 (7th Cir. 1981), and also the principle that errors and defects that do not prejudice either an opposing party or the court should be disregarded, see Fed. R. Civ. P. 61.  For these reasons, I will not read Rule 33's automatic-waiver provision into Rule 34, and I will address the defendants' objections on their merits.

**A.      Personnel and Disciplinary-History Files for Flynn and Hudson**

The first set of disputed requests pertain to the personnel files and disciplinary-history files of Chief Flynn and Captain Hudson.  The defendants argue that these files are not relevant to any claim or defense at issue in this case and therefore are not within the general scope of discovery.  See Fed. R. Civ. P. 26(b)(1).  The plaintiffs contend that the files are relevant to their Monell claims.  However, the plaintiffs have not identified any information that might be contained in the files that would be relevant to their Monell

claims, and I cannot think of any. Evidence that would be relevant to the plaintiffs' Monell claims are things like evidence showing that Flynn or Hudson knew that officers on the street were performing illegal strip searches, evidence that Flynn or Hudson turned a blind eye to the risk that officers were performing illegal strip searches, or evidence that Flynn or Hudson knew that officers needed training on how to conduct lawful searches but failed to provide that training. You would not expect to find evidence of these types in the personnel or disciplinary-history files of the chief of police or the captain of a district. In contrast, it is reasonable to think that evidence relevant to a Monell claim might appear in the personnel or disciplinary-history files of rank-and-file police officers: if these files, for example, show that officers are never disciplined or reprimanded for conducting illegal searches, then that may suggest that the department condones illegal searches, which in turn could give rise to a pattern or practice that has the force of law.

The plaintiffs point out that another judge in this district has granted a motion to compel production of personnel files of former Milwaukee police chiefs on the ground that they were relevant to a Monell claim. See Ott v. City of Milwaukee, No. 09–C–870, 2010 WL 5095305, at *5 (E.D. Wis. Dec. 8, 2010). But a decision by a district judge is not binding precedent and is only relevant to the extent it contains persuasive reasoning. See Kawasaki Kisen Kaisha, Ltd. v. Plano Molding Co., 696 F.3d 647, 656 (7th Cir. 2012). Ott contains no reasoning at all. The relevant portion of the opinion states only that "Ott has sufficiently demonstrated that the personnel files of [the former police chiefs] may lead to the discovery of admissible evidence." 2010 WL 5095305, at *5. The judge then cites two cases that say absolutely nothing about whether the personnel files of supervisory police officers are relevant to a Monell claim. Id. (citing Vodak v. City of Chicago, No. 03-C-2463,

4

2004 WL 1381043, at *5 (N.D. Ill. May 10, 2004) and Lepianka v. Vill. of Franklin Park, No. 03 C 2991, 2004 WL 626830, at *2 (N.D.Ill. Mar.26, 2004)). Thus, Ott is not instructive on the present question. The plaintiffs cite other district-court cases in their briefs, but those cases do not contain any relevant analysis.

Accordingly, the plaintiffs' motion to compel production of the personnel and disciplinary-history files of Flynn and Hudson will be denied.

**B.    Documents Pertaining to Psychological Testing**

The next disputed request asks for all documents relating to any "psychological testing or background screening of any kind" performed on the individual defendants either before they were hired by the police department or during their employment with the police department. The defendants object to producing these documents on two grounds: (1) they are irrelevant to any claims or defenses at issue in this case, and (2) they are covered by the psychotherapist-patient privilege recognized by the Supreme Court in Jaffee v. Redmond, 518 U.S. 1 (1996).

The plaintiffs have not precisely described the kinds of psychological-testing documents they are looking for, and the defendants have not described the kinds of documents they have. But the term "psychological testing" implies that the plaintiffs are looking for documents that fall into the category of psychometrics or psychological evaluations, such as results of personality tests like the Minnesota Multiphasic Personality Inventory,[1] rather than reports of psychotherapy sessions in which officers received mental-

---

[1] See http://en.wikipedia.org/wiki/Minnesota_Multiphasic_Personality_Inventory (viewed Jan. 22, 2015).

5

health treatment, either from a private psychologist or a psychologist hired by the City. I will construe the plaintiffs' requests as seeking only documents in the former category.

