IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMES ASHFORD, S.C., KEON CANADA,     )
M.C., WALTER COLEMAN, JERROLD EZELL,  )
R.P., ANTHONY PETTIS, L.L.R., M.R.,   )
CHARLES SMITH, BRANDON GRAHAM,        )
JEFFREY JEFFERSON, HENRY ZACK EZELL,  )
MICHAEL CORBITT, DUANNE TOWNSEND,     )
TRAVORIS WALTON, TERRY JACKSON,       )
ALVERIA ROGERS, MICHAEL D. SMITH,     )
JOSEPH BYNUM, DAVONTE HARRIS, and     )
JIMMIE HORNE,                         )
                                      )
              Plaintiffs,             )
                                      )
              v.                      )
                                      )
CITY OF MILWAUKEE, CHIEF EDWARD       ) No. 2:13-cv-00771-LA
FLYNN, CHIEF NANNETTE HEGERTY,        )
ASSISTANT CHIEF EDITH HUDSON,         ) Judge Lynn Adelman
LIUTENANT KAREN DUBIS, DETECTIVE      )
DOUGLAS MARX, SERGEANT JASON MUCHA,   )
SERGEANT DELMAR WILLIAMS, SERGEANT    )
JEFFREY NOVACK, MICHAEL TOBIN,        )
MICHAEL VAGNINI, MICHAEL GASSER,      )
JACOB KNIGHT, AMY BARTOL, JEFFREY     )
DOLLHOPF, JOSEPH SERIO, STEPHANIE     )
SEITZ, DANIEL VANDERVAST, JASON       )
BLEICHWEHL, OFFICER PAUL VENTO,       )
JEFFREY CLINE, GARY CHERONE,          )
SERGEANT DAVID PASZKIEWICZ, ZACHARY   )
THOMS, LOUIS KOPESKY, OFFICER         )
KRUEGER, OFFICER MAGLIO, OFFICER      )
GREGORY KUSPA, OFFICER ERIN           )
LELINSKI, OFFICER PAUL MARTINEZ,      )
OFFICER DAVID LETTEER, OFFICER        ) Jury Trial Demanded
RACHEL SZEDZIEWSKI, DETECTIVE ANGELA  )
JUAREZ, OFFICER JOSE VIERA,           )
DETECTIVE JASON ENK, OFFICER          )
CHRISTOPHER NAVARETTE, OFFICER        )
MICHAEL TERRELL, OFFICER M. TAKACS,   )
OFFICER E. TUCKER, OFFICER J.         )
JOHNSON,OFFICER BODO GAJEVIC,         )
OFFICER JOHN WIESMUELLER, OFFICER     )
STEVE STRASSER, OFFICER ZEBDEE        )
WILSON, OFFICER BRIAN BURCH, OFFICER  )
SHAWN BURGER, DETECTIVE KNITTER,      )
OFFICER LORI KOWALEFSKI, OFFICER      )
TAUBENHEIM, OFFICER KURT SALTWADEL,   )
OFFICER ROBERT WATTS, OFFICER KENT    )

TUSCHL, OFFICER JOSEPH SCHEURING,        )
OFFICER OMARLO PHILLIPS, OFFICER         )
MICHAEL FEDEL, OFFICER MICHAEL           )
WAWRZONEK,OFFICER BRIAN KOZELEK,         )
OFFICER JUSTIN DECLEENE, OFFICER         )
BRYANT DEVALKENAERE, OFFICER             )
CHRISTOPHER SCHLACTER, OFFICER FAWN      )
GABRIELSON, OFFICER MATTHEW              )
GADZIALINSKI, OFFICER DAVID BETTIN,      )
OFFICER JASON RODRIGUEZ, DETECTIVE       )
MARK HARMS, OFFICER GREG HUNTER,         )
OFFICER CORY WASHINGTON, OFFICER         )
JOSEPH SZCUBIALKA, OFFICER MICHAEL       )
VALUCH,OFFICER DEAN DRAJKOWSKI,          )
OFFICER MATTHEW KNIGHT, OFFICER JOSE     )
LOPEZ, OFFICER TODD BOHLEN, OFFICER      )
BRENT MISCIOCHOSKI, OFFICER SWIERCZ,     )
OFFICER GOLEMBIESKI,OFFICER ERIK         )
RODRIGUEZ,OFFICER STEVEN                 )
BRAUNREITER, OFFICER SCOTT IVERSON,      )
OFFICER GARY POST, OFFICER KAI           )
ANDERSON, OFFICER MATTHEW                )
WENZEL,OFFICER RICHARD                   )
LITWIN,OFFICER CHRISTINA SMITH,          )
OFFICER DOLORES APPLEGATE, DETECTIVE     )
MICHAEL WASHINGTON, OFFICER ROCHELLE     )
GAWIN, and Unknown Milwaukee Police      )
Department employees and officers,       )

                    Defendants.

             **[PROPOSED] FOURTH AMENDED COMPLAINT**

          NOW COME Plaintiffs, JAMES ASHFORD, S.C., KEON CANADA,

M.C., WALTER COLEMAN, JERROLD EZELL, R.P., ANTHONY PETTIS,

L.L.R., M.R., CHARLES SMITH, BRANDON GRAHAM, JEFFREY JEFFERSON,

HENRY ZACK EZELL, MICHAL CORBITT, DUANNE TOWNSEND, TRAVORIS

WALTON, TERRY JACKSON, ALVERIA ROGERS, MICHAEL D. SMITH, JOSEPH

BYNUM, DAVONTE HARRIS, AND JIMMIE HORNE and complaining of

Defendants, CITY OF MILWAUKEE, CHIEF EDWARD FLYNN, CHIEF

NANNETTE HEGERTY, ASSISTANT CHIEF EDITH HUDSON, LIEUTENANT KAREN

DUBIS, DETECTIVE DOUGLAS MARX, SERGEANT JASON MUCHA, SERGEANT

DELMAR WILLIAMS, SERGEANT JEFFREY NOVACK, OFFICER MICHAEL
VAGNINI, OFFICER JACOB KNIGHT, OFFICER MICHAEL GASSER, OFFICER
AMY BARTOL, OFFICER JEFFREY DOLLHOPF, OFFICER JOSEPH SERIO,
OFFICER STEPHANIE SEITZ, DANIEL VANDERVAST, OFFICER JASON
BLEICHWEHL, OFFICER PAUL VENTO, OFFICER JEFFREY CLINE, OFFICER
GARY CHERONE, SERGEANT DAVID PASZKIEWICZ, OFFICER ZACHARY THOMS,
OFFICER KOPESKY, OFFICER LOUIS KRUEGER, OFFICER MAGLIO, OFFICER
GREGORY KUSPA, OFFICER ERIN LELINKSI, OFFICER PAUL MARTINEZ,
OFFICER DAVID LETTEER, OFFICER RACHEL SZEDZIEWSKI, DETECTIVE
ANGELA JUAREZ, OFFICER JOSE VIERA, DETECTIVE JASON ENK, OFFICER
CHRISTOPHER NAVARETTE, OFFICER MICHAEL TERRELL, OFFICER M.
TAKACS, OFFICER E. TUCKER, OFFICER J. JOHNSON, OFFICER BODO
GAJEVIC, OFFICER JOHN WIESMUELLER, OFFICER STEVE STRASSER,
OFFICER ZEBDEE WILSON, OFFICER BRIAN BURCH, OFFICER SHAWN
BURGER, DETECTIVE KNITTER, OFFICER KOWALEFSKI,OFFICER
TAUBENHEIM, OFFICER KURT SALTWADEL, OFFICER ROBERT WATTS,
OFFICER KENT TUSCHL, OFFICER JOSEPH SCHEURING, OFFICER OMARLO
PHILLIPS, OFFICER MICHAEL FEDEL, OFFICER MICHAEL WAWRZONEK,
OFFICER BRIAN KOZELEK, OFFICER JUSTIN DECLEENE, OFFICER BRYANT
DEVALKENAERE, OFFICER CHRISTOPHER SCHLACTER, OFFICER FAWN
GABRIELSON, OFFICER MATTHEW GADZIALINSKI, OFFICER DAVID BETTIN,
OFFICER JASON RODRIGUEZ, DETECTIVE MARK HARMS, OFFICER GREG
HUNTER, OFFICER CORY WASHINGTON, OFFICER JOSEPH SZCIUBIALKA,
OFFICER MICHAEL VALUCH, OFFICER DEAN DRAJKOWSKI, OFFICER MATTHEW
KNIGHT, OFFICER JOSE LOPEZ, OFFICER TODD BOHLEN, OFFICER BRENT

MISCIOCHOSKI, OFFICER SWIERCZ, OFFICER GOLEMBIESKI,OFFICER ERIK RODRIGUEZ, OFFICER STEVEN BRAUNREITER, OFFICER SCOTT IVERSON, OFFICER GARY POST, OFFICER KAI ANDERSON, OFFICER MATTHEW WENZEL, OFFICER RICHARD LITWIN, OFFICER CHRISTINA SMITH, OFFICER DOLORES APPLEGATE, DETECTIVE MICHAEL WASHINGTON, OFFICER ROCHELLE GAWIN, and Unknown Milwaukee Police Department employees and officers, ("Defendant Officers"), state as follows:

## Introduction

1.    This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution.

## Jurisdiction and Venue

2.    This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331.

3.    Venue is proper under 28 U.S.C. § 1391(b).   On information and belief, all or most of the parties reside in Milwaukee County, and the events giving rise to the claims asserted herein all occurred within this district.

4.    Plaintiffs, James Ashford, S.C., Keon Canada, M.C., Walter Coleman, Jerrold Ezell, R.P., Anthony Pettis, L.L.R., M.R., Charles Smith, Brandon Graham, Jeffrey Jefferson, Henry Zack Ezell, Michael Corbitt, Duanne Townsend, Travoris Walton, Terry Jackson, Alveria Rogers, Michael D. Smith, Joseph Bynum, Davonte Harris, and Jimmie Horne are residents of the City of

Milwaukee.

5.   Defendant Edward Flynn is and was at the times relevant to this action, the Chief of the Milwaukee Police Department, acting under color of law and within the scope of his employment.

Defendant Flynn is being sued in his individual and official capacities.

6.   Defendant Nannette Hegerty was the Chief of the Milwaukee Police Department from November 2003 until November 2007, and was at all times acting under color of law and within the scope of her employment.  Defendant Hegerty is being sued in her individual and official capacities.

7.   Defendant Edith Hudson is and was at all times relevant to this action the Captain of the Fifth District of the Milwaukee Police Department, acting under color of law and within the scope of her employment.

8.   Defendant Karen Dubis was at all times relevant to the allegations in this complaint a lieutenant with Internal Affairs and/or the Criminal Investigation Bureau- Central Investigations.

9.   Sergeant Williams was a supervisor in the Fifth District.  At all times relevant to this action, Sergeant Williams acted under color of law and within the scope of his employment.

10.  Sergeant Jason Mucha was a supervisor in the Fifth District and of its "power shift," consisting of a small group of officers assigned to target violent and drug crime during the 7pm

to 3am shift. At all times relevant to this action, Sergeant Mucha acted under color of law and within the scope of his employment.

11. Sergeant Novack was a supervisor in the Seventh District. At all times relevant to this action, Sergeant Novack acted under color of law and within the scope of his employment.

12. Defendant Officers Vagnini, Knight, Gasser, Bartol, Dollhopf, Serio, Sietz, Vandervast, Bleichwehl, Vento, Cline, Cherone, Paszkiewicz, Thoms, Kopesky, Krueger, Maglio, Kuspa, Lelinski, Martinez, Letteer, Szedziewski, Juarez, Viera, Enk, Navarette, Terrell, M. Takacs, E. Tucker, J. Johnson, Bodo Gajevic, Wiesmueller, Strasser, Lelinski, Wilson, Burch, Shawn Burger, Knitter, Kowalefski, Taubenheim, Saltwadel, Watts, Tuschl, Scheuring, Phillips, Fedel, Wawrzonek, Kozelek, DeCleene, Devalkenaere, Detective Marx, Schlacter, Fawn Gabrielson, Gadzialinski, Bettin, Rodriguez, Harms, Hunter, Washington, Szcubialka, Valuch, Drajkowski, Knight, Lopez, Bohlen, Misciochoski, Swiercs, Golembieski, Rodriguez, Braunreiter, Scott Iverson, Post, Anderson, Wenzel, Litwin, Smith, Applegate, Washington, and Gawin were Milwaukee police officers at all times relevant to this action, acting under color of law and within the scope of their employment as Milwaukee police officers.

13. Unknown Defendant Officers ("Unknown Defendant Officers")are current and/or former employees, officers, and/or

supervisors of the Milwaukee Police Department who at all relevant times were acting under color of law and within the scope of their employment.

14. The City of Milwaukee is a Wisconsin municipal corporation with its principal place of business in Milwaukee, Wisconsin.

## *Background Facts*

15. The Fourth Amendment and the Due Process Clause of the Fourteenth Amendment require that all searches must be reasonable. To be reasonable, an invasive body cavity search must be supported by probable cause and a warrant (if no exigency exists), and must be conducted in private in a safe, medically proper, and hygienic manner.

16. Wisconsin law defines a "strip search" as a search in which a detained person's genitals, pubic area, buttock or anus, or a detained female person's breast, is uncovered and either is exposed to view or is touched by a person conducting the search. *See* Wis. Stat. Sec. 968.255(1)(b).

17. A police officer may not perform a strip search on an individual unless they have been "detained," which means they have been arrested.

18. In order to perform a strip search on a detained person, the officer must "obtain[] the prior written permission of the chief, sheriff or law enforcement administrator of the

jurisdiction where the person is detained, or his or her
designee, unless there is probable cause to believe that the
detained person is concealing a weapon." Wis. Stat. Sec.
968.255(2)(d).

19.   An officer conducting an authorized strip search must
do so in a way that makes "sure the person is not exposed to the
view of any person not conducting the search." Wis. Stat. Sec.
968.255(2)(b).

20.   Under Wisconsin law, it is illegal for police officers
to perform body cavity searches of persons suspected to be
secreting contraband in their bodies. Body cavity searches are
illegal unless performed by a physician, physician assistant or
registered nurse licensed to practice in the State of Wisconsin.
*See* Wis. Stat. Sec. 968.255(3).

### *February 2010 Search of Mr. Ezell*

21.   In February 2010, Mr. Ezell was sitting in his car
parked in front of his grandmother's home.

22.   Sergeant Mucha, along with Officers Vagnini and Knight,
approached his car with their weapons drawn.

23.   Officer Vagnini called to Mr. Ezell by his name and
ordered him to get out of his car.

24.   Mr. Ezell asked what was going on and why the officers
had their guns pointed at him.

25.   Defendant Officers did not respond to Mr. Ezell's

questions.  Instead, Officer Vagnini asked him if he had any drugs on him.   Mr. Ezell responded that he did not.