The plaintiffs claim that psychological documents are relevant to determining what the police department knew about the individual defendants' fitness to serve as police officers and about their "ability to abide by the law in conducting reasonable searches of civilians." Reply Br. at 11. Although the plaintiffs do not explicitly say so, I assume from their focus on what the police department knew about the defendants' psychological conditions that the plaintiffs believe that psychological documents are relevant only to their Monell claims, not to their claims against the individual officers for conducting illegal searches. So, for example, I assume that the plaintiffs are not seeking to scour the defendants' psychological records for indications that an officer may have admitted that he or she performed an illegal body-cavity search.

I am not entirely convinced that the defendants' psychological records are relevant to a Monell claim. Even if the psychological records showed that an officer was suffering from a psychological problem such as depression, that would not necessarily render that officer unfit for duty. Moreover, even if the psychological problem rendered the officer unfit for duty, it would not necessarily imply that if the officer remained on duty he would be likely to violate a person's constitutional rights. Thus, even if the police department knew that a particular defendant was suffering from a psychological problem that rendered him or her unfit for duty, such knowledge would not necessarily support the type of Monell claims alleged in this case. Still, I suppose that a person suffering from certain kinds of psychological problems could be more likely to commit the kinds of constitutional violations alleged in this case. For example, a person suffering from certain forms of paraphilia might

6

be likely to perform an illegal strip or body-cavity search. Thus, if the police department knew that an officer was suffering from such a mental disorder yet allowed him to remain on the street, that might support the plaintiffs' Monell claims. Accordingly, under the broad standards of relevance embodied in Rule 26(b)(1), I conclude that documents in the City's possession pertaining to psychological testing of the individual defendants (other than Flynn and Hudson or other supervisory officers, for the reasons discussed in the prior section) are within the scope of discovery.

The defendants offer additional reasons for deeming the psychological documents irrelevant. First, they contend that any psychological evaluation performed on an officer before he was hired is irrelevant because test results at the time of hire do not reflect the officer's mental state at the time of the searches. However, a pre-employment psychological evaluation might be relevant even if it did not reflect the defendant's mental state at the time of the search because it might indicate that the City had a policy of hiring officers with psychological disorders that made them prone to conducting illegal searches. Thus, a request for such evaluations is a request for potentially relevant evidence. In a related argument, the defendants contend that the results of pre-employment evaluations are irrelevant because all of the defendants were hired by the police department and therefore must have passed their evaluations. But this argument assumes that the City never "passed" a recruit with psychological problems, which is the very fact that the plaintiffs are trying to investigate by requesting the results of pre-employment testing. Finally, the defendants contend that the results of any psychological evaluations that the City conducted during the defendants' employment is irrelevant because such results do not have any tendency to establish whether the defendants engaged in unconstitutional

7

conduct. But as noted, the plaintiffs have requested the results of the evaluations in order to determine whether the City had a policy of allowing officers with certain psychological problems to remain on the street, not to prove that the defendants engaged in unconstitutional conduct at a particular time. Documents indicating that the City allowed officers with certain psychological problems to remain on the street are arguably relevant to the plaintiffs' Monell claims and are therefore within the scope of discovery.

I next address whether the psychological documents requested by the plaintiffs are protected by the psychotherapist-patient privilege. That privilege applies to "confidential communications between a psychotherapist and her patient." Jaffee, 518 U.S. at 9–10. The purpose of recognizing this privilege is to promote the atmosphere of confidence and trust on which effective psychotherapy depends. Id. at 10. As the Supreme Court explained:

> Effective psychotherapy . . . depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment.

Id. (footnote omitted). Here, as noted, the plaintiffs' requests do not apply to documents associated with the defendants' private psychotherapy sessions. Rather, the plaintiffs are seeking documents relating to psychometric testing or psychological evaluations performed by the City of Milwaukee on its officers to determine whether they are fit for duty. It is doubtful that there would be any confidential communications between an officer and a psychologist or other professional who tests or examines an officer for the purpose of

8

determining whether he is fit for duty. Presumably, the results of the test or examination will be shared with the City, and therefore the officer will not expect his statements to the examiner to remain confidential. Also, because the tests are being performed for some reason other than treatment of the officer, such as to determine whether the officer is fit for duty, the tests are unlikely to depend an "atmosphere of trust and confidence" in which the officer "makes a frank and complete disclosure of facts, emotions, memories, and fears." Id. Rather, because the officer may have an incentive to lie in order to produce a favorable result, the efficacy of the tests must not depend on the officer's honesty.