26.  Officer Vagnini then said, "I know how you all get down," or words to that effect.

27.  Mr. Ezell then exited his car and Officer Vagnini searched him by patting him down.

28.  Although he lacked probable cause to believe Mr. Ezell had any contraband on his person, Officer Vagnini proceeded to grab Mr. Ezell's scrotum and put his hand through Mr. Ezell's buttocks cheeks with a blading motion, all outside his pants.

29.  Officer Vagnini then pulled open Mr. Ezell's pants at the waist and shined his flashlight down them.

30.  Mr. Ezell asked Sergeant Mucha and Officers Knight and Vagnini whether Officer Vagnini was supposed to be doing this to him.   None of the Defendant Officers responded.

31.  Unsatisfied with his search of Mr. Ezell, Officer Vagnini then began to use his fingers to claw and attempt to penetrate Mr. Ezell's anus.

32.  Officer Vagnini threatened Mr. Ezell stating: "If you try to run, I'll blow your fucking head off," or words to that effect.

33.  Sergeant Mucha, Officer Knight, Officer Cline, and Officer Thoms stood by and watched Officer Vagnini's searches of Mr. Ezell, but did nothing to intervene or stop him.

34.  No exigent circumstances justified Officer Vagnini's warrantless cavity search of Mr. Ezell, much less is his forcible intrusion into Mr. Ezell's body in a non-hygienic, public setting by an officer who lacked any medical training to conduct a safe cavity search.

35.  Eventually, Officers Vagnini and Knight took Mr. Ezell to the Fifth District where he was booked.

36.  Mr. Ezell thereafter reported the assault to his parole officer.

37.  As a result of the illegal searches perpetrated and allowed by Sergeant Mucha and Officers Vagnini, Knight, Cline, and Thoms, Mr. Ezell experienced physical pain, emotional distress, humiliation, and trauma.

### *February 27, 2010 Search of L.L.R.*

38.  On February 27, 2010, L.L.R. was driving himself and two passengers towards the intersection of 12th and Chambers in the City of Milwaukee when he was stopped by Officers Vagnini and Gasser for an alleged traffic violation.

39.  L.L.R. had not committed any traffic violation. Rather, Officers Vagnini and Gasser used an alleged traffic stop as false pretense to search Plaintiff without probable cause.

40.  Officers Vagnini and Gasser approached L.L.R.'s car and ordered him to get out of his car. Officer Vagnini went to the passenger side of the vehicle and Officer Gasser went to the

driver's side of the vehicle. Officer Gasser conducted a pat-down of L.L.R.'s person and recovered no weapons.

41.  Officer Vagnini then approached the driver's side of the vehicle and asked L.L.R. about "the drugs."  L.L.R. denied having any drugs on his person.

42.  Officer Vagnini then assaulted L.L.R. by placing him in a chokehold, and began to pull back on L.L.R. neck.

43.  As a result of Officer Vagnini's assault and chokehold, L.L.R. had trouble breathing.

44.  While choking L.L.R., Officer Vagnini then put his hands inside L.L.R.'s underwear and violently probed L.L.R. in his anus.

45.  L.L.R. began screaming in pain and humiliation.

46.  Officer Gasser observed this assault and did nothing to intervene on L.L.R.'s behalf.

47.  Officer Vagnini performed a cavity search of L.L.R. in public and without a warrant.

48.  Officer Vagnini's warrantless cavity search of L.L.R. lacked any exigent circumstances to justify dispensing the need to obtain a warrant. Moreover, Officer Vagnini lacked any justification for his forcible intrusion into L.L.R.'s body in a non-hygienic, public setting by an officer who lacked any medical training to conduct a safe cavity search.

49.  L.L.R. was taken into custody.

50. Once at the police station, L.L.R. made a complaint about Defendant Vagnini's conduct.

51. L.L.R. again complained about Officer Vagnini's conduct when he was admitted into the Milwaukee County Jail to a lieutenant.

52. While incarcerated, L.L.R. met with officers from Internal Affairs and provided a statement complaining of Officer Vagnini's misconduct.

53. Defendant Detective Douglas Marx failed to properly investigate L.L.R.'s complaint by failing to conduct any interviews of the third party witnesses who witnessed the search or interview Defendants Gasser and Vagnini about the incident. Defendant Lieutenant Karen Dubis reviewed the cursory summary of Defendant Marx's interview with L.L.R. and without proper basis concluded that L.L.R.'s complaint was baseless. Defendant Dubis failed to seek any further action despite the criminal allegations that amounted to criminal sexual assault.

54. L.L.R. received a letter from Internal Affairs indicating that they were still investigating his complaint.

55. As a result of the illegal searches perpetrated and allowed by Officers Vagnini, Gasser and other Unknown Defendant Officers, L.L.R. experienced physical pain, emotional distress, humiliation, and trauma.

## *October 15, 2008 Search of Mr. Pettis*

56.  On October 15, 2008, Mr. Pettis was approached by Officers Maglio and Vagnini near Teutonia Avenue in the City of Milwaukee.

57.  Officer Vagnini shoved his fingers inside Mr. Pettis' rectum.

58.  At no time did Officer Vagnini obtain a warrant to conduct the unhygienic, public search.

59.  No exigent circumstances justified Officer Vagnini's warrantless cavity search of Mr. Pettis, much less his forcible intrusion into Mr. Pettis' body in a non-hygienic, public setting by an officer who lacked any medical training to conduct a safe cavity search.

60.  As a result of Officer Vagnini's actions, Mr. Pettis suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

## *June 29, 2011 Search of Mr. Pettis*

61.  On June 29, 2011, Officers Bleichwehl, Thoms, Cline, Dollhopf, Vagnini, and Mucha conducted a traffic stop near North 27th Street in the City of Milwaukee.

62.  The officers ordered Mr. Pettis and another individual from the vehicle.

63.  Officer Vagnini shoved his fingers inside Mr. Pettis' rectum.

64.  At no time did Officer Vagnini obtain a warrant to

conduct the unhygienic, public search.

65. No exigent circumstances justified Officer Vagnini's warrantless cavity search of Mr. Pettis, much less his forcible intrusion into Mr. Pettis' body in a non-hygienic, public setting by an officer who lacked any medical training to conduct a safe cavity search.

66. As a result of Officer Vagnini's actions, Mr. Pettis suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

### July 7, 2011 Search of Mr. Pettis

67. On July 7, 2011, Mr. Pettis and some of his friends stopped at a gas station and were approached by Officers Bartol and Seitz. The Officers claimed that Mr. Pettis and his companions may have violated bail conditions.

68. Officers Bartol and Seitz brought Mr. Pettis to the Seventh District police station and placed him in an interrogation room.

69. Eventually, Officer Vagnini entered the room.

70. Despite having no probable cause to believe any weapons or drugs were concealed on Mr. Pettis' person, Officer Vagnini shoved his fingers inside Mr. Pettis' rectum.

71. Officer Vagnini did not have a warrant to conduct a cavity search of Mr. Pettis.

72. Officer Vagnini then announced to Officers Bartol and Seitz, "This is how you search these guys," or words to that

effect.

73.   At no time did Officer Vagnini obtain Mr. Pettis'
consent for the July 2011 body cavity search, nor did Officer
Vagnini have authorization from the court.   No circumstances
justified Officer Vagnini's forcible entry into Mr. Pettis' body
in a public, non-hygienic setting by an officer who lacked any
medical training to safely perform such search.

74.   As a result of Officers Vagnini's, Bartol's and Seitz's
actions, Mr. Pettis suffered physical pain, emotional distress,
anxiety, humiliation, shame, and terror.

### *September 3, 2011 Search of Mr. Pettis*

75.   On September 3, 2011, Mr. Pettis and two other
individuals were stopped by Officers Knight, Thoms, Mucha,
Kopesky, and Vagnini near Green Bay Avenue in the City of
Milwaukee. One of the officers patted-down Mr. Pettis at that
location.

76.   Officer Vagnini then took Mr. Pettis to a room off of
the District Five garage.   Officer Vagnini then shoved his
fingers inside Mr. Pettis' rectum.

77.   At no time did Officer Vagnini obtain a warrant to
conduct the unhygienic, public search.

78.   No exigent circumstances justified Officer Vagnini's
warrantless cavity search of Mr. Pettis, much less is his
forcible intrusion into Mr. Pettis' body in a non-hygienic,

public setting by an officer who lacked any medical training to conduct a safe cavity search.

79.   As a result of Officer Vagnini's actions, Mr. Pettis suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

### *November 6, 2011 Search of Mr. Ezell and Mr. Pettis*

80.   On November 6, 2011, Mr. Pettis and Mr. Ezell were sitting on the front porch of a friend's home, waiting to meet her. As Mr. Pettis and Mr. Ezell waited, Officers Bartol and Seitz began observing them from a nearby alley.

81.   When their friend returned home, Mr. Pettis and Mr. Ezell helped their friend carry her groceries inside, where they gathered as the friend cooked a meal.

82.   Even though these Officers had no reason to think any crime was taking place, they entered the home.

83.   A few minutes after Officers Bartol and Seitz entered the home, dozens of other police officers surrounded and entered the house, including Officers Vagnini, E. Rodriguez, Knight, Tuschl, Scheuring, Phillips, Cline, Kopesky, Fedel and Sergeant Novack.

84.   When someone asked Officer Vagnini whether the officers had a warrant to be in the home, he replied: "You are with Anthony Pettis and that is warrant enough" or words to that effect.  None of the Defendant Officers had obtained a warrant to search Mr. Pettis or Mr. Ezell.

85.  Despite having no probable cause, these Defendant Officers detained Mr. Pettis and Mr. Ezell.

86.  Officer Vagnini ordered Mr. Pettis and Mr. Ezell to stand up.

87.  Officer Vagnini then shoved two bare fingers into both Mr. Ezell's and Mr. Pettis' rectums without pausing to wash his hands or put on gloves.

88.  Officer Vagnini did not have a warrant to conduct the cavity searches of Mr. Pettis or Mr. Ezell and he searched them in plain view of all of the other officers and Mr. Pettis' and Ezell's female friend.  Officer Vagnini's search of Mr. Pettis and Mr. Ezell was unsafe, non-hygienic, and performed by an officer who lacked any medical training to safely perform such searches.

89.  No drugs were found on Mr. Pettis or Mr. Ezell.

90.  Nevertheless, the Defendant Officers arrested Mr. Pettis and Mr. Ezell.

91.  Mr. Pettis remained in custody and was held for five days and released with time served. Mr. Ezell was held for several hours.

92.  As a result of the actions of Officers Vagnini, Bartol, Seitz, E. Rodriguez, Tuschl, Scheuring, Phillips, Cline, Kopesky, Fedel, and Sergeant Novack, Mr. Pettis and Mr. Ezell suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

### Additional Searches of Mr. Pettis

93. Officer Vagnini stopped Anthony Pettis and performed illegal body cavity searches on Mr. Pettis numerous other occasions.

94. As a result of Officer Vagnini's repeated actions, Mr. Ezell suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

### Summer 2011 Search of Keon Canada

95. One evening during the summer of 2011, Keon Canada was driving in his vehicle when he was pulled over by Officer Vagnini and another as yet Unknown Defendant Officer.

96. Mr. Canada did not know why he was being stopped. Officer Vagnini told him to get out of the car, go to the back of the vehicle and put his hands up. Mr. Canada obeyed.

97. Officer Vagnini first conducted a pat-down of Mr. Canada.

98. Despite having no probable cause, Officer Vagnini then inserted his bare hand inside Mr. Canada's underwear and felt between his buttocks.

99. The other Milwaukee police officer with Officer Vagnini observed Officer Vagnini's actions and did not stop him.

100. Officer Vagnini then told Mr. Canada to sit on the curb and take off his shoes so that they could be searched.

101. No drugs were found during either search.

102. Officer Vagnini gave Mr. Canada a traffic ticket.

## *Second Search of Keon Canada*

103. A few weeks after the first search, Mr. Canada was driving alone near 28th and Roosevelt Streets at about 2:00 a.m. when he was stopped by one police vehicle.

104. Officer Vagnini and an as yet unidentified Defendant Officer approached Mr. Canada's car and ordered him to the back of the vehicle.

105. Although he lacked probable cause to believe that Mr. Canada had committed any offense, Officer Vagnini proceeded to put his bare hand inside Mr. Canada's underwear and felt between his buttocks.

106. When Mr. Canada tried to move away from Officer Vagnini in response, the as yet unidentified officer grabbed him to keep Mr. Canada from moving.

107. The as yet unidentified officer observed Officer Vagnini's actions and did nothing to stop him.

108. No drugs were found on Mr. Canada.

109. The officers let Mr. Canada go and told him it was "too late" for him to be out, or words to that effect.

## *Third Search of Keon Canada*

110. A couple of days later, Mr. Canada was driving in the area of Hopkins and Glendale streets when Officer Vagnini pulled him over with as-yet unidentified Defendant Officer.

111. Officer Vagnini approached his vehicle and asked Mr. Canada where his brother J.A. was.

112. Mr. Canada provided Officer Vagnini his driver's license.

113. Officer Vagnini then proceeded to remove Mr. Canada from the car and conducted a pat down search of him.

114. Although he lacked probable cause to believe that Mr. Canada had committed any offense, Officer Vagnini grabbed Mr. Canada's underwear and pulled it up in between the cheeks of his buttocks.

115. Officer Vagnini then searched Mr. Canada by inserting his bare hand into his underwear and felt in between his buttocks.

116. Officer Vagnini then moved his hand forward and touched Mr. Canada's testicles.

117. The officer with Officer Vagnini observed his search of Mr. Canada, but did nothing to stop it.

118. No drugs were found.

119. Officer Vagnini then let Mr. Canada go.

### *July 2011 Search of Keon Canada*

120. In early July 2011, Mr. Canada was returning home with a friend after being out for the evening. He had just pulled up in front of his home when a police vehicle pulled up beside his car.

121. Officer Vagnini approached Mr. Canada's vehicle and ordered Mr. Canada and his friend to get out of the car. Both

men obeyed.

122. Although he lacked probable cause to believe Mr. Canada had committed any offense, Officer Vagnini then proceeded to search Mr. Canada by inserting his bare hand into his underwear and moving his hand up and down between his buttocks with a blading motion.

123. Officer Vagnini then searched Mr. Canada's friend.

124. The police officer who was with Officer Vagnini stood by and watched Officer Vagnini's search of Mr. Canada and his friend, but he did not take any actions to stop it.

### *July 21, 2011 Search of Keon Canada*

125. On or about July 21, 2011 around 1:30pm in the afternoon, Mr. Canada was in his vehicle and was pulled over in the alley behind his home by three police vehicles traveling together, which is referred to in the Fifth District's power shift as a "train." The "train" included two unmarked and one marked cars.