The defendants cite Caver v. City of Trenton, 192 F.R.D. 154 (D.N.J. 2000), in support of their argument that the psychotherapist-patient privilege extends to documents relating to psychological testing performed for the purpose of determining whether an officer is fit for duty. In that case, the court held that psychological records relating to fitness-for-duty evaluations were covered by the privilege. Id. at 157, 162. However, this holding depended on the fact that the psychological testing was performed by independent psychologists who did not communicate any specific diagnoses, clinical impressions, or the like, to the City. Id. Rather, all that was disclosed to the City was the bottom line of whether the officer was fit for duty. Id. The court held that because the psychological reports underlying the bottom-line conclusion were kept confidential between the patient and the psychologist, the privilege applied to those documents. Nothing in the opinion indicated that the bottom-line conclusion was privileged. In fact, the court indicated that the plaintiffs had not even asked for the bottom-line conclusion and were only interested in the underlying reports. See id. at 164.

Caver would be relevant to the present case only if the City of Milwaukee's fitness-for-duty exams were performed in the same manner as the City of Trenton's—that is, only if the exams were conducted by independent psychologists who kept any reports, diagnoses, and clinical impressions completely confidential and disclosed to the City only the bottom line of whether the officer was fit for duty. If these conditions were met, then maybe the City could claim that the efficacy of its psychological testing depended on fostering an atmosphere of trust and confidence between the officer and the examiner, and that therefore the psychotherapist-patient privilege should apply to documents created in the course of those tests. However, the City of Milwaukee has provided me with no information about how it performs its psychological testing, and therefore I cannot conclude that Caver is persuasive authority here. But even if the City of Milwaukee used procedures similar to those at issue in Caver, I doubt that I would reach the same conclusion as the judge did in that case. That is because I would still doubt that confidentiality was necessary to the test's efficacy. As I have already noted, if the officer knows that the results of the test will be used to determine whether he is fit for service, he will have an incentive to lie in order to produce a favorable result. Thus, to be effective, the tests should not depend on the officer's being completely honest and willing to disclose all relevant facts.

In light of the above, I will compel the City of Milwaukee to produce any documents pertaining to psychological testing of the individual defendants (other than supervisory officers) that was initiated by the City of Milwaukee for the purpose of determining whether the defendants were fit for duty, provided that such documents were disclosed to officials in the department who were responsible for deciding whether determining whether an

evaluated officer would be hired or remain on duty. Information that was kept strictly confidential between an officer and psychologist might be privileged, but I do not hold that it is. Instead, because information that was never shared with decision-makers in the police department would not support a Monell claim in the first place, I hold that such information is irrelevant and not likely to lead to the discovery of admissible evidence. In contrast, I hold that any information shared with decision-makers in the police department is not privileged.

**C.     Electronic Communications**

The final category of documents at issue in the Ashford motion consists of electronic communications—mainly text messages and social-media posts—relating to the strip and body-cavity searches at issue in this case. The defendants admit that they must produce such documents. The dispute arises because the plaintiffs believe that the defendants have not produced all responsive documents in their possession.

Because the defendants admit that they must produce the electronic communications at issue, I will grant the plaintiffs' motion to compel to make clear that the defendants must produce all responsive documents in their possession. However, if the defendants have already produced everything they have, then they need not do anything further in response to this order. If the plaintiffs believe that the defendants have not adequately searched for responsive documents, then they may take a deposition or serve other discovery on the subject of the defendants' efforts to search for responsive documents. See Fed. R. Civ. P. 26(b)(1) (allowing parties to take discovery on question of documents' existence). If after taking such discovery the plaintiffs believe that they can prove that the defendants possess responsive documents that they have not produced,

11

then they may file a separate motion for sanctions under Federal Rule of Civil Procedure 37.

## II. D.J.B. MOTION

The additional issues raised by the D.J.B. motion involve categories of documents relating to the City's handling of complaints of police misconduct. The plaintiffs request documents relating to events that occurred as long ago as 1991. For example, the plaintiffs request all documents relating to any reports or reviews of the City of Milwaukee Police and Fire Commission generated in response to the Jeffrey Dahmer murders. The plaintiffs contend that the requested documents are relevant to their Monell claims, in that they might show that the City has a longstanding pattern or practice of inadequately handling allegations of officer misconduct.