126. Officers Vagnini and Vandervast approached Mr. Canada's vehicle. Mr. Canada rolled down his window and handed the officers his driver's license.

127. Although he lacked probable cause that Mr. Canada had committed any offense, Officer Vagnini opened Mr. Canada's car door and pulled him out of his vehicle and brought him to the car's rear bumper.

128. Officer Serio then had Mr. Canada put his hands on the trunk of his vehicle while he conducted a pat down search of Mr. Canada.

129. Officer Serio proceeded to then open up the front of Mr. Canada's pants and look into his pants.

130. The other officers, including Officers Vagnini and Vandervast, observed Officer Serio's search of Mr. Canada, but did nothing to stop it.

131. As a result of Officers Vagnini's, Vandervast's, Serio's and other Unknown Defendant Officers' actions, Mr. Canada suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

### *September 3, 2011 Search of R.P.*

132. On September 3, 2011, R.P. was riding in the back seat of his friend's vehicle when Officer Vagnini pulled over the vehicle for allegedly having excessive tint on the windows.

133. Officer Vagnini ordered R.P. to exit the vehicle.  R.P. obeyed.

134. Officer Vagnini proceeded to conduct a pat down search of R.P.

135. Although he lacked probable cause to believe R.P. had committed any offense, Officer Vagnini then grabbed R.P.'s underwear and pulled it up in between R.P.'s buttocks.

136. Officer Vagnini then inserted his bare hand into R.P's

pants and rubbed in between R.P.'s testicles and buttocks.

137. Officers Knitter, Wawrzonek, Dollhopf, Kozelek, Kopesky, Thoms, Knight and Sergeant Mucha observed Officer Vagnini's searches of R.P., but did nothing to stop it.

### *December 2011 Search of R.P.*

138. In December 2011, R.P. was in the car with his friend near 27th and Hopkins Streets at approximately 8 p.m. in the evening when he was pulled over by a "train" of police vehicles.

139. Officers Vagnini and Knight along with approximately six other officers were part of the traffic stop.

140. Officer Vagnini ordered R.P. and his friend to get out of the car. They both obeyed.

141. Officer Vagnini seized R.P.'s watch that he was wearing. When one of the other officers commented that Officer Vagnini was not allowed to do that, Officer Vagnini responded that he was taking it.

142. Although he lacked probable case, Officer Vagnini then searched R.P. by pulling his underwear up in between his buttocks. Then, Officer Vagnini used R.P.'s underwear as a shield and inserted his hand in between R.P.'s buttocks.

143. None of the other officers who stood by watching, including Officer Knight, did anything to stop Officer Vagnini.

144. After the search, the Defendant Officers let R.P. and his friend go without issuing any citations.

145. R.P. followed the police cars back to the Fifth District.

146. R.P. went inside to make a complaint regarding the officers' conduct and to obtain the inventory for his watch that Officer Vagnini took from him.

147. Sergeant Mucha approached R.P., who asked Sergeant Mucha for a complaint form.

148. Sergeant Mucha responded that he would not give R.P. a complaint form.Sergeant Mucha then threatened that he would call the FBI on R.P.

149. R.P. left the Fifth District without being able to file a complaint.

### Additional Searches of R.P. in late 2011 and early 2012

150. R.P. was searched three additional times between late September 2011 and mid-March 2012.

151. During the winter of 2011-2012, R.P. was driving on 27th Street in the City of Milwaukee when he stopped at an intersection. Defendant Officers Vagnini and Knight were stopped at the same intersection.

152. When Officer Vagnini observed R.P.'s vehicle, he turned his car at an angle and drove toward R.P.'s vehicle, making contact with it, but causing no damage.

153. Officers Knight and Vagnini exited their vehicle and ordered R.P. out of his car. Vagnini asked "Where the drugs at?" or words to that effect. R.P. replied that he was done dealing

drugs, or words to that effect.

154. Officer Vagnini inserted his hand into R.P.'s pants and bladed R.P.'s buttocks, using his underwear as a shield.

155. Officer Knight was present and did nothing to stop Officer Vagnini.

156. Officer Knight then proceeded to search the car.

157. No drugs or contraband were found on R.P. or in the vehicle.

158. No probable cause justified the search of R.P. or the vehicle. No exigent circumstances justified the non-hygienic, public search.

159. On another occasion, R.P. was driving in the evening on 22nd Street in the City of Milwaukee. R.P.'s friend was in the passenger seat and the two young men were looking for the address of another friend who lived on that street.

160. Suddenly, Officer Vagnini and the "train" stopped R.P.'s vehicle, ordering the young men out of the car.

161. The two young men were so frustrated by Officer Vagnini's routine unreasonable searches that they told the officers, "Go ahead, go in our butts, then," or words to that effect as they exited the vehicle.

162. The young men placed their hands on the top of the car.

163. Officer Vagnini went inside of R.P.'s underwear with his bare hand and bladed between R.P.'s buttocks.

164. R.P. said something to the effect of "I know what

you're going to do and you're not going to find anything," to which Vagnini replied "You know what time it is," or words to that effect.

165.    Unknown officers observed the search and did nothing to stop it.

166. The Defendant Officers searched the vehicle.  No contraband was found on R.P. or the vehicle.

167. No probable cause justified the search of R.P.'s person or the vehicle.  No exigent circumstances existed to justify the non-hygienic, public search.

168. On another occasion, R.P. was driving on Center Street in the City of Milwaukee in the afternoon.  R.P.'s friend was in the passenger seat.

169. Suddenly, Officers Vagnini and Knight pulled up behind R.P. and his friend.

170. Officer Vagnini approached R.P. on the driver's side of the vehicle.  R.P. asked, "Why did you pull me over?" or words to that effect.  Officer Vagnini replied "What are you doing over here?" referring to the neighborhood.

171. The officers ordered R.P. and his friend out of the car.

172. R.P. was upset by the continual unreasonable searches by Officer Vagnini and stated, "We're just going to spread 'em for you," or words to that effect.  Vagnini replied, "I'm going to get you!"

173. Officer Vagnini inserted his hand into R.P.'s underwear, touching his genitals and blading his hand between R.P.'s buttocks.

174. Officer Knight observed this search and did nothing to stop it.

175. Officer Knight searched the vehicle. No contraband was found on R.P. or in the vehicle.

176. No probable cause justified the search of R.P. or the vehicle. No exigent circumstances justified the non-hygienic, public search.

177. As a result of Sergeant Mucha's, Officers Vagnini's, Knight's, and other Unknown Defendant Officers' actions, R.P. suffered physical pain, emotional distress, anxiety, humiliation, shame and terror.

### The Summer 2011 Searches of M.C.

178. In the summer of 2011, M.C. was stopped and searched three times in a 24-hour period by Officers Vagnini, Knight and other Unknown Defendant Officers.

179. In the early afternoon one day, M.C. and his two companions were in a vehicle near the intersection of 11th and Capital streets. Plaintiff M.C. was in the backseat of the car.

180. Three police cars, part of the "train," began following the young men and pulled the car over.

181. Officers Vagnini and Knight, along with approximately

six other as yet unidentified Milwaukee police officers, exited
three vehicles.

182. Officer Vagnini went to the driver's side of the car.
Officer Vagnini told the young men that he pulled them over
because one of the occupants of the car was present.

183. Despite having no probable cause, Officer Vagnini told
the young men to exit the vehicle and stand at the back of the
vehicle.

184. Officer Vagnini then conducted a pat-down one of M.C.'s
companions. After the external pat-down, M.C. observed Vagnini
put his hand inside the man's pants and the man began yelling.

185. Officer Vagnini then conducted an external pat-down of
M.C.  After the external pat-down, he put his hand inside M.C.'s
pants and, using M.C.'s underwear as a "shield," glided his hand
back and forth between M.C.'s buttocks with a blading motion.

186. Officer Vagnini then put his bare hand inside M.C.'s
underwear and once again glided his hand back and forth between
M.C.'s buttocks.

187. No drugs were found on any of the men, nor were any of
them charged with a crime.  The men returned to their car and
left.

188. Later that same day, in the early evening hours, the
three young men were once again in the vicinity of 11th Street
Capital Streets when the car was pulled over by Officers Knight,

Vagnini, and two other as yet unidentified Milwaukee police officers. The officers were traveling in two vehicles.

189. Plaintiff M.C. was riding in the passenger seat of the car.

190. Officer Vagnini came to the driver's side of the car and shined a flashlight in the driver's face.

191. Officer Knight went to the passenger's side of the vehicle to speak to M.C. The other two officers stood by watching.

192. Despite having no probable cause to do so, Officer Vagnini told all three men to get out of the car and go to the rear of the vehicle.

193. Officer Vagnini then patted down each of M.C.'s companions and put his hand inside of their pants.

194. Officer Vagnini then put his hand inside M.C.'s pants and, using M.C.'s underwear as a "shield," glided his hand back and forth between M.C.'s buttocks.

195. The Defendant Officers then searched the vehicle.

196. In the course of the search, the Defendant Officers threw clothing and other items found in the car into the middle of the street.

197. The Officers then told the young men to pick up these items from the street.

198. No drugs were found on any of the men, nor were any of

them charged with a crime. The men returned to their vehicle and left.

199. Several hours later, in the early morning hours of the following day, M.C. was traveling alone near Humboldt and Center Streets in the same vehicle.

200. Five Milwaukee police officers on bicycles then began following M.C. Eventually a police car also began following M.C. Other police cars or other vehicles also joined the group.

201. M.C. pulled into an alley. Officer Vagnini approached M.C's vehicle from the front of his vehicle.

202. Defendant Vagnini then told M.C. to get out of the vehicle and go to the back of the car.

203. Despite having no probable cause to perform a search, Officer Vagnini first conducted a pat-down of M.C. Defendant Vagnini then put his hand inside M.C.'s pants and, using M.C.'s underwear as a "shield," glided his hand back and forth between M.C.'s buttocks.

204. Officer Knight and as yet unidentified Defendant Officers observed Vagnini's actions and did nothing to intervene.

205. No drugs were found and M.C. was not placed under arrest. He returned home.

### *December 30, 2011 Search of M.C.*

206. On December 30, 2011 in the late evening hours M.C. was driving near 14th and Burleigh Streets in the City of Milwaukee. M.C.'s friend was asleep in the passenger seat.

207. M.C. exited the car briefly to check on a residence owned by a family member.

208. When he got back into his vehicle, he suddenly heard someone trying to open the driver's side door. M.C. could not tell who the person at the door was and saw a gun through the window.

209. M.C. drove off quickly.

210. Three cars then began following M.C.

211. When M.C. saw flashing lights on top of one of the cars, he realized the vehicles were police cars and he pulled over.

212. M.C. then put his arms outside of his car in a "V" formation to show that he was unarmed.

213. Without warning, Officer Vagnini quickly approached the car, swung his fist inside the vehicle, and hit M.C. in the face, breaking his glasses.

214. Officer Vagnini then grabbed a cord that was hanging from M.C.'s neck.  Using the cord, Officer Vagnini then threw M.C. to the ground.

215. During this assault, five additional Milwaukee Police

cars pulled up to the scene.

216. M.C. was lying face-down on the ground. A Defendant Officer knelt on M.C.'s knees and another officer held down his arms.

217. Officer Vagnini then put one or two of his bare fingers inside M.C.'s anus. M.C. screamed in protest.

218. On information and belief, Officer Vagnini then performed a body cavity search on the passenger of the vehicle.

219. Officer Knight, Officer Gawin, Officer Gasser, Officer Szcyubialka, Officer Serio, Officer Kuspa, and Officer Watts observed Vagnini's actions and did nothing to stop him.

220. No exigent circumstances justified Officer Vagnini's warrantless cavity search of M.C., much less his violent intrusion into M.C.'s body in a non-hygienic, public setting.

### The January 7, 2012 Search of M.C.

221. On or about January 7, 2012 in the mid-afternoon, M.C. was driving near 28th and Chambers Streets in the City of Milwaukee.

222. Three police cars approached M.C.'s car head on.

223. M.C. recognized Officer Vagnini as the driver of the unmarked car.

224. Officer Vagnini drove his car directly towards M.C.'s car and stopped in front of M.C.'s car.

225. M.C. put his vehicle in reverse and traveled

approximately half a block away from Defendants' vehicles when Officer Vagnini activated the lights on his vehicle.

226. M.C. pulled his vehicle over and opened his car door.

227. Without warning or probable cause, Officer Vagnini then approached the driver's side of the vehicle, hit M.C. in the face, and grabbed a cord around M.C.'s neck. Using the cord, Officer Vagnini threw M.C. to the ground.

228. On information and belief, several civilian bystanders observed Vagnini's conduct.

229. M.C. was then laying face-down on the ground. Officer Vagnini then knelt on M.C.'s knees.

230. M.C. began shouting, "Record this, record this! He's harassing me. I'm sick of you harassing me! I don't have anything," or words to that effect.

231. Officer Vagnini then inserted 1 or 2 fingers inside of M.C.'s anus. M.C. continued yelling.

232. No exigent circumstances existed to justify Officer Vagnini forgoing a warrant before conducting a cavity search of M.C., which was performed in a public setting. In addition, Officer Vagnini was not wearing any gloves nor did he take any health precautions in conducting his cavity search of M.C.

233. Defendant Officers Knight, Cline, Kuspa, and Thoms observed Officer Vagnini's actions and did nothing to stop him.

234. An officer from Internal Affairs spoke with M.C. about

what happened to him.

235. M.C. never received any further information from Internal Affairs with regard to its investigation.

236. As a result of the actions of Officer Vagnini Knight, Officer Gawin, Officer Gasser, Officer Szcyubialka, Officer Serio, Officer Kuspa, and Officer Watts, M.C. suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

### *First Search of Mr. Coleman*

237. When Mr. Coleman was seventeen years old, he was pulled over in the vicinity of 21st Street and Keefe Avenue.

238. Two police cars, one marked and one under cover, pulled Mr. Coleman over for allegedly failing to stop completely at a stop sign.

239. Officer Vagnini approached Mr. Coleman's car and forcibly removed him from his vehicle.

240. Officer Vagnini first conducted a pat-down search of Mr. Coleman.

241. Without explanation, Officer Vagnini then handcuffed Mr. Coleman.

242. Although he lacked probable cause, Officer Vagnini proceeded to insert his hand in between Mr. Coleman's buttocks with a blading motion.

243. Officer Vagnini then reached forward and touched Mr. Coleman's penis.

244. Sergeant Mucha and Officers Valuch, Kuspa, Thoms, and Watts observed Officer Vagnini's actions and did nothing to stop him.

### *Second Search of Mr. Coleman*

245. In the summer of 2011, Mr. Coleman was in his car at a gas station with a friend when he looked in his rearview mirror and observed several Milwaukee police officers walking towards his vehicle, including Officers Vagnini and Dollhopf.