The defendants seem to concede that some of the information requested by the plaintiffs is relevant to their Monell claims. However, they contend that information dating back twenty-four years and relating to forms of officer misconduct other than strip or body-cavity searches is irrelevant. I think it is probable that much of the information the plaintiffs have requested will turn out to be irrelevant. Still, the requests target information that is potentially relevant. For example, if an internal report from 1991 indicates that the police department had a policy of ignoring complaints of officer misconduct, and other evidence in this case suggests that the policy persisted until the time of the searches at issue in this case, then the report would be relevant to proving the existence of a pattern or practice of ignoring such complaints. The plaintiffs could then argue that such a policy was the cause of their injuries because, but for the policy, the City would have investigated and put a stop to the ongoing practice of subjecting citizens to illegal strip and body-cavity searches. For

these reasons, I conclude that the requests are within the scope of discovery as defined by Rule 26(b)(1).

Under Rule 26(b)(2)(C)(iii), however, a court must not permit discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit." The City in its brief contends that it will be "overwhelm[ed]" if it is required to respond to the plaintiffs' requests for information dating back twenty-four years. Br. at 3. However, the City has submitted no evidence that describes the burden or expense associated with responding to the plaintiffs' requests. The City does not, for example, point to an affidavit of its record custodian that describes the expected volume of responsive documents or the cost of any investigation the City would need to perform to locate responsive documents. And it is not obvious to me that locating, reviewing, and producing documents within the scope of the plaintiffs' requests will be so onerous or expensive as to outweigh the likely benefit of the documents to the plaintiffs. Thus, I cannot at this time conclude that the burden and expense of the proposed discovery outweighs its likely benefit.

Still, I will not order the City to fully respond to the disputed requests. Instead, I will order the City to estimate the burden and expense of complying with the plaintiffs' requests and then confer with the plaintiffs to see whether the requests can be narrowed and the parties can reach agreement on a reasonable procedure for locating and producing responsive documents. If the parties are unable to reach an agreement, the City may file a motion for a protective order in which it argues that complying with the plaintiffs' requests would be so onerous or expensive as to outweigh the likely benefit of the documents. Any such motion must be supported with evidence that describes the burden and expense of

complying with the requests.  The City's bare assertion that complying with the requests will be overwhelming will not suffice.

I note that nothing in this order is intended to suggest that I have determined that evidence concerning events from twenty-four years ago or concerning forms of police misconduct that are unrelated to illegal searches and seizures is admissible at trial.  All that I have determined is that such evidence is arguably admissible, such that discovery concerning such evidence is proper; whether it is actually admissible is an issue I leave for another day.

Finally, I must address plaintiffs' request that I modify a confidentiality order entered in a different case, <u>Frank Jude, Jr. v. City of Milwaukee, et al.</u>, E.D. Wis. Case No. 06-C-1101, to permit the City to produce in this case a discrete set of documents that were marked as confidential in that case.  The order of confidentiality in the <u>Jude</u> case applied only to documents produced by the City of Milwaukee; it did not apply to documents produced by other parties.  <u>See</u> ECF No. 28 in Case No. 06-C-1101.  Thus, allowing the documents to be produced to the plaintiffs in this case, subject to the confidentiality order already entered in this case, <u>see</u> ECF No. 187, will not prejudice the rights of parties to the Jude case that are not parties here.  And the City of Milwaukee has not alleged that its interest in confidentiality will be prejudiced if it is required to disclose the confidential documents produced in the <u>Jude</u> case to the plaintiffs in this case.  Moreover, consistent with my ruling above, I hold that such documents are discoverable (but not necessarily

admissible) in this case. Accordingly, the City must produce the requested <u>Jude</u> documents.[2]

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the Ashford motion to compel is **GRANTED IN PART** and **DENIED IN PART**, as explained above. Each party shall bear its own costs and fees associated with the motion.

**IT IS FURTHER ORDERED** that the D.J.B. motion to compel is **GRANTED IN PART** and **DENIED IN PART**, as explained above. Each party shall bear its own costs and fees associated with the motion.

**FINALLY, IT IS ORDERED** that the Ashford plaintiffs' motion to seal certain documents submitted in support of their motion to compel is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 22nd day of January 2015.

        s/ Lynn Adelman
        _____
        LYNN ADELMAN
        District Judge

---

[2] Because producing the requested <u>Jude</u> documents would not be burdensome or expensive, the City should produce them now. Such documents are not subject to the meet-and-confer procedure I established for responding to the D.J.B. plaintiffs' other requests.