246. Although Mr. Coleman had not committed any offense, Officer Vagnini pulled Mr. Coleman out of his vehicle and asked him "What are you doing at a gas station?" or words to that effect.

247. Officer Vagnini moved Mr. Coleman to the back of his vehicle and the officers searched his vehicle.

248. Officer Vagnini then pulled out a pair of rubber gloves and put them on.

249. Mr. Coleman asked Officer Vagnini if he had a search warrant. Officer Vagnini laughed.

250. Although he lacked probable cause, Officer Vagnini proceeded to search Mr. Coleman by blading his hands in between his buttocks.

251. No drugs were found on Mr. Coleman.

252. Nevertheless, Officer Vagnini arrested Mr. Coleman and held him for approximately two hours and then released him

Coleman without charging him.

### *Third Search of Mr. Coleman*

253. On another occasion Officer Vagnini pulled Mr. Coleman over two times in one day.

254. During both stops, Mr. Coleman was driving in his car and had not committed any traffic violations.

255. Although Officer Vagnini lacked probable cause, on the first occasion  Officer Vagnini searched Mr. Coleman by using his underwear as a shield and blading his hand in between Mr. Coleman's buttocks.

256. No drugs were found on Mr. Coleman.

257. Sergeant Mucha and Officers Dollhopf, Bleichwehl, Thoms, Kozelek, Szcubialka, Serio, Applegate, and Washington observed  the search and did nothing to stop Officer Vagnini.

258. On the second occasion, Officer Vagnini stopped Mr. Coleman on the highway and let out some air from the tire of Mr. Coleman's vehicle before letting him go.

259. Mr. Coleman reported what had happened to him to his parole officer.

260. Later, Mr. Coleman met with Internal Affairs officers on two or three occasions to report Officer Vagnini's misconduct.

### *The Fourth Search of Mr. Coleman*

261. Mr. Coleman was driving near W. Keefe and 23rd Street in the City of Milwaukee.

262. Officer Vagnini and Sergeant Mucha stopped Mr. Coleman's vehicle and ordered him out of the car.

263. Officer Vagnini ordered Mr. Coleman to bend over the hood of the car. Officer Vagnini then placed two fingers inside Mr. Coleman's anus.

264. An unknown officer observed Officer Vagnini's actions and did nothing to stop Officer Vagnini.

265. No exigent circumstances existed to justify Officer Vagnini's warrantless cavity search of Mr. Coleman or the other men.

266. As a result of the illegal searches perpetrated and allowed by Sergeant Mucha and Officers Vagnini, Dollhopf, Bleichwehl, Thoms, Kozelek, Szcubialka, Serio, Kuspa, Valuch, Applegate, Washington, and other Unknown Defendant Officers, Mr. Coleman experienced physical pain, emotional distress, humiliation, and trauma.

### *The First Search of Mr. Ashford*

267. Mr. Ashford was subjected to six inappropriate searches by the Defendant Officers during an approximately six month period beginning in the summer of 2011 when he was 19 years old.

268. The first time Mr. Ashford was stopped he was driving

on 25th Street in Milwaukee.  Mr. Ashford had two friends in the vehicle with him.

269. The "train," made up of three police cars, began following Mr. Ashford.  He pulled over.

270. Officers Vagnini and Serio came to the driver's side of the vehicle. Six to eight as yet unidentified Defendant Officers were also present. Mr. Ashford had no idea why he was being stopped.

271. Officer Vagnini called Mr. Ashford by name and said "I know you're a drug dealer, where's the drugs?" or words to that effect.  Mr. Ashford denied having any drugs.

272. Officer Vagnini then asked if he could search the vehicle and Mr. Ashford consented.  No drugs were found in the search.

273. Despite having no probable cause to believe Mr. Ashford had committed any offense, Officer Vagnini then ordered all three occupants of the car to exit the vehicle, go the rear of the vehicle and put their hands up.

274. Officer Vagnini conducted an external pat-down of each young man.

275. Officer Vagnini then put his two bare fingers into the rectum of each young man, one after the other.

276. No exigent circumstances existed to justify Officer Vagnini's warrantless cavity search of Mr. Ashford or the other

men.  Moreover, Officer Vagnini was not wearing any gloves nor did he take any health precautions before conducting the cavity searches.

277. The other six to eight Defendant Officers observed Defendant Vagnini's actions and did nothing to stop him from conducting the searches.

278. Officer Vagnini then forced the men to take off their shoes so they could be searched.

279. No drugs were found on any of the men and none of the men were arrested.

### *The Second Search of Mr. Ashford*

280. A few days after the first incident, Mr. Ashford was standing outside of his grandmother's house when a "train" of two or three unmarked police vehicles passed in front of him.

281. Officer Vagnini immediately said "Ashford, what are you doing out here?" or words to that effect.  Mr. Ashford explained that the residence belonged to his grandmother.

282. Officer Vagnini responded, "You look suspicious. Where are the drugs?" or words to that effect.  Mr. Ashford again denied having any drugs.

283. Officer Vagnini then conducted a pat down search of Mr. Ashford.

284. Despite having no probable cause to conduct a search, Officer Vagnini then told Mr. Ashford to turn around and put his

hands up. He then searched him by inserting two bare fingers into Mr. Ashford's rectum.

285. There were no exigent circumstances to justify Officer Vagnini's warrantless cavity search of Mr. Ashford. In addition, Officer Vagnini conducted his cavity search of Mr. Ashford in a pubic setting without taking any health precautions.

286. Officers Serio, Knight, and at least one other as yet unidentified Milwaukee police officer, observed Officer Vagnini's actions and did nothing to stop him.

287. No drugs were found on Mr. Ashford and he was not arrested.

### The Third Search of Mr. Ashford

288. The third incident occurred a few days after the second incident. Mr. Ashford was in Garden Homes Park with about a dozen other young people when a "train" of police vehicles, this time consisting of four to six unmarked vehicles, came through the park. Two to four police cars approached one side of the recreation area where the young people were standing and the other cars approached on the opposite side. As a result, Mr. Ashford and his friends were surrounded by police officers on both sides.

289. Officer Vagnini along with eight to ten as yet unidentified Milwaukee Police Officers then rushed towards the young people with their guns drawn.

290. Officer Vagnini then said, "Ashford, where are the drugs?" or words to that effect.  Mr. Ashford denied having any drugs.

291. Some Defendant Officers conducted external pat-downs of several young people, including Mr. Ashford.

292. Officer Vagnini then inserted his fingers in Mr. Ashford's rectum.  He also inserted his fingers in the rectums of four or five other young people, one after another.

293. No exigent circumstances justified Officer Vagnini's warrantless cavity searches.  Moreover, Officer Vagnini was not wearing any protective gloves nor did he take any other health precautions in conducting the sequential, public cavity searches these men.

294. Defendant Officers observed Defendant Vagnini's cavity searches and did nothing to stop him.

295. No drugs were found on Mr. Ashford and he was not arrested.

### *The Fourth Search of Mr. Ashford*

296. The fourth incident also occurred during summer 2011 while Mr. Ashford was sitting in a car with two friends.

297. Sergeant Mucha, along with other as yet unidentified Defendant Officers, approached the vehicle.

298. Despite having no probable cause to conduct a search, the Defendant Officers proceeded to search all three young men.

299. In the course of the search, one of the officers put his hand inside Mr. Ashford's underwear and touched his testicles.

300. Mr. Ashford began yelling and calling attention to the scene.

301. One of the officers said to Mr. Ashford's companions, "You don't want to go to jail, tell your friend to stop talking," or words to that effect.

302. Defendant Officers observed the inappropriate search and did nothing to intervene.

303. Mr. Ashford pleaded with bystanders to record the incident.

304. Mr. Ashford's relatives video-recorded the moments just after Sergeant Mucha's search.

### The December 16, 2011 Search of Mr. Ashford and Mr. Graham

305. On December 16, 2011, Mr. Ashford was driving on 26th Street in Milwaukee with Brandon Graham and another friend when Officers Vagnini, Knight, Bleichwehl, Kopesky, and Thoms stopped the car.

306. The officers told the young men to get out of the car.

307. Officer Vagnini asked Mr. Ashford about "some drugs," or words to that effect. Mr. Ashford denied having any drugs.

308. The Officers then conducted a pat down search of Mr. Ashford, Mr. Graham, and their friend.

309. Officer Vagnini then inserted two bare fingers into the rectums of James Ashford and Brandon Graham, one after the other. There was no probable cause to conduct a search of either man.

310. Officer Vagnini's warrantless cavity searches of Mr. Ashford and Mr. Graham lacked any exigent circumstances to justify them, took place in a public setting, and lacked hygienic procedures.

311. Defendant Officers, including Officers Knight, Bleichwehl, Kopesky, and Thoms observed Defendant Vagnini's actions and did nothing to stop him.

### The Sixth Search of Mr. Ashford

312. The sixth incident also occurred in December 2011. Mr. Ashford was sitting in his parked car in front of his grandmother's house when the "train," made up of a few unmarked cars, drove through the neighborhood.

313. Officers Vagnini, Bleichwehl, Serio, Vandervast, Vento, and other as yet unidentified Milwaukee Police officers pulled their cars up in front of Mr. Ashford. One of the officers said, "We caught [Ashford's friend,] we know soon we'll catch you," or words to that effect.

314. The officers parked their car at an angle so that Mr. Ashford could not leave.

315. Despite having no probable cause to conduct a search, the officers pulled Mr. Ashford from the car.

316. After conducting a pat down, Officer Vagnini then searched him by putting his two fingers in Mr. Ashford's rectum.

317. No exigent circumstances existed to support Officer Vagnini's warrantless cavity search of Mr. Ashford, much less his violent entry into Mr. Ashford's body in a public setting that lacked basic hygienic procedures.

318. Defendant Officers, including Officers Bleichwehl, Serio, Vandervast, and Vento, observed Officer Vagnini's actions and did nothing to stop him.

319. No drugs were found on Mr. Ashford and he was not arrested.

320. In the summer of 2011, Mr. Ashford's mother filed a complaint with the Fifth District regarding the ongoing harassment of her son by Officer Vagnini and his fellow officers.

321. Mr. Ashford and several of his close relatives, including his mother, met with Sergeant Williams and Officers Vandervast and Vento in the summer of 2011.

322. The meeting occurred at the Fifth District and lasted for approximately one hour.

323. During the meeting, Mr. Ashford and his family members reported to Sergeant Williams and the other Officers, the conduct of Defendant Officers, and specifically detailed Defendant Vagnini's repeated, warrantless rectal searches of Mr. Ashford and his friends.

324. Sergeant Williams responded to Mr. Ashford and his family's complaint about the officers' harassing conduct by telling Mr. Ashford to stay out of certain neighborhoods, or words to that effect.

325. At no point did Sergeant Williams acknowledge that Defendant Officers' actions, including Officer Vagnini's warrantless cavity searches, were inappropriate, nor did he indicate that the officers would be investigated or disciplined for their conduct.

326. Mr. Ashford never received any further information from the Milwaukee Police Department regarding the supervision or discipline of the involved officers.

327. As a result of Sergeant Williams, Sergeant Mucha, and Officers Vagnini, Serio, Knight, Bleichwehl, Vandervast, Vento, Kopesky, Thoms, and other Unknown Defendant Officers' actions, Mr. Ashford suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

### *Additional Searches of Brandon Graham*

328. In addition to the December 16, 2011 search described in paragraphs 305-311, Officer Vagnini conducted at least two other body cavity searches of Brandon Graham in public in the time period from 2009-2011.

329. Officer Vagnini had no probable cause, let alone exigent circumstances, justifying these public, violent body

cavity searches.

330. Unknown Defendant Officers observed one or more of these searches and did nothing to stop Officer Vagnini's actions.

331. As a result of the actions of Vagnini, Knight, Kopesky, Thoms, and Unknown Defendant Officers, Mr. Graham suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

### Search of S.C.

332. On or about the spring of 2012, S.C. was driving home in his car when he was pulled over by three police vehicles that were traveling together in a "train," including two unmarked and one marked, in the alley behind his home. Defendant Officers Knitter, Kowalefski, Burch, and Burger arrived in the alley.

333. Defendant Officers had no probable cause to believe S.C. had committed any crime.

334. Three officers, including Officer Vagnini, approached his car with their guns drawn.

335. Without warning or probable cause, one of the Defendant Officers opened S.C.'s car door, reached in and pulled him out.

336. Officer Vagnini then searched S.C., grabbing his testicles with his bare hands and pulling S.C.'s underwear into the crack of his buttocks.

337. Officers Knitter, Kowalefski, Burch, and Burger observed Officer Vagnini's actions and did nothing to stop him.

338. Officer Vagnini did not recover any drugs on S.C.'s person.

339. One of the Defendant Officers handcuffed S.C., but they did not charge him with any crimes or take him to the police station. Instead, they released S.C.

340. S.C. filed a complaint with the Milwaukee Police Department's Internal Affairs on or about the following day, but he did not hear anything in response.

341. As a result of Officer Vagnini's and other Unknown Defendant Officers' actions, S.C. suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

### Search of Jeffrey Jefferson

342. On or about April 10, 2011, near 24th Street in Milwaukee, Jeffrey Jefferson was approached by Officers Vagnini, Cline, Kuspa, Thoms, Burch, Vento, Vandervast and other Unknown Defendant Officers.

343. Officer Vagnini punched Jefferson several times in his face, which resulted in Jefferson falling to the ground. The officers then handcuffed Jefferson's hands behind his back.

344. Vagnini then made the following racially derogatory comment, "Where the drugs at, n---er?" or words to that effect. One of the officers pushed Mr. Jefferson against the wall. Officer Vagnini put on a pair of gloves and inserted his finger into Mr. Jefferson's anus. There was no probable cause to conduct a body cavity search.

345. No drugs were recovered from this search.

346. Officer Cline observed Officer Vagnini's actions and did nothing to stop him.

347. No exigent circumstances existed to justify the warrantless, violent search of Mr. Jefferson in a public and unhygienic setting.

348. As a result of Officer Vagnini's and other Unknown Defendant Officers' actions, Mr. Jefferson suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

### *March 12, 2010 Search of M.R.*

349. On March 12, 2010, M.R. was in a residence on 25th Street in Milwaukee when Milwaukee Police Officers burst into the home.

350. Despite having no probable cause to do so, Officer Vagnini put his fingers inside M.R.'s underwear and placed his fingers inside M.R.'s rectum.

351. No drugs were found in this search and M.R. was not arrested.

352. No exigent circumstances justified this search in a public, unhygienic setting.

353. Sergeant Mucha and Officers Juarez, Schlacter, Gabrielson, Gadzialinski, DeValkenaere, Bettin, Rodriguez, Harms, Burger, Burch, Knitter, Kowalefski, Hunter, Washington, Krueger, Kopesky, Knight, and Dollhopf observed Officer Vagnini's actions

and did nothing to stop him.

### November 2010 Search of M.R.

354. In November of 2010, M.R. was stopped by Officer Krueger and Officer DeCleene outside of a convenience store. Officers Vagnini, Kopesky and Knight then arrived at the same location.

355. Despite having no probable cause to do so, Officer Vagnini put his fingers inside M.R.'s underwear and placed his fingers inside M.R.'s rectum.

356. No drugs were recovered in this search.

357. No exigent circumstances justified this search in a public, unhygienic setting.

358. Officers Krueger, Kopesky, Knight and DeCleene observed Officer Vagnini's actions and did nothing to stop him.

### February 13, 2011 Search of M.R.

359. On February 13, 2011, Officers Vagnini, Dollhopf, and Cline again stopped M.R., this time on or about 26th St. in the City of Milwaukee.

360. Officer Vagnini searched M.R., putting his fingers inside M.R.'s rectum. Vagnini lacked probable cause to conduct a search of M.R.'s person.

361. No exigent circumstances justified this search in a public, unhygienic setting.

362. Officers Dollhopf and Cline observed Officer Vagnini's actions and did nothing to stop him.

### *Additional Searches of M.R.*

363.  Unfortunately, the foregoing searches were not the only assaults M.R. experienced.

364.  On multiple occasions between May 2009 and March 2011, Officer Vagnini conducted public body cavity searches of M.R.

365.  On each occasion, Officer Vagnini inserted his fingers into M.R.'s anus.

366.  Officer Vagnini acted without probable cause on each occasion.

367.  Unknown Defendant Officers observed one or more of these searches and did nothing to stop Officer Vagnini's actions.

368.  M.R. attempted to inform Officer Kuspa about the inappropriate searches, but Officer Kuspa indicated he did not want to hear the information. On information and belief, Officer Kuspa took no action to stop the inappropriate searches or investigate them.

369.  No exigent circumstances existed to justify the warrantless, violent search of M.R. in a public and unhygienic setting.

370.  As a result of the actions of Sergeant Mucha and Officers Vagnini, Juarez, Schlacter, Gabrielson, Gadzialinski, DeValkenaere, Bettin, Rodriguez, Harms, Burger, Burcher, Knitter, Kowalefski, Hunter, Washington, Kopesky, Knight, Krueger, Cline, Dollhopf, and Unknown Defendant Officers' actions, M.R. suffered

physical pain, emotional distress, anxiety, humiliation, shame, and terror.

### First Search of Charles Smith

371.  In the winter of 2011 Charles Smith was driving near 31st St. and Hampton in the City of Milwaukee when he was stopped by Officers Vagnini and Knight.

372.  Defendant Officers had no cause to believe that Mr. Smith had committed any crime. There was no probable cause to conduct a search of Mr. Smith's person.

373.  Officer Vagnini put his fingers in Mr. Smith's anus.

374.  No drugs were recovered from this search.

375.  No exigent circumstances existed to justify the warrantless, violent search of Mr. Smith in a public and unhygienic setting.

376.  Officer Knight observed Officer Vagnini's actions and did nothing to stop him.

### Second Search of Charles Smith

377.  In winter 2011, Charles Smith was driving in the City of Milwaukee near 18th St. and Hampton when Officer Vagnini and other Unknown Defendant Officers pulled over his vehicle.

378.  Defendant Officers had no cause to believe that Mr. Smith had committed any crime.

379.  Officer Vagnini pulled down Mr. Smith's clothing and underwear and put his fingers in Mr. Smith's anus. There was no probable cause to conduct a search of Mr. Smith's person.

380. No drugs were recovered from this search.

381. No exigent circumstances existed to justify the warrantless, violent search of Mr. Smith in a public and unhygienic setting.

382. Unknown Defendant Officers observed Officer Vagnini's actions and did nothing to stop him.

### Third Search of Charles Smith

383. Later in 2011, Charles Smith was standing near 19th Place and Hampton in the City of Milwaukee when Officer Vagnini and Unknown Defendant Officers approached in several vehicles.

384. Despite having no probable cause to do so, Officer Vagnini put his fingers in Mr. Smith's anus.

385. No drugs were recovered from this search.

386. No exigent circumstances existed to justify the warrantless, violent search of Mr. Smith in a public and unhygienic setting.

387. Unknown Defendant Officers observed Officer Vagnini's actions and did nothing to stop him.

388. As a result of Officer Vagnini's, Officer Knight's and other Unknown Defendant Officers' actions, Mr. Smith suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

***Additional Searches of Charles Smith***

389. Officer Vagnini stopped Charles Smith and performed illegal body cavity searches on Mr. Smith numerous other occasions.

390. As a result of Officer Vagnini's repeated actions, Mr. Smith suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

***November 9, 2008 Search of Henry Zack Ezell***

391. On November 9, 2008 while driving on or about N. 20th St. in the City of Milwaukee, Henry Ezell was stopped by Officers Paszkiewicz and Cherone for a traffic violation.

392. Officers Paszkiewicz and Cherone performed a pat-down search of Mr. Ezell and searched the vehicle. They discovered no drugs.

393. Officers Vagnini, Knight, Dollhopf, Maglio, and Cline arrived and surrounded the car.

394. Despite having no probable cause to do so, Officer Vagnini reached inside Mr. Henry Ezell's clothing and bladed his hand between Mr. Henry Ezell's buttocks. Officer Vagnini then put his fingers inside Mr. Ezell's anus.

395. Officers Paszkiewicz, Knight, Dollhopf, Maglio, Cherone, Cline, Lelinski, Devalkenaere, Gadzalinski, and Krueger observed Officer Vagnini's actions and did nothing to stop him.

396. No exigent circumstances existed to justify the

warrantless, public, and unhygienic search of Mr. Ezell.

397. As a result of the actions of Officers Vagnini, Knight, Dollhopf, Maglio, Cline, Lelinski, Devalkenaere, Gadzalinski, Krueger, and other Unknown Defendant Officers' actions, Mr. Henry Ezell suffered physical pain, emotional distress, anxiety, humiliation, shame, and terror.

### June 2009 Search of Michael Corbitt

398. In June of 2009, Michael Corbitt was standing outside a relative's home in the City of Milwaukee, visiting with his family members and friends.

399. Officer Vagnini suddenly approached the area where Mr. Corbitt was standing with his family and told Corbitt to step aside and place his hands on a nearby vehicle.

400. Officer Vagnini then donned gloves and informed Mr. Corbitt that he intended to perform a rectal search.

401. Michael Corbitt objected strongly.

402. Officer Vagnini then proceeded to shove his gloved fingers into Mr. Corbitt's anus.

403. Officer Vagnini had no warrant to conduct the search and no exigent circumstances existed to justify the public, non-hygienic search.

404. No drugs were recovered in the course of this search.

405. As a result of the unreasonable search, Mr. Corbitt suffered pain, suffering, and emotional distress.

### November 12, 2009 of Michael Corbitt

406. On November 12, 2009, Milwaukee Police Officers Vagnini, Krueger, Lelinski, Martinez, Dollhopf, and Mucha came to the home of Michael Corbitt's uncle looking for Michael Corbitt. Officers Wawrzonek and Vento arrived shortly thereafter.

407. The officers found Mr. Corbitt who was wearing only his underwear.

408. Officer Vagnini told Mr. Corbitt, "Stand up, I need to search you." Mr. Corbitt replied that he was in his underwear. Officer Vagnini replied, "You know what I mean."

409. Officer Vagnini proceeded to force Mr. Corbitt's face forward towards a table. Two other officers held Mr. Corbitt's arms down.

410. Officer Vagnini then pulled Mr. Corbitt's underwear down and shoved his fingers into Mr. Corbitt's anus.

411. The other officers did nothing to prevent Officer Vagnin's intrusive and violent search.

412. Officer Vagnini had no warrant to conduct the violent search of Mr. Corbitt and no exigent circumstances existed to justify it.

413. As a result of the actions of Sergeant Mucha and Officers Vagnini, Krueger, Lelinski, Martinez, Dollhopf, Wawrzonek and Vento, Mr. Corbitt suffered physical pain and suffering, emotional distress, anxiety, humiliation, shame and terror.

### April 7, 2011 Search of Duanne Townsend

414.  On April 7, 2011, Duanne Townsend was apprehended at his home by several Milwaukee police officers.

415. Officer Vagnini began searching Mr. Townsend and put his hands inside Mr. Townsend's underwear.

416. When Mr. Townsend protested, Officer Vagnini continued to claw at Mr. Townsend's genital area.

417. Officers Letteer and Knight were present for the unreasonable search and did nothing to stop it.

418. Officer Vagnini had no warrant to conduct the search and no exigent circumstances warranted the unsafe and non-hygienic search.

419. As a result of Officers Vagnini's, Knight's and Letier's actions, Mr. Townsend suffered pain, suffering, emotional distress, anxiety, humiliation, shame and terror.

### September 9, 2008 Search of Travoris Walton

420.  On September 9, 2008, Travoris Walton was walking towards his car in the City of Milwaukee.

421. Mr. Walton was stopped by Milwaukee Police Officers Szedziewski, Juarez, Viera, Enk, Navarette, and Terrell. Some of the officers were dressed in plain clothes.

422. The officers conducted two pat-down searches of Mr. Walton's person.

423. The officers then pushed Mr. Walton onto the hood of the car.

424. One of the officers then went inside Mr. Walton's clothing and one of them put his or her fingers inside his anus.

425. The other officers present stood by and watched, but did nothing to stop the invasive search of Mr. Walton.

426. There was no warrant for this search and no exigent circumstances justified the unsafe and non-hygienic search.

427. As a result of the actions of Officers Szedziewski, Juarez, Viera, Enk, Navarette, and Terrell, Mr. Walton suffered physical pain, emotional distress, anxiety, humiliation, shame and terror.

### Search of Terry Jackson

428. In December of 2010, Terry Jackson was near the intersection of Kilborn and Wells Street in the City of Milwaukee.

429. Milwaukee Police Officers Gajevic, Wiesmueller, and Strasser approached Mr. Jackson with their guns drawn and handcuffed him.

430. Officer Gajevic then unbuttoned Mr. Jackson's pants, reached inside his underwear and touched Mr. Jackson's genitalia.

431. Officers Wiesmueller, Strasser, Braunreiter, Iverson, Post, Anderson, Wenzel, Litwin, and Smith stood by and watched, but took no actions to stop the invasive search of Mr. Jackson.

432. Officer Gajevic did not have a warrant to conduct this public, unreasonable search of Mr. Jackson and no exigent circumstances existed to justify the unsafe and non-hygienic

search.

433. As a result of the actions of Officers Gajevic, Wiesmueller, Strasser, Braunreiter, Iverson, Post, Anderson, Wenzel, Litwin, and Smith, Mr. Jackson suffered physical pain, emotional distress, anxiety, humiliation, shame and terror.

### March 13, 2013 Search of Alveria Rogers

434. On March 13, 2013, Alveria Rogers was sitting with friends in his vehicle near 27th and Capital in the City of Milwaukee.

435. Three Milwaukee police cars approached Mr. Rogers without activated sirens or lights.

436. Three Milwaukee Police Officers walked towards Mr. Rogers' vehicle and told the occupants to exit the car.

437. Detective Zebdee Wilson then unbuckled Mr. Rogers' pants and put his hand inside Mr. Rogers' underwear, fondling his genitalia and rectal area.

438. Detective Wilson did not have a warrant to conduct this public, unreasonable search of Mr. Rogers and no exigent circumstances existed to justify the unsafe and non-hygienic search.

439. Officers Takacs, Tucker and Johnson witnessed Officer Wilson's invasive search of Mr. Rogers but did nothing to stop it.

440. As a result of the actions of Officers Wilson, Takacs, Tucker, and Johnson, Mr. Rogers suffered emotional distress,

anxiety, humiliation, shame and terror.

### *Search of Michael D. Smith*

441. In August of 2011, Mr. Smith was arrested by Milwaukee Police officers, including Officer Jacob Knight, and taken to the Fifth District police station.

442. Upon arrival at the Fifth District police station, Mr. Smith was taken to a small room off of the garage.

443. Mr. Smith was handcuffed to a bench in the small room.

444. Officer Knight asked Mr. Smith if he "had any dope" and then proceeded to push his hand inside of Mr. Smith's underwear.

445. Officer Knight recovered no contraband.

446. Officer Knight told Mr. Smith "You're lucky you don't have no pipe on you because I would've stuck that up your ass, too."

447. Officer Knight did not have a warrant to conduct this unreasonable search of Mr. Smith and no exigent circumstances existed to justify the unsafe and non-hygienic search.

448. As a result of Officer Knight's actions, Mr. Smith suffered pain, emotional distress, anxiety, humiliation, shame and terror.

### *2009 Search of Jimmie Horne*

449. In early 2009, Mr. Horne was driving near the intersection of 23rd and Hopkins in the City of Milwaukee when an unmarked police vehicle pulled up near him.

450. Officer Vagnini used a bullhorn to announce that Mr. Horne should step out of the car.

451. Mr. Horne exited the vehicle and Officer Vagnini and Sergeant Mucha approached Mr. Horne.

452. Officer Vagnini placed his bare hand inside Mr. Horne's clothing, "blading" between his buttocks and inserting his finger inside Mr. Horne's rectum.

453. No drugs or contraband were recovered in the search.

454. Officer Vagnini had no warrant to conduct the search and no exigent searches existed to justify the public, non-hygienic search.

### *Summer 2010 Search of Jimmie Horne*

455. In July 2010, Mr. Horne was driving in the City of Milwaukee near the intersection of 29th and Ruby when he was pulled over by Officer Vagnini and one other Unknown Defendant Officer.

456. Officer Vagnini immediately asked "Where the drugs?" and Mr. Horne stated that he did not have any.

457. Officer Vagnini moved Mr. Horne to the back of the vehicle where Officer Vagnini placed his bare hand inside Mr. Horne's pants "blading" between his buttocks, then inserting his finger inside Mr. Horne's rectum.

458. No drugs or contraband were recovered in the search.

459. The Unknown Defendant Officer observed the violent, intrusive search and did nothing to stop it.

460. Officer Vagnini had no warrant to conduct the search and no exigent circumstances existed to justify the public, non-

hygienic search.

### *Late 2010 Search of Jimmie Horne*

461. In late 2010, Mr. Horne was driving in the City of Milwaukee near the intersection of 27th and Capital when he was pulled over by the "train."

462. Officer Vagnini approached the driver's side of the vehicle and told Mr. Horne to exit the vehicle.

463. Mr. Horne was taken to the passenger side of the vehicle where an officer conducted a pat down search of Mr. Horne's person.

464. Officer Vagnini then placed his bare hand inside Mr. Horne's pants, "blading" between his buttocks, then inserting his finger inside Mr. Horne's rectum.

465. Unknown Defendant Officers were present for the violent and intrusive search and did nothing to stop it.

466. No drugs or contraband were recovered in the course of this search.

467. Officer Vagnini had no warrant to conduct the search and no exigent circumstances existed to justify the public, non-hygienic search.

### *Autumn 2011 Search of Jimmie Horne*

468. In autumn of 2011, Mr. Horne was driving near the intersection of 21st and Keys in the City of Milwaukee when he was stopped by Officer Vagnini.

469. Officer Vagnini approached the vehicle and ordered Mr.

Horne to step out.

470. Officer Vagnini then placed his bare hand inside Mr. Horne's pants, "blading" between his buttocks and placing his finger inside Mr. Horne's rectum.

471. No drugs or contraband were recovered in the course of the search.

472. Officer Vagnini had no warrant to conduct the search and no exigent circumstances existed to justify the public, non-hygienic search.

### Additional Searches of Mr. Horne

473. On numerous other occasions, Mr. Horne was stopped by Officer Vagnini and subjected to public, warrantless body cavity searches that were not justified by any exigent circumstances.

474. No drugs or contraband were recovered during any of these searches.

475. As a result of the actions of Defendants Vagnini, Mucha, and other Unknown Defendant Officers, Mr. Horne experienced emotional distress, anxiety, humiliation, shame, and terror.

### Winter 2011 Search of Davonte Harris

476. During the winter of 2011, Mr. Harris was a passenger in a vehicle traveling near the intersection of 27th and Atkinson in the City of Milwaukee when he was stopped by Officer Vagnini, Officer Knight, and other Unknown Defendant Officers in "the train."

477. Officer Vagnini approached Mr. Harris, pulled his underwear back and down, placed his bare hand between Mr. Harris' buttocks and inserted his fingers inside Mr. Harris' anus.

478. No drugs or contraband were recovered in the course of the search.

479. Officer Vagnini had no warrant to conduct the search and no exigent circumstances existed to justify the public, non-hygienic search.

480. Officer Knight and other Unknown Defendant Officers observed the violent, intrusive search and did nothing to stop it.

### *Second Winter 2011 Search of Davonte Harris*

481. Approximately six weeks after the first search of Mr. Harris in the winter of 2011, Mr. Harris was once again stopped by Officer Vagnini when Mr. Harris was traveling near the intersection of Third and Center in the City of Milwaukee.

482. Officer Vagnini approached the vehicle to search Mr. Harris and Mr. Harris objected strongly.

483. Officer Vagnini placed his bare hand inside Mr. Harris' clothing, "blading" between Mr. Harris' buttocks and inserting his fingers inside Mr. Harris' rectum.

484. No drugs or contraband were recovered in the course of the search.

485. Officer Vagnini had no warrant to conduct the search and no exigent circumstances existed to justify the public, non-

hygienic search.

486. Unknown Defendant Officers observed the violent, intrusive search of Mr. Harris, but they did nothing to stop it.

487. In 2011, Mr. Harris reported the improper searches to his parole officer. Instead of responding to Mr. Harris' concerns, parole officers repeatedly tried to "refocus" him on "cooperating with law enforcement," or words to that effect. When Harris repeatedly complained about the searches, Mr. Harris' parole officer told Mr. Harris that she was "sick of having the conversation" about improper searches.

### Spring 2012 Search of Davonte Harris

488. During the spring of 2012, Mr. Harris was standing outside with his friends near a relative's home in the City of Milwaukee, when Officer Vagnini and the "train" approached the group.

489. Officer Vagnini placed his bare hand inside Mr. Harris' clothing, "blading" between his buttocks and inserting his fingers inside Mr. Harris' anus.

490. No drugs or contraband were recovered during the search.

491. Officer Vagnini had no warrant to conduct the search and no exigent circumstances existed to justify the public, non-hygienic search.

492. Unknown Defendant Officers observed the violent, intrusive search, but they did nothing to stop it.

### *Second Spring 2012 Search of Davonte Harris*

493. During the spring of 2012, Mr. Harris was near Cornell St. in the City of Milwaukee traveling in a vehicle with two friends when Officer Vagnini stopped the vehicle.

494. Officer Vagnini placed his bare hand inside Mr. Harris' clothing, "blading" between his buttocks and inserting his fingers inside Mr. Harris' anus.

495. No drugs or contraband were recovered during the search.

496. Officer Vagnini had no warrant to conduct the search and no exigent circumstances existed to justify the public, non-hygienic search.

497. Unknown Defendant Officers observed the violent, intrusive search, but they did nothing to stop it.

498. As a result of the actions of Defendants Vagnini, Knight and other Unknown Defendant Officers, Mr. Harris experienced emotional distress, anxiety, humiliation, shame, and terror.

### *April 20, 2009 Search of Joseph Bynum*

499. On April 20, 2009, Plaintiff Joseph Bynum was at the Citgo gas station located at 20th and Hopkins in the City of Milwaukee to purchase gasoline.

500. Mr. Bynum was waiting in his car while the gas pumped when he was startled by an Unknown Milwaukee Police Officer outside his driver's side window with a gun pointed at his head.

501. The Defendant Officer pulled Mr. Bynum out of his car.

502. Approximately ten additional Unknown Defendant Officers, including Officers Drajkowski, M. Knight, Lopez, Bohlen, Wilson, Terrell, Miscichoski, Swiercz, and Golembieski surrounded Mr. Bynum's car. The officers proceeded to demand Mr. Bynum to tell them what was going on.

503. Mr. Bynum responded that he had no idea what they were talking about.

504. The Defendant Officers proceeded to perform a pat down search of Mr. Bynum.

505. When the Defendant Officers failed to find any contraband on his person, the Defendant Officers proceeded to assault Mr. Bynum by striking him in his face and body. Mr. Bynum was forced to the ground as the Defendant Officers continued to punch and kick him.

506. The other Defendant Officers, who were present but not assaulting Mr. Bynum, stood by and watched without taking any action to stop the assault of Mr. Bynum.

507. The Defendant Officers then handcuffed and arrested Mr. Bynum. The Defendant Officers searched Mr. Bynum's person again, but found no contraband.

508. Mr. Bynum was transported to the Fifth District in a police conveyance wagon. Several of the Defendant Officers rode in the back of the wagon with him.

509. Once at the Fifth District, the Defendant Officers

placed Mr. Bynum in a room located in the garage of the Fifth District. The Defendant Officers handcuffed Mr. Bynum to the wall in the room.

510. Then, Officers Bohlen and M. Knight entered the room and Officer Bohlen pulled down Mr. Bynum's pants and underwear and proceeded to insert his gloved fingers into Mr. Bynum's rectum.

511. Officer M. Knight was present and witnessed the unauthorized cavity search of Mr. Bynum, but failed to take any actions to stop it.

### *2013 Search of Joseph Bynum*

512. In 2013, Joseph Bynum was driving a vehicle in the City of Milwaukee when he was pulled over by a Milwaukee police vehicle.

513. Two Unknown Defendant Officers approached Mr. Bynum's vehicle. One of the Unknown Defendant Officers stated that he recognized Mr. Bynum from the 2009 search described above.

514. The Unknown Defendant Officer then ordered Mr. Bynum out of his car.

515. The Unknown Defendant Officer inserted his hand inside Mr. Bynum's clothing and "bladed" it between Mr. Bynum's buttocks.

516. The other Unknown Defendant Officer witnessed the intrusive search of Mr. Bynum, but did nothing to stop it.

517. No contraband was recovered in the search.

518. The Unknown Defendant Officer had no warrant to conduct the search and no exigent circumstances existed to justify it.

519. As a result of Defendant Officers' actions, Mr. Bynum suffered physical pain, emotional distress, anxiety, humiliation, shame and terror.

### John Doe Proceeding

520. On information and belief, on or about March 2012, the Milwaukee County District Attorney's Office initiated a "John Doe" proceeding to investigate the allegations of illegal strip and cavity searches within the Milwaukee Police Department.

521. On information and belief, the John Doe proceeding included testimony from 30 victims of illegal strip and cavity searches performed by Milwaukee Police Officers.

522. On October 8, 2012, the State of Wisconsin charged Officers Vagnini, Knight, Dollhopf and one other officer for their criminal conduct with respect to illegal body cavity and strip searches of Milwaukee citizens. In the criminal complaint, the State charged Defendant Vagnini with two counts of illegal cavity searches, eight counts of illegal strip searches, four counts of second degree sexual assault, one count of third degree sexual assault, two counts of fourth degree sexual assault, and eight counts for misconduct in public office/act in excess of lawful authority.

523. The State charged Defendant Dollhopf with one count of

illegal cavity search, one count of illegal strip search, and two counts of misconduct in public office/act in excess of lawful authority.

524. The State charged Defendant Knight with one count of illegal cavity search and one count for misconduct in public office/act in excess of lawful authority.

525. On November 15, 2012, the State filed a Criminal Information adding two additional counts against Officer Vagnini for false imprisonment and misconduct in office.

526. On April 22, 2013, Officer Vagnini entered a no contest plea to four misdemeanor charges of illegal strip/cavity searches (Counts 1, 4, 6, and 9) and four felony charges of misconduct in office/excess authority (Counts 3, 5, 8 and 11).

527. In his plea, Officer Vagnini pleaded no contest to, inter alia, his February 27, 2010, illegal body cavity search of L.L.R.

528. On June 21, 2013, the court sentenced Officer Vagnini to 26 months imprisonment and 34 months of extended supervision.

529. On July 12, 2013, Officer Knight pleaded no contest to one count of conducting an illegal body cavity search.

530. On October 21, 2013, Officer Dollhopf pleaded no contest to one count of disorderly conduct as a party to a crime.

## City of Milwaukee

531. As early as 2008, Internal Affairs and other municipal authorities received complaints about Defendant Officers' inappropriate strip and body cavity searches of citizens, particularly from the Fifth District, although not exclusively limited to that district. These complaints demonstrated a clear and obvious pattern of illegal and abusive cavity searches.

532. Despite receiving similar complaints from citizens over several years, Internal Affairs repeatedly found no merit to these complaints, ignored the existence of a clear pattern of complaints, and did not recommend discipline for any of the subject officers.

533. Indeed, in a Milwaukee Journal Sentinel article dated April 21, 2013, Chief Flynn admitted that the Department had been receiving complaints for a "couple of years" before it opened its own investigation of the allegations.

534. In addition, supervisors within the Department, specifically Defendants Captain Edith Hudson, Sergeant Williams and Sergeant Jason Mucha, had knowledge of the repeated complaints of strip and body cavity searches.

535. In fact, several body cavity searches were conducted at the Fifth District where supervisors were knowledgeable of the illegal searches.

536. Despite their knowledge of these illegal searches, the

policymakers, including but not limited to Defendants Flynn, Hudson, Williams, and Mucha, took no action to train, supervise or discipline the officers who committed these knowingly illegal searches.

537. Instead, certain of the Defendant Officers were rewarded with commendations for their aggressive police tactics and jobs well-done by their Supervisors, including commendations from Chief Edward Flynn.

## Count I - 42 U.S.C. § 1983
## Fourth Amendment/Illegal Search and Seizure

538. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

539. As described in the preceding paragraphs, various of the Defendant Officers violated each of the Plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures.

540. As described in the preceding paragraphs, the Defendant Officers violated Plaintiffs' Fourth Amendment rights in that they seized Plaintiffs without justification and without probable cause and conducted illegal searches of their bodies by touching their genitalia, including strip searches and cavity searches of their persons.    With respect to Count I:

> a.  Plaintiff James Ashford is suing Defendants Flynn, Hegerty, Hudson, Mucha, Williams, Vagnini, Serio, Knight, Bleichwehl,

Vandervast, Vento, Kopesky, Thoms, and other Unknown Defendant Officers of the Milwaukee Police Department;

b.   Plaintiff S.C. is suing Defendants Flynn, Hegerty, Hudson, Mucha, Vagnini, Knitter, Kowalefski, Burch, Burger and Unknown Defendant Officers of the Milwaukee Police Department;

c.   Plaintiff Keon Canada is suing Defendants Flynn, Hegerty, Hudson, Mucha, Serio, Vagnini, Vandervast and other Unknown Defendant Officers of the Milwaukee Police Department;

d.   Plaintiff M.C. is suing Defendants Flynn, Hegerty, Hudson, Mucha, Vagnini, Knight, Taubenheim, Saltwadel, Martinez, Kuspa, Watts, Cline, Thoms, Gawin, Gasser, Szcyubialka, and Serio, and other Unknown Defendant Officers of the Milwaukee Police Department;

e.   Plaintiff Walter Coleman is suing Defendants Flynn, Hegerty, Hudson, Mucha, Vagnini, Dollhopf, Bleichwehl, Thoms, Watts, Kuspa, Kozelek, Szcubialka, Serio, Valuch, Applegate, Washington, and other Unknown Defendant Officers of the Milwaukee Police Department;

f.   Plaintiff Jerrold Ezell is suing Defendants
     Flynn, Hegerty, Hudson, Mucha, Vagnini,
     Knight, Bartol, Seitz, E. Rodriguez, Tuschl,
     Scheuring, Phillips, Cline, Kopesky, Fedel,
     Cline, Thoms, Novack, and Unknown Defendant
     Officers of the Milwaukee Police Department;

g.   Plaintiff R.P. is suing Defendants Flynn,
     Hegerty, Hudson, Mucha, Vagnini, Knight,
     Knitter, Wawrzonek, Dollhopf, Kozelek,
     Kopesky, Thoms and Unknown Defendant Officers
     of the Milwaukee Police Department;

h.   Plaintiff Anthony Pettis is suing Defendants
     Flynn, Hegerty, Hudson, Mucha, Vagnini,
     Knight, Bartol, Seitz, E. Rodriguez, Tuschl,
     Scheuring, Phillips, Cline, Kopesky, Fedel,
     Bleichwehl, Thoms, Cline, Dollhopf, Novack,
     and, and Unknown Defendant Officers of the
     Milwaukee Police Department;

i.   Plaintiff L.L.R. is suing Defendants Flynn,
     Hegerty, Hudson, Dubis, Mucha, Vagnini,
     Gasser, Marx and Unknown Defendant Officers of
     the Milwaukee Police Department;

j.   Plaintiff Brandon Graham is suing Defendants
     Vagnini, Bleichwehl, Knight, Kopesky, Thoms,
     and Unknown Defendant Officers of the

Milwaukee Police Department;

k.  Plaintiff Jeffrey Jefferson is suing Defendant
    Vagnini, Defendant Cline, Kuspa, Thoms, Burch,
    Vento, Vandervast and Unknown Defendant
    Officers of the Milwaukee Police Department;

l.  Plaintiff M.R. is suing Defendants Vagnini,
    Mucha, Juarez, Schlacter, Gabrielson,
    Gazialinski, Devalkenaere, Bettin, Rodriguez,
    Harms, Burger, Burch, Knitter, Kowalefski,
    Hunter, Washinton, Knight, Kuspa, Krueger,
    Cline, Dollhopf, Kopesky, DeCleene and Unknown
    Defendant Officers of the Milwaukee Police
    Department;

m.  Plaintiff Charles Smith is suing Defendants
    Vagnini, Knight, and Unknown Defendant
    Officers of the Milwaukee Police Department;

n.  Plaintiff Henry Zack Ezell is suing Defendants
    Vagnini, Knight, Dollhopf, Cline, Paszkiewicz,
    Cherone, Maglio, Lelinski, Devalkenaere,
    Gadzalinski, Krueger, and Unknown Defendant
    Officers of the Milwaukee Police Department.

o.  Plaintiff Michael Corbitt is suing Defendants
    Vagnini, Krueger, Mucha, Lelinski, Martinez,
    Dollhopf, Wawrzonek, and Vento.

p.   Plaintiff Duanne Townsend is suing Defendants
     Vagnini, Knight, and Letteer.

q.   Plaintiff Travoris Walton is suing Defendants
     Szedziewski, Juarez, Viera, Enk, Navarette,
     and Terrell.

r.   Plaintiff Terry Jackson is suing Defendants
     Gajevic, Wiesmueller, Strasser, Braunreiter,
     Iverson, Post, Anderson, Wenzel, Litwin, and
     Smith.

s.   Plaintiff Alveria Rogers is suing Defendants
     Takacs, Tucker, Johnson, and Wilson.

t.   Plaintiff Michael D. Smith is suing Defendant
     Knight and Unknown Defendant Officers.

u.   Plaintiff Davonte Harris is suing Defendants
     Vagnini, Knight, and Unknown Defendant
     Officers.

v.   Plaintiff Jimmie Horne is suing Defendants
     Vagnini, Mucha, and Unknown Defendant
     Officers.

w.   Plaintiff Joseph Bynum is suing Officers
     Bohlen and Knight.

541. The misconduct described in this Count was objectively
unreasonable and undertaken with malice, willfulness, and

reckless indifference to the rights of others.

542. The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Milwaukee in that:

a.  As a matter of both police and practice, the City of Milwaukee encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise, control and discipline its officers who conduct illegal strip and cavity searches, such that its failure to do so manifests deliberate indifference;

b.  As a matter of both policy and practice, the City of Milwaukee facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Milwaukee police officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those experienced by Plaintiffs; specifically, Milwaukee police officers accused of conducting illegal strip or body cavity searches can be confident that their supervisor and Internal Affairs will

not investigate those accusations in earnest and will refuse to recommend discipline even where the officer has engaged in illegal searches;

c.  Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Milwaukee Police Department abuse citizens in a manner similar to that alleged by Plaintiffs in this Count on a frequent basis, yet the Milwaukee Department makes findings of wrongdoing in a disproportionately small number of cases;

d.  Policy makers failed to perform pattern analysis and ignored the clear pattern of complaints of illegal and abusive cavity searches;

e.  City of Milwaukee policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Milwaukee Police Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case; and

f.  The City of Milwaukee has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual

knowledge of the same, thereby causing the types

of injuries alleged here.

543. The misconduct described in this Count was undertaken by Defendant Officers within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

544. As a result of the City of Milwaukee's policy and practice and the unjustified and unreasonable conduct of the Defendant Officers, Plaintiffs have suffered injuries, including emotional distress.

## Count II - 42 U.S.C. § 1983
## Excessive Force

545. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

546. As described in the preceding paragraphs, the conduct of the Defendant Officers toward Plaintiffs constituted excessive force in violation of the United States Constitution. With respect to Count II:

a.   Plaintiff James Ashford is suing Defendants Flynn, Hegerty, Hudson, Mucha, Williams, Vagnini, Serio, Knight, Bleichwehl, Vandervast, and Vento and other Unknown Defendant Officers of the Milwaukee Police Department;

b.   Plaintiff S.C. is suing Defendants Flynn, Hegerty, Hudson, Mucha, Vagnini, Knitter, Kowalefski,

Burch, Burger, and Unknown Defendant Officers of the Milwaukee Police Department;

c. Plaintiff Keon Canada is suing Defendants Flynn, Hegerty, Hudson, Mucha, Serio, Vagnini, Vandervast and other Unknown Officers of the Milwaukee Police Department;

d. Plaintiff M.C. is suing Defendants Flynn, Hegerty, Hudson, Mucha, Vagnini, Knight, Taubenheim, Saltwadel, Martinez, Kuspa, Watts, Gawin, Gasser, Szcyubialka, and Serio, and other Unknown Officers of the Milwaukee Police Department;

e. Plaintiff Walter Coleman is suing Defendants Flynn, Hegerty, Hudson, Mucha, Vagnini, Dollhopf, Bleichawehl, Thoms, Watts, Kuspa, Kozelek, Szcubialka, Serio, Valuch, Applegate, Washington, and other Unknown Defendant Officers of the Milwaukee Police Department;

f. Plaintiff Jerrold Ezell is suing Defendants Flynn, Hegerty, Hudson, Mucha, Vagnini, Knight, Bartol, Seitz, E. Rodriguez, Tuschl, Scheuring, Phillips, Cline, Kopesky, Fedel, Cline, Thoms, Novack, and Unknown Defendant Officers of the Milwaukee Police Department;

g. Plaintiff R.P. is suing Defendants Flynn, Hegerty, Hudson, Mucha, Vagnini, Knight, Knitter,

Wawrzonek, Dolhopf, Kozelek, Kopesky, Thoms and Unknown Defendant Officers of the Milwaukee Police Department;

h.  Plaintiff Anthony Pettis is suing Defendants Flynn, Hegerty, Hudson, Mucha, Vagnini, Knight, Bartol, Seitz, E. Rodriguez, Tuschl, Scheuring, Phillips, Cline, Kopesky, Fedel, Bleichwehl, Thoms, Cline, Dollhopf, Novack and Unknown Defendant Officers of the Milwaukee Police Department;

i.  Plaintiff L.L.R. is suing Defendants Flynn, Hegerty, Hudson, Dubis, Mucha, Vagnini, Gasser, Marx, and Unknown Defendant Officers of the Milwaukee Police Department;

j.  Plaintiff Brandon Graham is suing Defendants Vagnini, Bleichwehl, Knight, Kopesky, Thoms, and Unknown Defendant Officers of the Milwaukee Police Department;

k.  Plaintiff Jeffrey Jefferson is suing Defendant Vagnini, Defendant Cline, Kuspa, Thoms, Burch, Vento, Vanderest and Unknown Defendant Officers of the Milwaukee Police Department;

l.  Plaintiff M.R. is suing Defendants Mucha, Vagnini, Juarez, Schlacter, Gabrielson, Gadzialinski,

Devalkenaere, Bettin, Rodriguez, Harms, Burger,
Burch, Knitter, Kowalefski, Hunter, Washington,
Knight, Kuspa, Krueger, Cline, Dollhopf, Kopesky,
DeCleene and Unknown Defendant Officers of the
Milwaukee Police Department;

m. Plaintiff Charles Smith is suing Defendants
Vagnini, Knight, and Unknown Defendant Officers of
the Milwaukee Police Department;

n. Plaintiff Henry Zack Ezell is suing Defendants
Vagnini, Knight, Dollhopf, Cline, Paszkiewicz,
Cherone, Maglio, Lelinski, Devalkenaere,
Gadzalinski, Krueger, and Unknown Defendant
Officers of the Milwaukee Police Department;

o. Plaintiff Michael Corbitt is suing Defendants
Vagnini, Krueger, Mucha, Lelinski, Martinez,
Dollhopf, Wawrzonek, and Vento.

p. Plaintiff Duanne Townsend is suing Defendants
Vagnini, Knight, and Letteer.

q. Plaintiff Terry Jackson is suing Defendants
Gajevic, Wiesmueller, Strasser, Braunreiter,
Iverson, Post, Anderson, Wenzel Litwin, and Smith.

r. Plaintiff Rogers is suing Defendants Takacs,
Tucker, Johnson, and Wilson.

s. Plaintiff Michael D. Smith is suing Defendant

Knight and Unknown Defendant Officers.

    t.    Plaintiff Davonte Harris is suing Defendants
Vagnini, Knight, and Unknown Defendant Officers.

    u.    Plaintiff Jimmie Horne is suing Defendants
Vagnini, Mucha, and Unknown Defendant Officers.

    v.    Plaintiff Joseph Bynum is suing Unknown Defendant
Officers.

547. The misconduct described in this Count was objectively
unreasonable and undertaken with malice, willfulness, and
reckless indifference to the rights of others.

548. The misconduct described in this Count was undertaken
pursuant to the policy and practice of the City of Milwaukee in
that:

    a.    As a matter of both police and practice, the City
of Milwaukee encourages, and is thereby the moving
force behind, the very type of misconduct at issue
here by failing to adequately train, supervise,
control and discipline its officers such that its
failure to do so manifests deliberate
indifference;

    b.    As a matter of both policy and practice, the City
of Milwaukee facilitates the very type of
misconduct at issue here by failing to adequately
punish and discipline prior instances of similar

misconduct, thereby leading Milwaukee police officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those experienced by Plaintiffs; specifically, Milwaukee police officers accused of excessive force can be confident that Internal Affairs will not investigate those accusations in earnest and will refuse to recommend discipline even where the officer has engaged in excessive force;

c.  Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Milwaukee Police Department abuse citizens in a manner similar to that alleged by Plaintiffs in this Count on a frequent basis, yet the Milwaukee Police Department makes findings of wrongdoing in a disproportionately small number of cases;

d.  Policy makers failed to perform pattern analysis and ignored the clear pattern of complaints of illegal and abusive cavity searches;

e.  City of Milwaukee policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Milwaukee Police Department, by

which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case; and

f.   The City of Milwaukee has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

549. The misconduct described in this Count was undertaken by Defendant Officers within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

550. As a result of the City of Milwaukee's policy and practice and the unjustified and unreasonable conduct of the Defendant Officers, Plaintiffs have suffered injuries, including emotional distress.

## Count III - 42 U.S.C. § 1983
## False Arrest/Illegal Detention

551. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

552. As described above, Defendant Officers falsely arrested and unlawfully detained Plaintiffs, without justification and without probable cause.  With respect to Count III:

a.   Plaintiff James Ashford is suing Defendants Flynn, Hegerty, Hudson, Mucha, Williams,

Vagnini, Serio, Knight, Bleichwehl,
Vandervast, Vento and other Unknown Defendant
Officers of the Milwaukee Police Department;

b.   Plaintiff S.C. is suing Defendants Flynn,
Hegerty, Hudson, Mucha, Vagnini, Knitter,
Kowalefski, Burch, Burger and Unknown Officers of
the Milwaukee Police Department;

c.   Plaintiff Keon Canada is suing Defendants Flynn,
Hegerty,  Hudson, Mucha, Serio, Vagnini,
Vandervast and other Unknown Officers of the
Milwaukee Police Department;

d.   Plaintiff M.C. is suing Defendants Flynn,
Hegerty, Hudson, Mucha, Vagnini, Knight,
Taubenheim, Saltwadel, Martinez, Kuspa, Watts,
Gawin, Gasser, Szcyubialka, Serio, and other
Unknown Officers of the Milwaukee Police
Department;

e.   Plaintiff Walter Coleman is suing Defendants
Flynn, Hegerty, Hudson, Mucha, Vagnini,
Dollhopf, Bleichwehl, Thoms, Watts, Kuspa,
Kozelek, Szcubialka, Serio, Valuch, Applegate,
Washington and other Unknown Officers of the
Milwaukee Police Department;

f.   Plaintiff Jerrold Ezell is suing Defendants Flynn,

Hudson, Mucha, Vagnini, Knight, Bartol, Seitz, E. Rodriguez, Tuschl, Scheuring, Phillips, Cline, Kopesky, Fedel, Cline, Dollhopf, Novack, and Unknown Officers of the Milwaukee Police Department;

g. Plaintiff Anthony Pettis is suing Defendants Flynn, Hegerty, Hudson, Mucha, Vagnini, Knight, Bartol, Seitz, E. Rodriguez, Tuschl, Scheuring, Phillips, Cline, Kopesky, Fedel, Bleichwehl, Thoms, Cline, Dollhopf, Novack, and Unknown Officers of the Milwaukee Police Department;

h. Plaintiff R.P. is suing Defendants Flynn, Hudson, Mucha, Vagnini, Knight, Knitter, Wawrzonek, Dollhopf, Kozelek, Kopesky, Thoms, and Unknown Officers of the Milwaukee Police Department;

i. Plaintiff L.L.R. is suing Defendants Flynn, Hegerty, Hudson, Mucha, Vagnini, Gasser, and Unknown Officers of the Milwaukee Police Department;

j. Plaintiff Brandon Graham is suing Defendants Vagnini, Bleichwehl, Knight, Kopesky, Thoms, and Unknown Officers of the Milwaukee Police Department;

k. Plaintiff Jeffrey Jefferson is suing Defendants

Vagnini, Cline, Kuspa, Thoms, Burch, Vento, Vanderest and Unknown Officers of the Milwaukee Police Department;

l.    Plaintiff M.R. is suing Defendants Mucha, Vagnini, Juarez, Schlacter, Gabrielson, Gadzialinski, Devalkenaere, Bettin, Rodriguez, Harms, Burger, Burch, Knitter, Kowalefski, Hunter, Washington, Knight, Kuspa, Krueger, Cline, Dollhopf, Kopesky, DeCleene, and Unknown Officers of the Milwaukee Police Department;

m.    Plaintiff Charles Smith is suing Defendants Vagnini, Knight, and Unknown Officers of the Milwaukee Police Department;

n.    Plaintiff Henry Zack Ezell is suing Defendants Vagnini, Knight, Dollhopf, Cline, Paszkiewicz, Cherone, Maglio, Lelinski, Devalkenaere, Gadzalinski, Krueger, and Unknown Officers of the Milwaukee Police Department;

o.    Plaintiff Michael Corbitt is suing Defendants Vagnini, Krueger, Mucha, Lelinski, Martinez, Dollhopf, Wawrzonek, and Vento.

p.    Plaintiff Duanne Townsend is suing Defendants Vagnini, Knight, and Letteer.

q.  Plaintiff Travoris Walton is suing Defendants
    Szedziewski, Juarez, Viera, Enk, Navarette, and
    Terrell.

r.  Plaintiff Alveria Rogers is suing Defendants
    Takacs, Tucker, Johnson, and Wilson.

s.  Plaintiff Michael D. Smith is suing Defendant
    Knight and Unknown Defendant Officers.

t.  Plaintiff Davonte Harris is suing Defendants
    Vagnini, Knight, and Unknown Defendant Officers.

u.  Plaintiff Jimmie Horne is suing Defendants
    Vagnini, Mucha, and Unknown Defendant Officers.

v.  Plaintiff Joseph Bynum is suing Defendants
    Drajkowski, M. Knight, Lopez, Bohlen, Wilson,
    Terrell, Misciochoski, Swierc, and Golembieski.

553. The misconduct described in this Count was objectively
unreasonable and undertaken with malice, willfulness, and
reckless indifference to the rights of others.

554. The misconduct described in this Count was undertaken
pursuant to the policy and practice of the City of Milwaukee in
that:

a.  As a matter of both police and practice, the City
    of Milwaukee encourages, and is thereby the moving
    force behind, the very type of misconduct at issue
    here by failing to adequately train, supervise,

control and discipline its officers who conduct
false arrests/illegal detentions, such that its
failure to do so manifests deliberate
indifference;

b.   As a matter of both policy and practice, the City
of Milwaukee facilitates the very type of
misconduct at issue here by failing to adequately
punish and discipline prior instances of similar
misconduct, thereby leading Milwaukee police
officers to believe their actions will never be
scrutinized and, in that way, directly encouraging
future abuses such as those experienced by
Plaintiffs; specifically, Milwaukee police
officers accused false arrests/illegal detentions
can be confident that Internal Affairs will not
investigate those accusations in earnest and will
refuse to recommend discipline even where the
officer has engaged in false arrests/illegal
detentions;

c.   Generally, as a matter of widespread practice so
prevalent as to comprise municipal policy,
officers of the Milwaukee Police Department abuse
citizens in a manner similar to that alleged by
Plaintiffs in this Count on a frequent basis, yet

the Milwaukee Department makes findings of
wrongdoing in a disproportionately small number of
cases;

d.   Policy-makers failed to perform pattern analysis
and ignored the clear pattern of complaints of
illegal and abusive cavity searches;

e.   City of Milwaukee policy-makers are aware of, and
condone and facilitate by their inaction, a "code
of silence" in the Milwaukee Police Department, by
which officers fail to report misconduct committed
by other officers, such as the misconduct at issue
in this case; and

f.   The City of Milwaukee has failed to act to remedy
the patterns of abuse described in the preceding
sub-paragraphs, despite actual knowledge of the
same, thereby causing the types of injuries
alleged here.

555. The misconduct described in this Count was undertaken
by Defendant Officers within the scope of their employment and
under color of law such that their employer, City of Milwaukee,
is liable for their actions.

556. As a result of the City of Milwaukee's policy and
practice and the unjustified and unreasonable conduct of the
Defendant Officers, Plaintiffs have suffered injuries, including

emotional distress.

## Count IV - 42 U.S.C. § 1983
## Failure to Intervene

557. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

558. As described more fully above, one or more of the Defendant Officers had a reasonable opportunity to prevent the violation of Plaintiffs' constitutional rights as set forth above in Counts I through III had they been so inclined, but failed to do so. Specifically Defendant Officers had a reasonable opportunity to intervene and prevent the strip and cavity searches of Plaintiffs, the excessive force used on Plaintiffs and the false arrest/detention of Plaintiffs. With respect to Count IV:

      a.    Plaintiff James Ashford is suing Defendants Vagnini and Dollhopf and other Unknown Officers of the Milwaukee Police Department;

      b.    Plaintiff S.C. is suing Defendants Mucha, Vagnini, Knitter, Kowalefski, Burch, Burger and Unknown Officers of the Milwaukee Police Department;

      c.    Plaintiff Keon Canada is suing Defendants Serio, Vagnini, Vandervast and other Unknown Defendant Officers of the Milwaukee Police Department;

      d.    Plaintiff M.C. is suing Defendants Vagnini, Knight, Taubenheim, Saltwadel, Martinez, Kuspa,

Watts, Cline, Thoms, Gawin, Gasser, Szcyubialka,
Serio, and other Unknown Defendant Officers of the
Milwaukee Police Department;

e.   Plaintiff Walter Coleman is suing Defendants
Flynn, Hudson, Mucha, Vagnini, Dollhopf,
Bleichwehl, Thoms, Watts, Kuspa, Kozelek, Valuch,
Applegate, Washington, and other Unknown Defendant
Officers of the Milwaukee Police Department;

f.   Plaintiff Jerrold Ezell is suing Defendants Mucha,
Vagnini, Knight, Bartol, Seitz, E. Rodriguez,
Tuschl, Scheuring, Phillips, Cline, Kopesky,
Fedel, Cline, Dollhopf, Novack, and Unknown
Officers of the Milwaukee Police Department;

g.   Plaintiff R.P. is suing Defendants Flynn, Hudson,
Mucha, Vagnini, Knight, Knitter, Wawrzonek,
Dollhopf, Kozelek, Kopesky, Thoms and Unknown
Officers of the Milwaukee Police Department;

h.   Plaintiff Anthony Pettis is suing Defendants
Mucha, Vagnini, Knight, Bartol, Seitz, E.
Rodriguez, Tuschl, Scheuring, Phillips, Cline,
Kopesky, Fedel, Bleichwehl, Thoms, Cline,
Dollhopf, Novack, and Unknown Officers of the
Milwaukee Police Department;

i.   Plaintiff L.L.R. is suing Defendants Mucha,

Vagnini, Gasser, and Unknown Officers of the
Milwaukee Police Department;

j.   Plaintiff Brandon Graham is suing Defendants
Vagnini, Bleichwehl, Knight, Kopesky, Thoms, and
Unknown Officers of the Milwaukee Police
Department;

k.   Plaintiff Jeffrey Jefferson is suing Defendant
Vagnini, Defendant Cline, Kuspa, Thoms, Burch,
Vento, Vandervast and Unknown Officers of the
Milwaukee Police Department;

l.   Plaintiff M.R. is suing Defendants Mucha, Vagnini,
Juarez, Schlacter, Gabrielson, Gadzialinski,
Devalkenaere, Bettin Rodriguez, Harms, Burger,
Burch, Knitter, Kowalefski, Hunter, Washington,
Knight, Kuspa, Krueger, Cline, Dollhopf, Kopesky,
DeCleene and Unknown Officers of the Milwaukee
Police Department;

m.   Plaintiff Charles Smith is suing Defendants
Vagnini, Knight, and Unknown Officers of the
Milwaukee Police Department;

n.   Plaintiff Henry Zack Ezell is suing Defendants
Vagnini, Knight, Dollhopf, Cline, Paszkiewicz,
Cherone, Maglio, Lelinski, Devalkenaere,
Gadzalinski, Krueger, and Unknown Officers of the

Milwaukee Police Department;

o.   Plaintiff Michael Corbitt is suing Defendants
     Vagnini, Krueger, Mucha, Lelinski, Martinez,
     Dollhopf, Wawrzonek, and Vento.

p.   Plaintiff Duanne Townsend is suing Defendants
     Vagnini, Knight, and Letteer.

q.   Plaintiff Travoris Walton is suing Defendants
     Szedziewski, Juarez, Viera, Enk, Navarette, and
     Terrell.

r.   Plaintiff Terry Jackson is suing Defendants
     Gajevic, Wiesmueller, Strasser, Braunreiter,
     Iverson, Post, Anderson, Wenzel, Litwin, and
     Smith.

s.   Plaintiff Alveria Rogers is suing Defendants
     Takacs, Tucker, Johnson, and Wilson.

t.   Plaintiff Michael D. Smith is suing Defendants
     Knight and Unknown Defendant Officers.

u.   Plaintiff Davonte Harris is suing Defendants
     Vagnini, Knight, and Unknown Defendant Officers.

v.   Plaintiff Jimmie Horne is suing Defendants
     Vagnini, Mucha, and Unknown Defendant Officers.

w.   Plaintiff Joseph Bynum is suing Defendants
     Drajkowski, M. Knight, Lopez, Bohlen, Wilson,

Terrell, Miscichoski, Swiercz, and Golembiewski.

559. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

560. The misconduct described in this Count was undertaken by Defendant Officers within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

561. As a result of the misconduct described in this Count, Plaintiffs have suffered damages, including but not limited to emotional distress and anguish.

### Count V – 42 U.S.C. § 1983
### Conspiracy

562. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

563. As described more fully above, Defendant Officers reached an agreement among themselves to deprive Plaintiffs of their constitutional rights.

564. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

565. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

566. The misconduct described in this Count was undertaken

by Defendants within the scope of their employment and under color of law such that their employer, City of Milwaukee, is liable for their actions.

567. As a direct and proximate result of the illicit prior agreement referenced above, Plaintiffs' rights were violated and they suffered injuries, including, but not limited to emotional distress, as described above.

## Count VI – 42 U.S.C. § 1983
## Supervisory Liability

568. Each Paragraph of this Complaint is incorporated as if fully stated herein.

569. As described more fully above, Defendants Flynn, Hegerty, Hudson, Williams, Mucha, and Novack knew or reasonably should have known that Defendant Officers would violate or had violated citizens' constitutional rights in one or more of the ways described above, and/or knew or reasonably should have known that Defendant Officers had a pattern of engaging in improper searches, including public strip and cavity searches.

570. Defendants Flynn, Hegerty, Hudson, Williams, Mucha, and Novack facilitated, approved, condoned and/or turned a blind eye to purposely ignore Defendant Officers' pattern of misconduct.

571. As a result of the misconduct described in this Count, Plaintiffs have suffered damages, including but not limited to emotional distress and anguish.

## Count VII - Indemnification

572. Each of the foregoing paragraphs is incorporated as if fully stated herein.

573. Wisconsin law, Wisc. Stat. §895.46, requires public entities to pay any tort judgment for damages for which employees are liable within the scope of their employment activities.

574. At all times relevant herein, the Defendant Officers and Supervisors were employees of the Milwaukee Police Department, who acted within the scope of their employment.

WHEREFORE, Plaintiffs, JAMES ASHFORD, S.C., KEON CANADA, M.C., WALTER COLEMAN, JERROD EZELL, R.P., ANTHONY PETTIS, L.L.R., M.R., BRANDON GRAHAM, JEFFREY JEFFERSON, CHARLES SMITH,HENRY ZACK EZELL, MICHAL CORBITT, DUANNE TOWNSEND, TRAVORIS WALTON, TERRY JACKSON, ALVERIA ROGERS, MICHAEL D. SMITH, DAVONTE HARRIS, JOSEPH BYNUM AND JIMMIE HORNE respectfully request that this Court enter judgment in his favor and against Defendants, CITY OF MILWAUKEE, CHIEF EDWARD FLYNN, CHIEF NANNETTE HEGERTY, ASSISTANT CHIEF EDITH HUDSON, SERGEANT JASON MUCHA, SERGEANT DELMAR WILLIAMS, SERGEANT NOVACK, OFFICER MICHAEL VAGNINI, OFFICER JACOB KNIGHT, OFFICER MICHAEL GASSER, OFFICER AMY BARTOL, OFFICER JEFFREY DOLLHOPF, OFFICER SERIO, OFFICER STEPHANIE SEITZ, OFFICER VANDERVAST, OFFICER JASON BLEICHWEHL, OFFICER PAUL VENTO, OFFICER JEFFREY CLINE, OFFICER GARY CHERONE, SERGEANT DAVID PASZKIEWICZ, OFFICER ZACHARY THOMS, OFFICER KOPESKY, OFFICER LOUIS KRUEGER, OFFICER MAGLIO, OFFICER GREGORY KUSPA, OFFICER ERIN LELINKSI, OFFICER

PAUL MARTINEZ, OFFICER DAVID LETTEER, OFFICER RACHEL SZEDZIEWSKI,
DETECTIVE ANGELA JUAREZ, OFFICER JOSE VIERA, DETECTIVE JASON ENK,
OFFICER CHRISTOPHER NAVARETTE, OFFICER MICHAEL TERRELL, OFFICER
M. TAKACS, OFFICER E. TUCKER, OFFICER J. JOHNSON, OFFICER BODO
GAJEVIC, OFFICER JOHN WIESMUELLER, OFFICER STEVE STRASSER,
OFFICER ZEBDEE WILSON, OFFICER BRIAN BURCH, OFFICER SHAWN BURGER,
DETECTIVE KNITTER, OFFICER KOWALEFSKI, OFFICER TAUBENHEIM,
OFFICER KURT SALTWADEL, OFFICER ROBERT WATTS, OFFICER KENT
TUSCHL, OFFICER JOSEPH SCHEURING, OFFICER OMARLO PHILLIPS,
OFFICER MICHAEL FEDEL, OFFICER MICHAEL WAWRZONEK,OFFICER BRIAN
KOZELEK,OFFICER JUSTIN DECLEENE, OFFICER BRYANT DEVALKENAERE,
OFFICER SCHLACTER, OFFICER GABRIELSON, OFFICER GADZIALINSKI,
OFFICER BETTIN, OFFICER J. RODRIGUEZ, DETECTIVE HARMS, OFFICER
HUNTER, OFFICER CORY WASHINGTON, OFFICER JOSEPH SZCUBIALKA,
OFFICER MICHAEL VALUCH, OFFICER DEAN DRAJKOWSKI, OFFICER MATTHEW
KNIGHT, OFFICER JOSE LOPEZ, OFFICER TODD BOHLEN, OFFICER BRENT
MISCIOCHOSKI, OFFICER SWIERCZ, OFFICER GOLEMBIESKI, OFFICER ERIK
RODRIGUEZ, OFFICER BRAUNREITER, OFFICER IVERSON, OFFICER POST,
OFFICER ANDERSON, OFFICER WENZEL, OFFICER LITWIN, OFFICER SMITH,
OFFICER DOLORES APPLEGATE, DETECTIVE MICHAEL WASHINGTON,OFFICER
ROCHELLE GAWIN, and Unknown Milwaukee Police Department employees
and officers, awarding compensatory damages and attorneys' fees,
as well as punitive damages against the Defendant Officers in
their individual capacities, as well as any other relief this
Court deems just and appropriate.

**JURY DEMAND**

Plaintiffs, James Ashford, S.C., Keon Canada, M.C., Walter Coleman, Jerrod Ezell, R.P., Anthony Pettis, L.L.R., M.R., Brandon Graham, Jeffrey Jefferson, Charles Smith, Henry Zack Ezell, Michael Corbitt, Duanne Townsend, Travoris Walton, Terry Jackson, Alveria Rogers, Michael D. Smith, Joseph Bynum, Davonte Harris, and Jimmie Horne hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.


RESPECTFULLY SUBMITTED,


/s/ Heather Lewis Donnell
Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Heather Lewis Donnell
Elizabeth Mazur
Joel Feldman
Theresa Kleinhaus
LOEVY & LOEVY
312 North May, Suite 100
Chicago, IL 60607
(312) 243-5900

Robin Shellow
THE SHELLOW GROUP
324 West Vine Street
Milwaukee, Wisconsin 53212
(414) 263-4488